| AOC-105          Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. **16CI 01435**<br>Court   ☑ Circuit   ☐ District<br>County   Jefferson |

<b>PLAINTIFF</b>

INNOVATIVE HEALTH CARE SOLUTIONS, LLC

FILED IN CLERK'S OFFICE
DAVID L. NICHOLSON, CLERK

MAR 2 8 2016

BY_____
DEPUTY CLERK

**DEFENDANT**

VS.

KRISTEN BRANNON

and

MAGNOLIA HEALTH SOLUTIONS, LLC

**Service of Process Agent for Defendant:**
KRISTEN BRANNON

7078 Wildwood Circle #182

Louisville, KY  40219

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____, 2_____        _____Clerk

By: _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____Title

**16CI01435**

| AOC-105           Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. _____<br>Court  ☑ Circuit  ☐ District<br>County  Jefferson |

**PLAINTIFF**

INNOVATIVE HEALTH CARE SOLUTIONS, LLC

FILED IN CLERK'S OFFICE
DAVID L. NICHOLSON, CLERK

MAR 2 8 2016

BY_____
DEPUTY CLERK **DEFENDANT**

**VS.**

KRISTEN BRANNON

and

MAGNOLIA HEALTH SOLUTIONS, LLC

**Service of Process Agent for Defendant:**

MAGNOLIA HEALTH SOLUTIONS, LLC

Serve Kristen Brannon, Registered Agent

7078 Wildwood Circle #182

Louisville, KY  40219

**THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____, 2_____         _____Clerk

                                          By: _____ D.C.

---

| **Proof of Service** |
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____ |
| this _____ day of _____, 2_____.          Served by: _____ |
| _____Title |

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ___
CASE NO. _____



16CI01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON
7078 WILDWOOD CIR
182
LOUISVILLE, KY 40219

> FILED IN CLERK'S OFFICE
> DAVID L. NICHOLSON, CLERK
> MAR 2 8 2016
> BY_____
> DEPUTY CLERK

and

MAGNOLIA HEALTH SOLUTIONS, LLC
SERVE: KRISTEN BRANNON,
REGISTERED AGENT
7078 WILDWOOD CIR
182
LOUISVILLE, KY 40219

DEFENDANTS

### VERIFIED COMPLAINT

Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff"), for its Complaint against Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), state as follows:

### NATURE OF THE ACTION

1.      This civil action seeks legal and equitable relief against former Innovative contractor Kristen Brandon and her company, Magnolia Health Solutions, LLC. On information and belief, Brannon has violated or attempted to violate the confidentiality,

non-disclosure, non-competition, and non-solicitation clauses of her contracts with Innovative.

## PARTIES

2.  Innovative Health Care Solutions, LLC is an Ohio limited liability corporation with its principal place of business in Jefferson County, Kentucky. Robin Campbell is the sole member and president of Innovative.

3.  Kristen Brannon is a Kentucky resident residing at, upon information and belief, 7078 Wildwood Cir, 182, Louisville, KY 40219.

4.  Magnolia Health Solutions, LLC is a Kentucky limited liability corporation with its principle place of business in Jefferson County, Kentucky. According to the Kentucky Secretary of State, Kristen Brannon is the organizer and registered agent of Magnolia Health Solutions, LLC. On information and belief, Brannon is the manager of Magnolia.

## JURISDICTION AND VENUE

5.  Jurisdiction is appropriate in this Court in that the amount in controversy exceeds the minimum jurisdictional amount and the Defendants committed acts and omissions in Kentucky that form the basis of this action. Venue is appropriate in that the actions complained of herein occurred in Jefferson County, Kentucky.

## FACTS

6.  Innovative is in the business of marketing and supplying non-narcotic pain management products and devices to physicians. In particular, Innovative specializes in the sale of a family of products known as The Neuro-Stim System (NSS)

products. NSS products are FDA approved devices designed to relieve pain through auricular stimulation, i.e. stimulation devices targeting peripheral and cranial nerves for chronic and acute pain.

7.      Innovative's clients consist of physicians and ambulatory surgery centers, to whom it sells NSS products. Innovative works with independent contractors to service existing clients and develop new clients throughout the United States.

8.      Innovative provides its contractors with, among other things, business development opportunities, marketing and logistical support, access to clients, access to its distributor and manufacturer, and product design and use information. Innovative's contractors are also given access to confidential and proprietary information such as pricing, cost data, patient information, new product ideas, and client account information, the misuse and misappropriation of which would cause irreparable injury to Innovative.

9.      Innovative regularly conducts repeat business with its clients. An important part of Innovative's business is the relationship and good will Innovative forms with each client. Innovative's client relationships and good will are developed by forming relationships with skilled contractors and identifying and satisfying client needs. Innovative relies on its contractors to develop, build, and maintain these client relationships for the benefit of Innovative. Through significant cost and effort, Innovative has developed a client database, as well as contractor and distributor relationships that are invaluable, proprietary, and not discernible through public information.

10.     Innovative requires all of its contractors to sign agreements containing, among other things, non-competition, non-solicitation, confidentiality, and non-disclosure clauses.   The purpose of these agreements is to protect Innovative's legitimate business interests in its client relationships, its distributor relationships, and its confidential industry information.

11.     Innovative insists that all potential contractors execute an initial Non-Disclosure and Confidentiality Agreement before releasing any confidential information to them.  Because Innovative specializes in marketing and supplying newly FDA approved products, there is inherent value in protecting Innovative's status as an early market arrival. Its relationships with its clients and suppliers are important to Innovative's value as a company.

12.     Prior to March 2015, Campbell managed a medical clinic. Campbell was acquainted with Brannon previously and recommended that the clinic physician hire Brannon to perform billing services at the clinic. These business activities were unrelated to Innovative.

13.     In March 2015, the medical clinic's physician quit, forcing the clinic to close and leaving Brannon in need of a new business opportunity.

14.     At the time of the clinic's closure, Campbell was in the process of developing and preparing Innovative to function as a supplier of new NSS products.

15.     In anticipation of launching Innovative's current product line, Campbell retained Brannon to conduct the preparation necessary to ensure that Innovative could

4

provide medical billing services to facilitate insurance reimbursement for Innovative's future clients.

16.    Beginning in March 2015, Brannon was paid to ensure that Innovative could eventually provide these services.

17.    From March 2015 to June 2015, while Innovative was finalizing marketing materials and contractor agreements in order to bring NSS products to market, Innovative was not yet engaged in providing medical billing services and had no clients. Brannon's role was to provide Innovative with information on medical billing procedures and to establish Innovative's billing protocols and to ensure billing compliance. Brannon was paid $3500 per month.

18.    On June 19, 2015, prior to Innovative actively engaging in the sale of NSS products to clients or providing related billing services, Brannon signed a Non-Disclosure and Confidentiality Agreement (the "First Agreement"). The First Agreement specifically includes confidentiality, non-disclosure, non-solicitation, and non-competition clauses.

19.    The terms of the First Agreement provide, in pertinent part, that the signing contractor "agrees to hold in confidence, and cause [its representatives] to hold in confidence any and all Confidential Information," as defined by the First Agreement, and "not [to] use any Confidential Information for any purpose except in connection with the Purpose [of the First Agreement]."

20.     The terms of the First Agreement provide, in pertinent part, that Confidential Information includes the following non-public information disclosed to the Contractor by Innovative:

> documents, marketing and marketing research, know-how, market potential information, consumer/IHCS data, clinical data, formulas, product applications, potential product use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets . . . business information, and product specifications, as well as data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions[.]

21.     The First Agreement provides that the signing contractor or potential contractor,

> shall not make any copies of the Confidential Information except as required in connection with the Purpose [of the First Agreement] and, in all instances shall reproduce (as set forth in the original) any proprietary rights notices on any copies. Upon request, Contractor shall return all documents and other tangible objects containing or representing Confidential Information and all copies.

22.     The non-competition and non-solicitation clauses of the First Agreement require as follows:

> **Non-Competition and Non-Solicitation.**     During the term of this Agreement and for eighteen (18) months immediately thereafter, Contractor agrees that it will not directly or indirectly do any of the following within the continental United States:
>
> (i) engage in any practice or action to promote, market, advertise or solicit sales for any recently FDA approved field stimulation device targeting peripheral and cranial nerves for chronic and acute pain [hereinafter ("NSS Device"].

6

(ii) manage, operate, or provide consulting services to any entity that promotes, markets, advertises, or solicits sales for any [NSS Device].

(iii) have any sort of ownership, debt, or contractual relationship directly or indirectly with any entity that promotes, advertises or solicits sales for any [NSS Device].

Contractor also agrees that it will not directly or indirectly divert, call on, solicit, or communicate with any of IHCS's Clients or Prospective Clients, regardless of their location, for the purposes of obtaining business or developing relationships with such Clients or Prospective Clients, provided the Contractor has had either: (i) some involvement with that Client or Prospective Client during the 6-month period before the end of the latter of: (a) this Agreement or (b) Contractor's agreement to provide services to IHCS; or (ii) been provided some information about the Client or Prospective through for Contractor's involvement with IHCS.

"The terms 'Clients' and 'Prospective Clients' are defined in this agreement as any entity or person from whom IHCS has received or attempted to receive compensation at any time during the 6-month period before the end of Contractor's agreement with IHCS."

23.    The First Agreement provides that it

shall remain in effect until terminated in writing by a party to this Agreement   (the "Termination Date"). Except as otherwise described herein, the obligations of Contractor hereunder shall survive for five (5) years from the Termination Date, except confidential information that constitutes (i) trade secrets of the disclosing party shall be subject to the terms of this agreement for as long as such information remains a trade secret under applicable law; and (ii) personally identifiable information shall be subject to the terms of this Agreement forever, without expiration.

24.    Furthermore, the First Agreement provides that "any violation or threatened violation of this Agreement may cause irreparable injury to IHCS, entitling

IHCS to seek injunctive relief, without the need to post bond, in addition to all legal remedies."

25.     In August 2015, Innovative began full operations and Brannon began performing medical billing services for Innovative clients.

26.     Prior to November 11, 2015, Innovative offered Brannon and Magnolia the opportunity to earn additional income by selling Innovative's products to clients, directly and/or indirectly through subcontractors.

27.     On November 11, 2015, Brandon, on behalf of Magnolia, executed an Independent Contractor Agreement (the "Second Agreement") with Innovative. Under the terms of the Second Agreement, Brannon and Magnolia agreed to perform sales representative functions and to receive compensation in the form of fees per NSS product unit sold.

28.     After executing the Second Agreement, Brannon continued to provide billing services for Innovative for a fee of $3500 per month. The Second Agreement allowed Defendants to expand their earning potential by selling products to clients directly and/or through subcontractors. Brannon and Magnolia engaged a single subcontractor, Greg Williams.

29.     The Second agreement provides, in pertinent part that, "Contractor agrees that during the term and for a period of twelve (12) months following the termination or expiration of this Agreement, Contractor shall not make any solicitation to employ IHCS's employees, officers, managers and personnel, including IHCS independent contractors, without the written consent of IHCS."

8

30.     In December 2015, Brannon took on additional office responsibilities, including facilitating communications with and submitting orders to Innovative's product distributor. In exchange, Brannon asked for a higher monthly fee to perform expanded services for Innovative. Innovative agreed to pay Brannon $5000 per month for her expanded services to Innovative beginning in January 2016.

31.     In her various roles for Innovative, Brannon was responsible for a broad range of functions. Brannon conducted precertification and billing processes, serviced client accounts, served as a point person for communication with clients, communicated on behalf of Innovative to Innovative's distributor, and engaged as a sales representative to sell Innovative's NSS products. In these multiple roles, Brannon played a central part in the day to day operation of Innovative and had access to confidential and proprietary information.

32.     In the course of her relationship with Innovative, Brannon was provided access to Innovative's software database containing confidential and proprietary information, including information such as product details, cost data, pricing, client contact and account information, patient medical information, and other information about client needs.

33.     Altogether during her time working with Innovative, Brannon gained a substantial amount of information regarding Innovative's client identities and contact information, client accounts, client requirements and specifications, financial data, sales figures, costs and pricing figures, marketing and business plans, marketing concepts, company practices, and similar confidential and proprietary information.

34.     Brannon will cause irreparable damage to Innovative's client relationships and good will anywhere that Innovative does business by using the knowledge and information that Innovative provided to Brannon during her work with Innovative.

35.     Brannon continued to provide billing services for Innovative in January and February of 2016. In February, Brannon ceased performing billing services for Innovative. Brannon and Magnolia continued to serve as a liaison between Innovative clients, representatives, and the distributor of Innovative's products and continued to sell Innovative's products under the Independent Contractor Agreement through early March 2016.

36.     On March 16, 2016, Robin Campbell appeared on behalf of Innovative at a hearing regarding an appeal of the denial of unemployment benefits to a former Innovative employee who left her position with Innovative in January 2016.

37.     The former employee presented, as evidence in the hearing, a printed text message exchange between the former employee and Brannon. In the exchange, which took place on January 24-29, 2016, Brannon makes reference to starting a new business venture at that time and doing work similar to Brannon's work for Innovative. Brannon also referenced an on-going offer to hire Innovative's former employee in the new venture, which solicitation may have begun before the former employee left her job with Innovative.

38.     Since becoming aware of the text messages, Innovative has discovered two clients with executed billing contracts with Innovative, for which there is no information in Innovative's computer system. This violates Innovative's protocols. Both

clients were recruited by Magnolia's subcontractor, Greg Williams. Brannon was responsible for entering information for these clients into Innovative's billing software and failed to do so in violation of protocol.

39.     Innovative also discovered an E-Fax communication sent to Innovative from an additional client requesting precertification of a patient. The client's intake information is missing from Innovative's database. Brannon was responsible for entering information for this client into Innovative's database and failed to do so in violation of ordinary business practices. The client was recruited by Brannon's subcontractor, Greg Williams.

40.     Innovative also has discovered unauthorized altered versions of its product order forms, listing Brannon's personal cell phone number as the primary client contact, rather than Innovative's current business phone number. This was done by Brannon without approval by Innovative.

41.     Innovative has also discovered that Brannon has communicated on her personal email address with Innovative's clients, despite having an Innovative email address.

42.     Upon information and belief, Brannon has communicated to her subcontractor that she and Magnolia intend to launch a new product line, independent of Innovative, and utilize her subcontractor.

## Count One
## (Breach of Contract)

43.     Plaintiff incorporates by reference as if set forth fully herein all preceding paragraphs of its Complaint.

44.     Defendants have breached and continue to breach the First Agreement and the Second Agreement.

45.     As a result of Defendants' breach, Innovative has been damaged and will be subjected to irreparable harm.

46.     Innovative has suffered and will continue to suffer immediate and irreparable harm by virtue of Brannon using the information that she had access to during her work with Innovative to compete with Innovative and solicit Innovative's clients.

WHEREFORE, the Plaintiff, Innovative, respectfully requests that the Court enter judgment in its favor and award it the following relief:

1.     Temporarily and permanently restrain and enjoin Defendants from violating the terms of the First Agreement and the Second Agreement.

2.     Compensation for any and all damages suffered as a result of Defendants' actions;

3.     Pre- and post-judgment interest on all sums recoverable;

4.     All other legal and/or equitable relief that this Court sees fit to grant.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative Health Care Solutions, LLC*

## VERIFICATION

I, Robin Campbell, President, Innovative Health Care Solutions, LLC, verify that the foregoing facts are true and accurate to the best of my knowledge, information, and belief.

ROBIN CAMPBELL

COMMONWEALTH OF KENTUCKY   )
                                                                ) SS:
COUNTY OF JEFFERSON            )

Subscribed and sworn to before me by Robin Campbell, this 25th day of March, 2016.

My Commission expires: _November 10, 2018._

Notary Public

MATTHEW D. VANDERBURG
Notary Public
State at Large
Kentucky
My Commission Expires Nov. 10, 2018

# JEFFERSON County

# Random Judge Assignment Report

**Court:** | Circuit Court

**Requestor:** | GINA_SAYLOR | **Reference/Case Number:** | 16-ci-001435

**This Case has been Assigned to:** | 1 | **Division**

Judge Barry Willett | 630175

**Control Date/Time:** | 03/28/2016   4:09:32PM

**Date Printed:** 03/28/2016          **Time Printed:**     4:09:34PM          **Page:** 1

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                                      DEFENDANTS

\* \* \* \* \* \* \*

## NOTICE – MOTION - ORDER

All parties shall take notice that this Motion will come on for hearing on the 18th

day of April, 2016 at the hour of 8:45 a.m., or as soon thereafter as counsel may be

heard.

## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Plaintiff Innovative Health Care Solutions, LLC ("Innovative") hereby moves the

Court pursuant to Rule 26, 33 and 34 to expedite discovery in this action by issuing an

Order allowing Innovative to issue written discovery requests to Defendants, Kristen

Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia"), and take the

deposition of Brannon, in her individual capacity and as a representative of Magnolia.

As grounds for this Motion, Innovative states that it has alleged that Defendants

have breached their noncompetition, nonsolicitation, and confidentiality agreements

with Innovative, potentially causing imminent harm to Innovative's client relationships

and goodwill, as well as potential misappropriation of Innovative's confidential and

proprietary information.   In order to limit Innovative's exposure to potential future damages and additional irreparable harm that may occur as a result of Defendants' activities, Innovative requests that discovery be expedited accordingly.

In further support of this Motion, Innovative relies on its Verified Complaint.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 8th day of April, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com

_____
*Counsel for Plaintiff*

3

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

FILED CLERK'S OFFICE
JEFFERSON DISTRICT COURT

2016 APR 8 PM 4 00

CLERK 10

INNOVATIVE HEALTH CARE SOLUTIONS, LLC            BY _____ PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                              DEFENDANTS

\* \* \* \* \* \* \*

## ORDER GRANTING EXPEDITED DISCOVERY

Plaintiff Innovative Health Care Solutions, LLC ("Innovative") having moved the Court, and the Court being otherwise sufficient advised;

**IT IS HEREBY ORDERED AND ADJUDGED** that Innovative is authorized to conduct the following expedited discovery:

To issue written interrogatories and document requests to Defendants, who shall respond within 10 days of service of such discovery requests.

To issue a notice of deposition to Kristen Brannon, in her individual capacity and as a representative of Magnolia Health Solutions, LLC to appear within 14 days of service.

Entered this _____ day of April, 2016.

_____
JUDGE, JEFFERSON CIRCUIT COURT

4

Tendered by:

_____

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax:  (502) 585-2207
**Counsel for Plaintiff**

5



COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

### *ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

\* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR A PROTECTIVE ORDER, MOTION TO STAY DISCOVERY,
AND IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions,

LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or

"Counterclaim Plaintiffs"), and for their Memorandum in Support of their Motions for a Protective

Order, to Stay Discovery, and in Opposition to Plaintiff's Motion to Compel the Deposition of

Kristen Brannon, by and through undersigned counsel, state the following:

**I.    INTRODUCTION**

Ms. Brannon and Magnolia hereby request this Court deny the Motion to Compel the

Deposition of Kristen Brannon filed by Innovative Health Care Solutions, LLC ("IHCS" or

"Plaintiff") on the grounds that 1) Plaintiff's Motion to Compel is premature and came just

moments after Defendants expressed their intent to file an Amended Answer including a civil

Racketeer Influenced and Corrupt Organizations ("RICO") Act claim;  2) Plaintiff's counsel did

not engage in good faith negotiations regarding deposition dates with Defendants' counsel; and 3)

On information and belief, Plaintiff's deposition request is little more than a fishing expedition in

light of the totality of the circumstances.

## II.   **SUMMARY OF ARGUMENT**

The Plaintiff's Motion to Compel should be denied as it fails to address the totality of the circumstances of this litigation and is grossly premature. Plaintiff's counsel filed the Motion to Compel just after Defendants' counsel advised of her intention to file an Amended Answer and Counterclaim and include a civil RICO claim.

Even if the Court declines to stay discovery pending the Defendants' Amended Answer and RICO claim, Plaintiff's Counsel should not be allowed to unilaterally dictate the course of this litigation as they have attempted to do over the last several weeks. Plaintiff's counsel did not engage in good-faith negotiations with Defendants' counsel regarding any discovery dates. Further, Plaintiff's Motion to Compel contains numerous misstatements and mischaracterizations of conversations, events, and circumstances.

Upon information and belief, the entirety of this litigation serves no legitimate purpose. Plaintiff's counsel advised Defendants' counsel early in this litigation that he viewed it as a mechanism toward a deposition. Despite this, Plaintiff and Plaintiff's counsel have wasted a great deal of judicial resources and caused a great deal of emotional and financial harm to the Defendants with numerous Motions before this Court requesting expedited discovery and a temporary injunction. Those motions were eventually withdrawn just prior to a hearing date. Defendants willingly and eagerly signed an Agreed Order. (See Exhibit 1). Defendants have time and time again expressed their desire for extrajudicial resolution and taken broad steps to encourage the same.

## III.   **FACTUAL BACKGROUND**

Robin Campbell ("Campbell") and Troy Guinn ("Guinn") the owners of IHCS, i.e., the sole business representatives on behalf of the Plaintiff, are the subject of ongoing investigations

by multiple federal agencies.  Defendants and counsel have met and corresponded with at least three separate federal agencies regarding ongoing investigations into Campbell and Guinn's fraudulent business activities.

On March 21, 2014, Guinn filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Western District of Kentucky.  As a result of Guinn's apparent 2014 bankruptcy fraud, Campbell is now the defendant of a complaint filed on March 15, 2016 by the appointed Chapter 7 trustee, Wm. Stephen Reisz, alleging tax fraud and evasion schemes between Guinn and Campbell (*Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)). Reisz is adversarily litigating to seize Guinn's and Campbell's assets to recover funds on behalf of Guinn's bankruptcy estate.

These alleged tax-evasion schemes as perpetrated by Mr. Guinn and Ms. Campbell are the subject of another action filed in the Jefferson County Circuit Court, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573, in which Century Capital Group, LLC d/b/a Auto Injury Assistance ("AIA"), alleges that Guinn and Campbell are evading a successful judgment against them by commingling assets and diverting funds through the companies.

On May 2, 2016, Defendants' counsel received a grand jury subpoena relating to the business affairs of Troy Guinn and Robin Campbell.  Defendants' counsel requested permission of federal investigators and the U.S. Attorney's Office to advise Plaintiff's counsel regarding the same, but that request was denied.  On May 3, 2016, Plaintiff's Counsel filed the Agreed Order Enforcing the Restrictive Covenants.  (See Exhibit 1).

On May 10, 2016, Plaintiff and Defendants' counsel exchanged emails and phone calls. Defendants' counsel again offered extrajudicial resolution of the entire matter.  Plaintiff's counsel threatened to resume pursuit of the temporary injunction despite the Agreed Order if Defendants

did not agree to a deposition date. Plaintiff's counsel claimed that deposition deadline was a condition of the Agreed Order. Defendants' counsel then spoke with federal investigators regarding the deposition date pressure and the potential interference with the federal investigation.

On May 11, 2016, Defendants' counsel proposed creating a discovery schedule that would be mutually acceptable to both parties. Defendants' counsel noted again that not all parties had been served with her Counterclaim. Guinn has not responded to the certified mail notice issued with his Summons. Plaintiff advised that a discovery schedule wasn't required and that "…We [Plaintiff's Counsel] will just notice the Depo of your client for a date that is convenient for us." (See Exhibit 2, with Defendants' bracketed emphasis, and Plaintiff's counsels' email addresses redacted). Despite these bullying tactics, Defendants' counsel did begin creation of this discovery schedule.

On May 12, 2016, Plaintiff served upon Defendants' counsel a "Notice to Take Deposition" of Kristen Brannon on May 24, 2016 at the offices of Dinsmore & Shohl, LLP at 9:30 AM. (See Exhibit 3). Defendants' counsel replied, within minutes, and as a professional courtesy advised Plaintiff's counsel of her intent to file a Motion for a Protective Order and an Amended Answer to include a RICO claim. Plaintiff's counsel then filed a Notice/Motion/Order to Compel the Deposition of Kristen Brannon. Defendants' counsel then spoke with federal investigators and advised of the need to at least disclose to the Court the existence of the federal investigation.

At this point, on information and belief, Defendants and counsel are satisfied that all elements necessary for a successful RICO claim against Plaintiff IHCS, Robin Campbell, and Troy Guinn are satisfied.

## IV.   **ARGUMENT**

### A.   **THE DEPOSITION PLAINTIFF SEEKS TO COMPEL IS PREMATURE CONSIDERING DEFENDANTS' EXPRESSED INTENTION TO FILE AN AMENDED ANSWER INCLUDING A RICO CLAIM.**

Defendants appreciate the serious nature of a RICO claim and were not satisfied until very recently, after weeks of cooperating with federal authorities and review of other pending litigation, that all elements were satisfied. Discovery should thus be stayed until Defendants have filed their Amended Answer and Counterclaim with a well-pleaded RICO claim. Defendants believe their RICO claim to be strong enough to warrant an entire dismissal of Plaintiff's action.

For purposes of this pleading, Defendants will not attempt to plead their RICO claim in its entirety. Defendants intend to fully and thoroughly construct this argument over the next several days in their Amended Answer and Counterclaims to be filed with this Court. Instead, Defendants will generally explain that RICO – 18 U.S.C. § 1962 requires a civil plaintiff to prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation.

On information and belief, Guinn and Campbell have intentionally engaged in a pattern of criminal racketeering activity spanning at least two decades. They have used a number of business enterprises, otherwise engaged in legitimate business activities, to perpetuate their underlying criminal activity. A number of the businesses believed to be involved are named in the previously-referenced *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573 that was before this very Court. Plaintiff IHCS, Guinn, and Campbell have now used this litigation to intimidate, harass, and embarrass Ms. Brannon, their former employee and now Witness, in furtherance of their criminal enterprise as it relates to other pending litigation and federal investigations.

Dealings with federal investigators over the last several weeks has all but erased any doubt of the legitimacy of a successful RICO claim. Forcing Ms. Brannon's deposition prior to the Court addressing the Defendants' RICO claim would be premature and unfairly prejudice the Defendants.

**B.     THE PLAINTIFF DID NOT ENGAGE IN GOOD FAITH NEGOTIATIONS REGARDING DEPOSITION DATES.**

Even if the Court ignores the Defendants' RICO claim, the Plaintiff's Motion to Compel the Deposition of Kristen Brannon should still be denied. Plaintiff's Counsel did not make a good faith attempt to negotiate discovery dates with Defendants' Counsel.

Plaintiff's Motion to Compel contains numerous misrepresentations of the facts and circumstances of the current discovery dispute. In fact, it was Plaintiff's counsel who refused to negotiate dates beyond June 3, 2016 for Ms. Brannon's deposition. When Plaintiff's counsel demanded a deposition date before June 3, Defendants' counsel counteroffered dates in the middle of June, provided all parties had been served and filed answers. Plaintiff's counsel then advised Defendants' counsel that: "...**We will just notice the Depo of your client for a date that is convenient for us.**" (emphasis added). (See Exhibit 2, with Defendants' bracketed emphasis, Plaintiff counsels' email addresses redacted).

Indeed, on May 12, 2016, Plaintiff did just as they had threatened and served Defendants' counsel with a Deposition Notice for Ms. Kristen Brannon. As a professional courtesy, Defendants' Counsel responded and advised Plaintiff's counsel of her intention to file a Motion for a Protective Order and an Amended Answer to include a RICO claim. Plaintiff then filed a Motion to Compel the Deposition of Kristen Brannon Plaintiff's Motion to Compel highlights the

Defendants' intent to file a Motion for a Protective Order, but fails to mention the Defendants' intended RICO claim.

## C.   PLAINTIFF'S COUNSEL IS ENGAGED IN A FISHING EXPEDITION BEFORE DEFENDANTS HAVE RECEIVED ANSWERS TO THEIR COUNTERCLAIMS.

Even without consideration to the first two significant reasons this Court should deny Plaintiff's Motion to Compel, the Plaintiff's Motion should fail as there's no evidence to show that this litigation is anything beyond a fishing expedition. Defendants have already provided Plaintiff some informal discovery in an attempt to reach extrajudicial resolution. Defendants provided Plaintiff with detailed invoices outlining the Defendants' current business practices.

Plaintiff's first Motions before this Court claimed emergency and crisis situations demanding immediate production of documents, answers to interrogatories, and a temporary injunction. However, Plaintiff withdrew those Motions just prior to a hearing regarding the same after proposing an Agreed Order to Defendants. Plaintiff has now apparently abandoned seeking the production of documents once alleged to be necessary to avert a crisis.

At the time of this Memorandum filing, Defendants have not received Answers to the Counterclaims against IHCS, Campbell, or Guinn. Despite the certified mail attempt and contact with Guinn's personal attorney, Guinn has not yet been successfully served. Defendants' counsel intends to attempt service via the Sheriff's Office.

## V.   <u>CONCLUSION</u>

Despite the unenforceability of the agreements at the center of this dispute, Defendants have represented to Plaintiff that they have followed both the spirit and the letter of the Agreements. Defendants have gone so far as to sign an Agreed Order expressing Defendants' commitment to abide by the otherwise unenforceable agreements.

Despite the overbreadth and overly burdensome nature of Plaintiff's informal discovery requests, Defendants provided responsive informal discovery to Plaintiffs and expressed time and time again their desire for extrajudicial resolution.

Plaintiff's Motion to Compel a Deposition from Ms. Brannon is the latest in a series of Motions made before this Court intended to embarrass, harass, and/or intimidate Ms. Brannon. Defendants have made countless attempts at extrajudicial resolution.   Absent an Order of this Court, Ms. Brannon will not be intimidated to the point of failing to cooperate regarding investigations into Guinn and Campbell's criminal enterprise.

Defendants therefore request that discovery be stayed until Defendants have filed their Amended Answer including a detailed RICO claim.   In the alternative, Defendants request that Plaintiff's Motion to Compel the Deposition of Kristen Brannon be denied and the Plaintiff be ordered to engage in good faith discovery negotiations,

WHEREFORE, Defendants request this Court:

(1) **DENY** Plaintiff's Motion to Compel the Deposition of Kristen Brannon; and

(2) **GRANT** the Defendants' Motion for a Protective Order; and

(3) **GRANT** the Defendants' Motion to Stay Discovery.

Respectfully submitted this 13th day of May, 2016.

*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Kristen Brannon and*
*Magnolia Health Solutions, LLC*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on May 13th, 2016, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER, MOTION TO STAY DISCOVERY, AND IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF KRISTEN BRANNON with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care Solutions, LLC
and Robin Campbell*

Troy A. Guinn
3011 Long Creek Way
Louisville, KY 40245
*Counterclaim Defendant*

/s/ Nolia G. Batey
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Kristen Brannon and
Magnolia Health Solutions, LLC*

EXHIBIT

1

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

2016 MAY -3  AM 11: 22

CLERK 5

INNOVATIVE HEALTH CARE SOLUTIONS, LLC _____ D.C.  PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

## AGREED ORDER TO ENFORCE RESTRICTIVE COVENANTS

The parties, Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff") and Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), have proposed to resolve Plaintiff's pending motions for preliminary injunction and for expedited discovery against Defendants for breach of their restrictive covenants contained in the Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement (together, the "Agreements") they entered with Plaintiff. At this time, Defendants have represented to Innovative, while reserving the right to challenge the validity of the Agreements and without admitting any wrongdoing, that they are not currently engaged in activities which violate the restrictive covenants of the Agreements.

As such, IT IS HEREBY ORDERED:

1.      Innovative's Motion for Expedited Discovery and Motion for Temporary Injunction are hereby deemed withdrawn.

2.      By agreement of the parties, Defendants shall not engage in activities which would violate the following provisions of their agreements with Innovative: Non-Disclosure and Confidentiality Agreement ¶¶ 2-4, 6; Independent Contractor Agreement, ¶¶ 5, 6.

3.      This Order shall remain in effect until the earlier of September 16, 2017, an Order of this Court rescinding this Order, agreement to the contrary by the parties, or until Innovative receives from Defendants a written notice of Defendants' intent to engage in activities which would violate the above-referenced provisions of the Agreements.

4.      Nothing in this Order shall prohibit Innovative from seeking to enforce this Order or its restrictive covenants with Defendants, including the pursuit of injunctive relief, or any of Innovative's other legal rights, should Innovative learn that Defendants are engaging activities which would violate the above-referenced provisions of the Agreements, receive a notice from Defendants of their intent to engage in such activities, or learn that Defendants are in any other way violating their Agreements with Innovative.

SO ORDERED this _____ day of _____, 2016 at _____ am/pm.

_____
Judge

_____
Date

2

HAVE SEEN AND AGREED:

_____
Nofia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen Brannon*
*and Magnolia Health Care Solutions, LLC*

_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

10307422v2

3

**EXHIBIT**

2

**nbatey@bateylawoffice.com**

| | |
|---|---|
| **From:** | nbatey@bateylawoffice.com |
| **Sent:** | Wednesday, May 11, 2016 11:18 AM |
| **To:** | 'Meyer, R. Kenyon' |
| **Cc:** | 'Keel, Corinne' |
| **Subject:** | RE: IHCS Brannon - Discovery Schedule |

I'm sorry to hear you're taking that position.

**From:** Meyer, R. Kenyon
**Sent:** Wednesday, May 11, 2016 10:52 AM
**To:** nbatey@bateylawoffice.com
**Cc:** Keel, Corinne
**Subject:** Re: IHCS Brannon - Discovery Schedule

There are no discovery schedules in state court in Kentucky.  We will just notice the Depo of your client for a date that is convenient for us

On May 11, 2016, at 9:48 AM, "nbatey@bateylawoffice.com" <nbatey@bateylawoffice.com> wrote:

Ms. Keel, Mr. Meyer,

We'll send over a proposed discovery schedule within the next week or so.  It's a little premature considering Troy hasn't even been served yet, but I am trying to be agreeable.  We're more than willing to entertain your suggestions for an alternative schedule.  I'd really like to get out some interrogatories before we jump into depositions.  To that end, since yesterday you accepted service for Robin, if you want to wait and submit the IHCS answer along with hers and/or need additional time, we'll take no issue with that.    I think it benefits our clients if we can try to agree on deadlines and dates that are mutually acceptable.

If you have an idea for a discovery schedule, please shoot it my way and we'll take it under consideration.

Nolia G. Batey,
Attorney at Law

BATEY LAW *office* PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, Kentucky 40207
Office:  (502) 509-9407
Fax:    (502) 470-3634
nbatey@bateylawoffice.com

CONFIDENTIALITY NOTICE:  The contents of this e-mail message from Batey Law Office, PLLC and any attachments are confidential and are sent in trust and for the sole use of the intended recipient(s) and may contain confidential information and may be legally privileged. If you have received this transmission in error, any use, reproduction or dissemination of this transmission, in whole or in part, is strictly prohibited. If you are not the intended recipient, please immediately notify Batey Law Office, PLLC by reply e-mail and delete all copies of the original message and any attachment(s).

NOTICE: This electronic mail transmission from the law firm of Dinsmore & Shohl may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

EXHIBIT

3

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC        PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC        DEFENDANTS

\* \* \* \* \* \* \*

## NOTICE TO TAKE DEPOSITION

Please take Notice that Plaintiff, Innovative Health Care Solutions, LLC, by counsel, will proceed to take the deposition of Kristen Brannon, in her individual capacity and as a representative for Magnolia Health Solutions, LLC, on May 24, 2016, at 9:30 a.m. EDT at the offices of Dinsmore & Shohl LLP, 1010 S. 5th St., Ste. 2500, Louisville, Kentucky 40202.   This deposition is to be used for all purposes allowed under the Kentucky Rules of Civil Procedure, and will continue from day to day until completed, Sundays and holidays excepted.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 12th day of April, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com

*Counsel for Plaintiff*

2

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                      PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                            DEFENDANTS

* * * * * * *

## NOTICE OF PROPOSED DISCOVERY REQUESTS FOR EXPEDITED RESPONSE

Plaintiff Innovative Health Care Solutions, LLC ("Innovative") hereby notifies the Court and Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia"), of its proposed written discovery requests to Defendants (attached as Exhibit A), for which it seeks expedited responses.

These proposed requests are calculated to uncover information relevant to Innovative's plea for injunctive relief in its Verified Complaint and are offered in further support of Innovative's Motion for Expedited Discovery, filed on April 8, 2016.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 13th day of April, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com

*Counsel for Plaintiff*

2

# Exhibit A

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                           DEFENDANTS

* * * * * * *

### INNOVATIVE'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO DEFENDANTS, KRISTEN BRANNON AND MAGNOLIA HEALTH SOLUTIONS, LLC FOR EXPEDITED RESPONSE

Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "Plaintiff"), by counsel and pursuant to CR 33 and 34, hereby propounds its first set of Interrogatories and Requests for Production of Documents upon Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), to be answered within ten days pursuant to the Court's order.

### I.      DEFINITIONS

As used herein, the following words have the following meanings:

A.      The terms "you," "your," and "Defendants" shall mean, both and singularly, Brannon, Magnolia, and each of her, its, or their agents, representatives, attorneys and/or persons acting or purporting to act on her, its, or their behalf.

B.      The terms "client of Innovative" and "prospective client of Innovative" shall mean any entity or person from whom Innovative has received or attempted to receive compensation at any time prior to March 16, 2016.

C.      The term "Magnolia" shall mean Magnolia Health Solutions, LLC and any of its predecessors, parents, holding companies, subsidiaries, divisions, affiliates, officers, directors, agents (including without limitation, accountants, advisors, and attorneys), employees, representatives, investigators, or consultants and any other person(s) acting on its behalf.

## INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify the person or persons answering these Interrogatories.  If more than one individual has provided information, has been consulted, or has participated in the preparation of these answers or responses, identify by Interrogatory numbers those answers for which each individual has provided information, with respect to which he or she has been consulted, or that he or she participated in preparing.

**ANSWER:**


**INTERROGATORY NO. 2:**      Identify each witness you may call to testify at any hearing scheduled in this case on Innovative's Motion for Temporary Injunction, and describe the subject matter of the expected testimony for each witness.

**ANSWER:**

**INTERROGATORY NO. 3:**     Identify each customer or prospective client of Innovative with whom you have had any contact since the March 16, 2016.

**ANSWER:**

**INTERROGATORY NO. 4:**     Identify each customer or prospective customer of Innovative with whom you have had any contact since March 1, 2015, on behalf of anyone other than Innovative, including but not limited to Magnolia.

**ANSWER:**

**INTERROGATORY NO. 5:**     Identify each client or potential client of Innovative with whom you have communicated about any business activity or business opportunity other than business activities of or related to Innovative since March 1, 2015.

**ANSWER:**

**INTERROGATORY NO. 6:**     Identify any person, including but not limited to any contractor or employee of Innovative, with whom you have had communications regarding any client or prospective client of Innovative since March 16, 2016, and describe the substance of those communications.

**ANSWER:**

3

**INTERROGATORY NO. 7:**   Identify any person who has provided you with information regarding any client or prospective client of Innovative since March 16, 2016, and describe the information provided to you.

**ANSWER:**


**INTERROGATORY NO. 8:**   Identify any contractor or employee of Innovative with whom you have communicated since March 1, 2015 regarding the possibility of such contractor or employee becoming a contractor or employee of anyone other than Innovative, including but not limited to Magnolia.

**ANSWER:**


**INTERROGATORY NO. 9:**   Identify every document which is currently in your possession by reason of your contractual relationship with Innovative, including but not limited to documents regarding any client or prospective client of Innovative or any of Innovative's services, marketing, strategies, plans, agreements, products, contractors, manufacturers, distributors, or employees.

**ANSWER:**

**INTERROGATORY NO. 10:**   Identify and describe any and all business activities or ventures you are currently planning or have engaged in since March 1, 2015 besides those activities performed with or for Innovative.

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**   All documents you may use as exhibits at any hearing on Innovative's Motion for Temporary Injunction.

**RESPONSE:**

**REQUEST NO. 2:**   All agreements, contracts, memoranda or understandings between you and any other party for any business purpose since March 1, 2015.

**RESPONSE:**

**REQUEST NO. 3:**   All documents, notes or memoranda in your possession relating to any client or prospective client of Innovative.

**RESPONSE:**

**REQUEST NO. 4:**   All documents, notes or memoranda in your possession relating to any of Innovative's products, distributors, or manufacturers.

**RESPONSE:**

**REQUEST NO. 5:**   All calendars (in any form, including electronic) since March 1, 2015, containing any entries related in any way to Innovative, any client or prospective client of Innovative, or any of Innovative's distributors or manufacturers.

**RESPONSE:**

**REQUEST NO. 6:** Any and all communications between you and any client or prospective client of Innovative since March 1, 2015, including but not limited to exchanges using your personal phones or email accounts.

**RESPONSE:**


**REQUEST NO. 7:**  Any and all communications between you and any of Innovative's distributors or manufacturers since March 1, 2015, including but not limited to exchanges using your personal phones or email accounts.

**RESPONSE:**


**REQUEST NO. 8:** All documents relating to any and all contracts, bids, invoices, sales, letters, proposals, presentations, calculations, estimates, or solicitations of any client or prospective client of Innovative on behalf of any other person or entity, including Magnolia.

**RESPONSE:**


**REQUEST NO. 9:**  Any and all communications between you and any person, regarding any client or prospective client of Innovative since March 16, 2016.

**RESPONSE:**

6

**REQUEST NO. 10:** Any and all personal or business bank records reflecting your sources of income since March 1, 2015.

**RESPONSE:**


**REQUEST NO. 11:** All documents you obtained by reason of your contractual relationship with Innovative, including but not limited to documents regarding any client or prospective client of Innovative or any of Innovative's services, marketing, strategies, plans, agreements, products, contractors, manufacturers, distributors, or employees.

**RESPONSE:**


**REQUEST NO. 12:** Any and all communications from your Innovative email account to any of your personal email accounts, relating in any way to Innovative, any customer or prospective customer of Innovative, or Innovative's products, distributors or manufacturers, since March 1, 2015.

**RESPONSE:**


**REQUEST NO. 13:** Any and all communications between you and any contractor or employee of Innovative since March 1, 2015, including but not limited to exchanges using your personal phone or email accounts.

**RESPONSE:**

7

**REQUEST NO. 14:** Any and all phone records for all of your home and cellular telephones since March 1, 2015.

**RESPONSE:**


**REQUEST NO. 15:** Any and all documents relied upon, utilized, reviewed or consulted in answering the above Interrogatories.

**RESPONSE:**


Respectfully Submitted,

_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 13th day of April, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
nbatey@bateylawoffice.com

_____
*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC          PLAINTIFF

v.

KRISTEN BRANNON
and
MAGNOLIA HEALTH SOLUTIONS, LLC          DEFENDANTS

\* \* \* \* \*

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY REQUESTS PRIOR TO DEFENDANT'S RESPONSIVE PLEADINGS

Come now, Defendants, Kristen Brannon and Magnolia Health Solutions, LLC, by and through counsel, and respectfully submit their Opposition to Plaintiff's Motion for Expedited Discovery.

## INTRODUCTION

Without waiving objections to improper jurisdiction, venue, service, and timeliness of notice of hearing, Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively "Defendants") hereby request this Court deny Plaintiff's Motion for Expedited Discovery on the grounds that it would be unduly burdensome and unfairly prejudicial to Defendants.

## SUMMARY OF ARGUMENT

There are a number of substantial reasons which warrant denial of Plaintiff's motion to expedite discovery. Without expressly saying so, Plaintiff seeks an order from this Court allowing full-blown one-sided merits discovery <u>before</u> Defendants have even filed a responsive

pleading. Further, the discovery sought by Plaintiff can only be characterized as a "fishing expedition." Plaintiff has failed to show any unusual circumstances or crisis situation that would warrant litigating at light speed. Finally, even if the Court sees fit to grant the Plaintiff's request, the Plaintiff's proposed timeframe would be overly burdensome and grossly unreasonable such that Defendants' Answer and Counterclaims would be unfairly prejudiced.

## ARGUMENT

### I. AN ORDER EXPEDITING FULL-BLOWN MERITS DISCOVERY BEFORE RESPONSIVE PLEADINGS ARE FILED IS UNWARRANTED.

On the same day the parties agreed to constructive service, April 8, 2016, Plaintiff Innovative Health Care Solutions, LLC ("IHCS") filed a motion for expedited discovery. There are no unusual circumstances or a crisis situation that would warrant light-speed litigation. Defendants have no access to IHCS's servers or physical customer files. Ms. Brannon worked on the Plaintiff's equipment at the Plaintiff's office and thus the electronic files and emails are already within Plaintiff's custody and control.

In sum, the Court has before it a request for expedited discovery where there is neither a motion for a preliminary injunction nor a motion for a temporary restraining order, and where the entire basis for the lawsuit will soon be called into question. Only after Defendants have been allowed a reasonable time to assemble records to thoroughly respond to Plaintiff's Verified Complaint and to justify all compulsory counterclaims and impleader of indispensable parties should Plaintiff be allowed to seek discovery.

### II. PLAINTIFF'S REQUESTS ARE NOT NARROWLY TAILORED.

The discovery requested by Plaintiff is not premised upon narrowly tailored requests designed to elicit specific, identified information. Rather, it so overbroad that it appears to

largely relate to what can only be characterized as a sweeping fishing expedition.  Further, the Defendants have already made good faith efforts to informally provide responsive documents to counter allegations in Plaintiff's Verified Complaint.

By and through its Interrogatories Plaintiff seeks overly broad information dating back to March 1, 2015 – three months prior to the alleged effective timeframe of the Agreements. Plaintiff further seeks information from Defendants regarding a hypothetical hearing.  By and through its Requests for Production of Documents, Plaintiff seeks overly broad and unduly burdensome production from Defendants regarding a hypothetical hearing, all of Defendants' calendars since March 1, 2015 (three months prior to the alleged effective timeframe of the Agreements at issue), all of Defendants' personal and business bank records reflecting sources of income, any and all communications between Defendants and any employees and independent contractors of Innovative, and finally any and all phone records from Defendants' home and cell phones.  All of this has been requested within ten days of service and before the Defendants have filed any responsive pleadings.

Perhaps most troublesome is the Plaintiff's demand to force the deposition of Kristen Brannon in her individual capacity, and as a representative of Magnolia, within fourteen days of service; also before the Defendants have filed any responsive pleadings.

## III.     THE RESPONSE TIME REQUESTED WOULD BE BURDENSOME AND UNREASONABLE.

Plaintiff's Order notes ten days to respond to written interrogatories and document requests and then fourteen days to appear for a deposition.  Defendants again point out that they have not yet filed a responsive pleading, nor will the deadline to have done so have passed at the time this Motion is heard on April 18, 2016.  If Plaintiff's motion is granted, Defendants will be forced to simultaneously compile an Answer, assert compulsory counterclaims, respond to

3

Plaintiff's overbroad interrogatories, requests for production, and prepare to be deposed. Such a timeframe would place an undue burden on Defendants resulting in unfair prejudice on their claims.

## CONCLUSION

Plaintiff has not asserted any reason that such extensive information is necessary on an expedited basis in this case. There is no claim that evidence will be destroyed. There is no request for a preliminary injunction or a temporary restraining order in this action.

The Defendants do not ask for any special treatment or extensions of time. Defendants merely beg the Court for a normal litigation timeframe such that Defendants' Answer, asserted defenses, counterclaims are not unfairly prejudiced during one-sided merits discovery.

Accordingly, the Plaintiff's Motion for Expedited Discovery should be **DENIED**.

Respectfully submitted this 14th day of April, 2016.

Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com

*Counsel for Defendants, Kristen Brannon and Magnolia Health Solutions, LLC*

4

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on April 14th, 2016, I electronically filed the foregoing DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

     R. Kenyon Meyer
     Corinne E. Keel
     DINSMORE & SHOHL LLP
     101 South Fifth Street, Suite 2500
     Louisville, Kentucky 40202
     kenyon.meyer@dinsmore.com
     corinne.keel@dinsmore.com
     *Counsel for Plaintiff, Innovative*
     *Health Care Solutions, LLC*

 

     Nolia G. Batey
     BATEY LAW OFFICE, PLLC
     130 Fairfax Avenue, Suite LL-B
     Louisville, KY 40207
     P: (502) 509-9407
     F: (502) 470-3634
     nbatey@bateylawoffice.com

     *Counsel for Defendants, Kristen*
     *Brannon and Magnolia Health*
     *Solutions, LLC*

5

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

* * * * *

## ORDER DENYING PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

This matter, coming to be heard on Plaintiff's Motion for Expedited Discovery, the

parties having been heard, and the Court being fully and sufficiently advised,

IT IS HEREBY ORDERED and ADJUDGED that the motion is **DENIED**.

SO ORDERED, this _____ day of _____, 2016.

_____
Judge, Jefferson Circuit Court

6

Tendered by:

_____

Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com

FILED CLERK'S OFFICE
JEFFERSON DISTRICT COURT

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT      PM 7 20
DIVISION 1
CASE NO. 16-CI-01435 CLERK 10

INNOVATIVE HEALTH CARE SOLUTIONS, LLC —————— DC      PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                        DEFENDANTS

## <u>MOTION FOR TEMPORARY INJUNCTION</u>

Pursuant to CR 65, Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff"), by counsel, hereby moves for a temporary injunction against Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), Plaintiffs tender the attached memorandum and proposed order.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                           DEFENDANTS

<u>MEMORANDUM IN SUPPORT OF</u>
<u>MOTION FOR TEMPORARY INJUNCTION</u>

In support of its motion for temporary injunction filed pursuant to CR 65,

Plaintiff Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff"),

by counsel, states as follows.

**INTRODUCTION**

This is an action for legal and equitable relief against former Innovative

contractor Kristen Brannon and her company, Magnolia Health Solutions, LLC.

Evidence exists that Brannon and Magnolia have violated confidentiality, non-

disclosure, non-competition, and non-solicitation clauses of her contracts with

Innovative.

Innovative's remedy in this case will be irreparably impaired unless the Court

grants a temporary injunction to protect the *status quo* and prevent Defendants from

continuing to breach their agreements with Innovative.  The material facts required to

support the issuance of injunctive relief are evidenced by the facts alleged in the

Verified Complaint.

2

## FACTUAL BACKGROUND

The material facts contained in this section are supported by allegations in the Verified Complaint.

Innovative is in the business of marketing and supplying, through a distributor, non-narcotic pain management products and devices to medical providers directly. In particular, Innovative specializes in the sale of a family of products known as the Neuro-Stim System (NSS) products. NSS products are FDA approved devices designed to relieve pain through auricular stimulation, i.e. stimulation devices targeting peripheral and cranial nerves for chronic and acute pain. Innovative's clients are physicians and medical facilities. Innovative works with independent contractors to service existing clients and develop new clients throughout the United States.

Innovative provides its contractors with, among other things, business development opportunities, marketing and logistical support, access to clients, access to its distributor and manufacturer, and product design and use information. Innovative's contractors are also given access to confidential and proprietary information such as pricing, cost data, patient information, new product ideas, and client account information, the misuse and misappropriation of which would cause irreparable injury to Innovative.

Innovative regularly conducts repeat business with its clients. An important part of Innovative's business is the relationship and good will Innovative forms with each client. Through significant cost and effort, Innovative has developed a client database,

as well as contractor and distributor relationships that are invaluable, proprietary, and not discernible through public information.

Innovative requires all of its contractors to sign agreements containing, among other things, non-competition, non-solicitation, confidentiality, and non-disclosure clauses. The purpose of these agreements is to protect Innovative's legitimate business interests in its client relationships, its distributor relationships, and its confidential industry information.

Innovative insists that all potential contractors execute an initial Non-Disclosure and Confidentiality Agreement before releasing confidential information to them. Because Innovative specializes in marketing and supplying newly FDA approved products, there is inherent value in protecting Innovative's status as an early market arrival. Its relationships with its clients and suppliers are important to Innovative's value as a company.

In anticipation of launching Innovative's current product line, Campbell retained Brannon to conduct the preparation necessary to ensure that Innovative could provide medical billing services to facilitate insurance reimbursement for Innovative's future clients. Beginning in March 2015, Brannon was paid to ensure that Innovative could eventually provide these services.

From March 2015 to June 2015, while Innovative was finalizing marketing materials and contractor agreements in order to bring NSS products to market, Innovative was not yet engaged in providing medical billing services and had no clients. Brannon's role was to provide Innovative with information on medical billing

procedures and to establish Innovative's billing protocols and to ensure billing compliance. Brannon was paid $3500 per month.

**The First Agreement:**

On June 19, 2015, prior to Innovative actively engaging in the sale of NSS products to clients or providing related billing services, Brannon signed a Non-Disclosure and Confidentiality Agreement (the "First Agreement"). The First Agreement includes confidentiality, non-disclosure, non-solicitation, and non-competition clauses.

Nondisclosure: The terms of the First Agreement provide that the signing contractor "agrees to hold in confidence, and cause [its representatives] to hold in confidence any and all Confidential Information," as defined by the First Agreement, and "not [to] use any Confidential Information for any purpose except in connection with the Purpose [of the First Agreement]."

Defining Confidential Information: The terms of the First Agreement provide that Confidential Information includes the following non-public information disclosed to the Contractor by Innovative:

> documents, marketing and marketing research, know-how, market potential information, consumer/IHCS data, clinical data, formulas, product applications, potential product use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets . . . business information, and product specifications, as well as data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions[.]

5

<u>Return of Confidential Information</u>: The First Agreement provides that the signing contractor or potential contractor

> shall not make any copies of the Confidential Information except as required in connection with the Purpose [of the First Agreement] and, in all instances shall reproduce (as set forth in the original) any proprietary rights notices on any copies. Upon request, Contractor shall return all documents and other tangible objects containing or representing Confidential Information and all copies.

<u>Non-Competition and Non-Solicitation</u>: The non-competition and non-solicitation clauses of the First Agreement require as follows:

> **Non-Competition and Non-Solicitation.** During the term of this Agreement and for eighteen (18) months immediately thereafter, Contractor agrees that it will not directly or indirectly do any of the following within the continental United States:
>
> (i) engage in any practice or action to promote, market, advertise or solicit sales for any recently FDA approved field stimulation device targeting peripheral and cranial nerves for chronic and acute pain [(hereinafter "NSS Device")].
>
> (ii) manage, operate, or provide consulting services to any entity that promotes, markets, advertises, or solicits sales for any [NSS Device].
>
> (iii) have any sort of ownership, debt, or contractual relationship directly or indirectly with any entity that promotes, advertises or solicits sales for any [NSS Device].
>
> Contractor also agrees that it will not directly or indirectly divert, call on, solicit, or communicate with any of IHCS's Clients or Prospective Clients, regardless of their location, for the purposes of obtaining business or developing relationships with such Clients or Prospective Clients, provided the Contractor has had either: (i) some involvement with that Client or Prospective Client during the 6-month period before the end of the latter of: (a) this Agreement or (b) Contractor's agreement to provide services to IHCS; or (ii) been provided some information about the Client or Prospective through for Contractor's involvement with IHCS.

"The terms 'Clients' and 'Prospective Clients' are defined in this agreement as any entity or person from whom IHCS has received or attempted to receive compensation at any time during the 6-month period before the end of Contractor's agreement with IHCS."

Contract Term: The First Agreement provides that it

shall remain in effect until terminated in writing by a party to this Agreement (the "Termination Date"). Except as otherwise described herein, the obligations of Contractor hereunder shall survive for five (5) years from the Termination Date, except confidential information that constitutes (i) trade secrets of the disclosing party shall be subject to the terms of this agreement for as long as such information remains a trade secret under applicable law; and (ii) personally identifiable information shall be subject to the terms of this Agreement forever, without expiration.

Remedy: Furthermore, the First Agreement provides that "any violation or threatened violation of this Agreement may cause irreparable injury to IHCS, entitling IHCS to seek injunctive relief, without the need to post bond, in addition to all legal remedies."

**The Second Agreement**

In August 2015, Innovative began full operations and Brannon began performing medical billing services for Innovative clients. Prior to November 11, 2015, Innovative offered Brannon and Magnolia the opportunity to earn additional income by selling Innovative's products to clients, directly and indirectly through subcontractors.

On November 11, 2015, Brandon, on behalf of Magnolia, executed an Independent Contractor Agreement (the "Second Agreement") with Innovative. Under the terms of the Second Agreement, Brannon and Magnolia agreed to perform sales

7

representative functions and to receive compensation in the form of fees per NSS product unit sold.

After executing the Second Agreement, Brannon continued to provide billing services for Innovative for a fee of $3500 per month. The Second Agreement allowed Defendants to expand their earning potential by selling products to clients directly and through subcontractors. Brannon and Magnolia engaged a single subcontractor, Greg Williams.

Non-Solicitation of Employees/Contractors: The Second Agreement provides, "Contractor agrees that during the term and for a period of twelve (12) months following the termination or expiration of this Agreement, Contractor shall not make any solicitation to employ IHCS's employees, officers, managers and personnel, including IHCS independent contractors, without the written consent of IHCS."

In December 2015, Brannon took on additional office responsibilities, including facilitating communications with and submitting orders to Innovative's product distributor. In exchange, Brannon asked for a higher monthly fee to perform expanded services for Innovative. Innovative agreed to pay Brannon $5000 per month for her expanded services to Innovative beginning in January 2016.

In her various roles for Innovative, Brannon was responsible for a broad range of functions. Brannon conducted precertification and billing processes, serviced client accounts, served as a point person for communication with clients, communicated on behalf of Innovative to Innovative's distributor, and engaged as a sales representative to sell Innovative's NSS products. In these multiple roles, Brannon played a central part in

the day to day operation of Innovative and had access to highly important business information.

In the course of her relationship with Innovative, Brannon was provided access to Innovative's software database containing confidential and proprietary information, including information such as product details, cost data, pricing, client contact and account information, patient medical information, and other information about client needs.

Altogether during her time working with Innovative, Brannon gained a substantial amount of information regarding Innovative's client identities and contact information, client accounts, client requirements and specifications, financial data, sales figures, costs and pricing figures, marketing and business plans, marketing concepts, company practices, and similar confidential and proprietary information. Brannon will cause irreparable damage to Innovative's client relationships and good will anywhere that Innovative does business by using the knowledge and information that Innovative provided to Brannon during her work with Innovative.

Brannon continued to provide billing services for Innovative in January and February of 2016. In February, Brannon ceased performing billing services for Innovative. Brannon continued to serve as a liaison between Innovative clients, representatives, and the distributor of Innovative's products and continued to sell Innovative's products under the Second Agreement through early March 2016.

On March 16, 2016, Robin Campbell appeared on behalf of Innovative at a hearing regarding an appeal of the denial of unemployment benefits to a former

Innovative employee who left her position with Innovative in January 2016. The former employee presented, as evidence in the hearing, a printed text message exchange between the former employee and Brannon. In the exchange, which took place in January 2016, Brannon makes reference to starting a new business venture at that time and doing work similar to Brannon's work for Innovative. Brannon also referenced an on-going offer to hire Innovative's former employee in the new venture, which solicitation appears to have begun before the former employee left her job with Innovative.

Since becoming aware of the text messages, Innovative has discovered two clients with executed billing contracts with Innovative, for which there is no information in Innovative's computer system. This violates Innovative's protocols. Both clients were recruited by Magnolia's subcontractor, Greg Williams. Brannon was responsible for entering information for these clients into Innovative's billing software and failed to do so in violation of protocol. This is consistent with intentions to divert these clients to her new venture.

Innovative also discovered an E-Fax communication sent to Innovative from an additional client requesting precertification of a patient. The client's intake information is missing from Innovative's database. Brannon was responsible for entering information for this client into Innovative's database and failed to do so in violation of ordinary business practices. The client was recruited by Brannon's subcontractor, Greg Williams.

Innovative also has discovered unauthorized altered versions of its product order forms, listing Brannon's personal cell phone number as the primary client contact, rather than Innovative's current business phone number. This was done by Brannon without approval by Innovative. Innovative has also discovered that Brannon has communicated on her personal email address with Innovative's clients, despite having an Innovative email address.

Upon information and belief, Brannon has communicated to her subcontractor that she and Magnolia intend to launch a new product line, independent of Innovative, and utilize her subcontractor.

After filing the Verified Complaint, Innovative, through counsel, sought assurances that Defendants had not and were not violating the restrictive covenants of their agreements with Innovative. Innovative sought assurances from Defendants though informal discovery, seeking evidence of payments to Defendants and communications with Innovative's clients and representatives. Defendants declined to provide these, citing privacy concerns, even though Innovative was willing to sign an agreed protective order preventing disclosure or use of any documents produced. Defendants disclosed Magnolia's PayPal records. However, this disclosure did provide full information about the sources of Defendants' income. Indeed, Innovative itself has consistently paid Brannon and Magnolia by check, not by Pay Pal, so its payments to Magnolia and Brannon were not represented in this disclosure.

Since filing its Verified Complaint, Innovative has discovered additional evidence that Brannon violated Innovative's protocols in record keeping and

correspondence with Innovative's clients and that Defendants have violated—and may be violating—their agreements with Innovative. In particular, the PayPal records produced by Defendants showed thousands of dollars were paid to Magnolia by an entity associated with Innovative. Innovative now moves the Court for a temporary injunction to protect its rights under its agreements with Defendants.

**STANDARD OF REVIEW**

Pursuant to CR 65.01, a party may petition the circuit court for injunctive relief in the form of a temporary injunction.  CR 65.02; CR 65.04.  In particular, a temporary injunction may be granted when the court finds the following:

> 1) that the movant's position presents "a substantial question" on the underlying merits of the case, i.e. that there is a substantial possibility that the movant will ultimately prevail;

> (2) that the movant's remedy will be irreparably impaired absent the extraordinary relief; and

> (3) that an injunction will not be inequitable, i.e. will not unduly harm other parties or disserve the public.

*Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482 (Ky. 2008) (citing *Cyprus Mountain Coal Corporation v. Brewer*, 828 S.W.2d 642, 39 4 Ky. L. Summary 41 (Ky. 1992); *Maupin v. Stansbury*, 575 S.W.2d 695 (Ky. App. 1978)).

Each of these elements weighs in favor of this Court granting injunctive relief in favor of Innovative.

## ARGUMENT

**A.    Innovative Has Demonstrated a Substantial Question on the Merits.**

The first factor requires only that Innovative show a "substantial question" warranting trial on the merits in order to obtain the requested relief. *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482 (Ky. 2008). This standard is relatively light in that it does not require proof at this juncture that a plaintiff would succeed on the merits at trial. *Maupin v. Stansbury*, 575 S.W.2d 695 (Ky. App. 1978) ("the actual overall merits of the case are not to be addressed" in evaluating request for temporary injunctive relief). The allegations of the Verified Complaint satisfy this first factor.

Restrictive covenants such as Innovative's are regularly enforced in Kentucky state and federal courts. Indeed, the public policy of Kentucky "is to enforce them unless very serious inequities would result." *Lareau v. O'Nan*, 355 S.W.2d 679 (Ky. 1962). Kentucky has long recognized that the public has an interest in enforcement of these agreements, which are necessary commercial tools to protect businesses. *See Hammons v. Big Sandy Claims Servs., Inc.*, 567 S.W.2d 313, 315 (Ky. App. 1978) (describing restrictive covenants as "a valuable business tool"); *Kegel v. Tillotson*, 297 S.W.3d 908, 911 (Ky. App. 2009) (restrictive covenants are "about the only protection available to a business to prevent associates from going out on their own and taking company clients with them.") (internal citations omitted).

Innovative's eighteen month noncompetition and non-solicitation clauses are reasonable in time and scope. Courts regularly uphold restrictive covenants with time periods of at least one year and even up to five years. *Hall v. Willard & Woolsey*, P. S. C.,

471 S.W.2d 316 (Ky. 1971) (one years); *Lareau v. O'Nan*, 355 S.W.2d 679 (Ky. 1962) (five years). Moreover, courts regularly uphold restrictive covenants that are nationwide in scope where the threat to the company's customer base is nationwide in scope. *Genesis Med. Imaging, Inc. v. Demars*, 2008 U.S. Dist. LEXIS 68885, 18-19 (E.D. Ky. Sept. 5, 2008) (enforcing noncompetition covenant for two years with a nationwide geographic scope because the company serviced customers across the United States); *Snider Bolt & Screw, Inc. v. Quality Screw & Nut*, 2009 U.S. Dist. LEXIS 50797 (W.D. Ky. June 11, 2009) (upholding one year covenant not to compete with employer); *Senture, LLC v. Dietrich*, 575 F. Supp. 2d 724 (E.D. Va. 2008) (applying Kentucky law and enforcing non-compete nationwide in scope because the company did business nationwide). Innovative does business nationwide.

Innovative has demonstrated a "substantial question" on the merits of its claim of breach of contract. As the foregoing authorities demonstrate, the restrictive covenants contained in the agreements are reasonable by their terms. Moreover, there is a substantial question that Defendants are currently in breach of their non-competition and non-solicitation covenants. There is no question that Brannon had access to Innovative's clients, prospective clients, and product distributor information, as well as other confidential and proprietary information. This level of access created the opportunity for Defendants to interfere with Innovative's business relationships, solicit Innovative's clients, and otherwise compete with Innovative in violation of restrictive covenants. Furthermore, when Innovative asked Defendants to provide proof of sources of revenue and business communications as assurances that they are not

14

competing, they did not do so.  There is a substantial question that Defendants are violating the restrictive covenants of their agreements with Innovative.

**B.     Innovative's Remedy be Irreparably Impaired if Injunctive Relief Is Not Granted.**

Innovative will suffer irreparable impairment to its ability to obtain relief from breaches of its agreements by reason of Defendants' competition with Innovative.  As such, temporary injunctive relief is appropriate.

It is well-settled that injunctive relief is generally appropriate in these circumstances because the breach of a restrictive covenant threatens irreparable injury. *See Louisville Cycle & Supply Co., Inc. v. Baach*, 535 S.W.2d 230, 232 (Ky. 1976) ("It is well settled that if an employee's covenant not to engage in competition with his employer or former employer . . . is valid and reasonable, equity will assume jurisdiction to enjoin its breach by the employee.") (quotation and citations omitted); *Laruau*, 355 S.W.2d at 681 (the harm is sufficient to invoke "the injunctive powers of the courts, and that, since the damages are not susceptible of monetary valuation, there is no adequate remedy at law.")

With regard to the threat to a customer base, courts have observed specifically that the "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); see also *See Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th. Cir. 2009) ("this court has recognized that a loss of business goodwill may constitute irreparable harm because of the difficulty in calculating

damages"). Courts have also noted the irreparable harm that can result from the use of valuable information to a company's disadvantage. *INVESCO Institutional (N.A.), Inc. v. Johnson*, 500 F. Supp. 2d 701, 714-715 (W.D. Ky. 2007) (enjoining competition because, among other things, the ex-employees might "reveal additional confidential information"); *Brake Parts, Inc. v. Lewis*, 443 Fed. Appx. 27 (6th Cir. 2011) (applying Kentucky law) (enjoining competitor from making products based on confidential and proprietary formulations the competitor had received from an employee who misappropriated the information).

Furthermore, Defendants expressly acknowledged that, should they breach the First Agreement, Innovative would suffer irreparable injury. The First Agreement provides that "any violation or threatened violation of this Agreement may cause irreparable injury to IHCS, entitling IHCS to seek injunctive relief, without the need to post bond, in addition to all legal remedies." As such, Innovative is entitled to an injunction without bond as it pursues legal remedies.

The irreparable harm to Innovative is particularly acute here because of the nature of Defendant's position with Innovative and the knowledge gained regarding Innovative customers and products. Brannon was not only an independent contractor selling Innovative's products, she also performed billing services and liaised with Innovative's product distributor. Defendants' level of access to information, if used to compete with Innovative, could irreparably harm Innovative. This is the classic situation calling for injunctive relief.

C.     **The Equities Favor Granting Injunctive Relief.**

In balancing the equities of a particular situation, courts are required to weigh the relative benefits and detriments to the parties and to consider whether the public interest will be harmed by the issuance of the injunction, or whether its effect will merely be to maintain the *status quo*. *Maupin*, 575 S.W.2d at 699. "It is only where an injunction will operate oppressively and the benefit to the complainant is slight that an injunction will be denied to balance the convenience of the parties." *Pike County Bd. of Ed. v. Belfry Coal Corp.*, 346 S.W.2d 37, 38 (Ky. 1961). Here, the equities weigh strongly in favor of Innovative.

Innovative simply seeks to enforce its agreements to preserve the status quo to protect its customer base, good will, and confidential information. The scope of the non-solicitation and non-competition provisions is appropriately limited to Innovative's clients and products and is only eighteen months in duration. Public policy supports parties' freedom to contract for such obligations. As the Sixth Circuit has stated, "[t]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *Firstenergy Solutions Corp. v. Flerick*, 521 Fed. App'x 521, 529 (6th Cir. 2013).

Furthermore, the purported harm to the Defendants should not be a concern when the acts "were done with full knowledge of plaintiff's rights and with an understanding of the consequences which might ensue." *See Ky. Elec. Development Co's Receiver v. Wells*, 75 S.W.2d 1088, 1095 (Ky. 1934). Innovative has repeatedly notified and reminded Defendants of their legal obligations to Innovative and sought assurances

17

that violations have not and are not occurring. However, Defendants have, thus far, resisted Innovative's efforts in the form limited informal discovery, even under an agreed protective order. There is nothing inequitable about enforcing the parties' Agreements in this case.

## CONCLUSION

Accordingly, pursuant to CR 65, this Court should restrain and enjoin Defendants, Brannon and Magnolia, consistent with the terms of Innovative's proposed order.

Respectfully Submitted,

_____

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

## TEMPORARY INJUNCTION

Plaintiff Innovative Health Care Solutions, LLC ("Innovative" or "Plaintiff") filed a motion for temporary injunction, pursuant to CR 65.03. Based on the facts set forth in the Verified Complaint and the memorandum in support of Plaintiff's motion for a temporary injunction, the Court holds that there is a substantial question that Defendants have violated their agreements with Plaintiff, that Plaintiff's good will and customer relationships will be irreparably injured if Defendants are not enjoined from violating these agreements, and that Plaintiff's ability to enforce a remedy for breach of the agreements will be irreparably impaired if no temporary injunction is entered, the Court hereby finds as follows:

1.    A substantial question exists regarding whether Plaintiff's rights are being violated by Defendants. Plaintiff is likely to suffer irreparable impairment to its remedy for a breach if a temporary injunction is not entered in this action.

2.    The Court has considered and balanced the various equities in this case. The Court finds these factors and the equities to favor issuance of injunctive relief, which will preserve the status quo.

Therefore, based on these findings, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED PURSUANT TO CR 65.03 that Defendants Kristen Brannon and Magnolia Health Solutions, LLC and persons in active concert or participation with them are hereby RESTRAINED from:**

A.    The sale or distribution of NSS products (or similar products as described in the Non-Disclosure and Confidentiality Agreement) in competition with Innovative, anywhere in the United States;

B.    Soliciting, inducing, contacting, or persuading any client of Innovative to terminate, reduce or refrain from renewing or extending its relationship with Innovative in regard to the purchase of NSS products (or similar products as described in the Non-Disclosure and Confidentiality Agreement) marketed and sold by Innovative, or to become a client of or enter into any contractual or other relationship with Defendants;

C.    Directly or indirectly using or disclosing to any third person any confidential information of Innovative, including, but not limited to, documents,   marketing and marketing research, know-how, market potential information, consumer/IHCS data, clinical data, formulas, product applications, potential product use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets, business information, and product

specifications, as well as data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions;

D.      Soliciting to employ Innovative's employees, officers, managers and personnel, including Innovative independent contractors; and

E.      Continuing to possess any confidential information relating to the business of Innovative. Any such information shall be immediately returned to Innovative;

**IT IS HEREBY FURTHER ORDERED** that:

1.      This temporary injunction is entered pursuant to CR 65.03, the material facts alleged by Plaintiff in its Verified Complaint, evidence presented in its memorandum in support of its motion for restraining order, and any evidence presented a hearing on this motion.

2.      The Court, having considered the issue concerning the amount of an injunction bond, has determined, based upon the express terms of the parties' agreements, that no bond shall be required pursuant to CR 65.05.

3.      Unless sooner repealed or modified by subsequent order of the Court, this temporary injunction shall remain in full force and effect until the conclusion of this action.

**SO ORDERED** this _____ day of _____, 2016 at _____ am/pm.

_____
Judge

_____
Date

Tendered by:

_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and complete copy of the foregoing was served by U.S. Mail this 15th day of April, 2016:

Nolia G. Batey
BATEY LAW OFFICE PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
(502) 509-9407
*Counsel for Defendants*

_____

*Counsel for Plaintiff*

NO. 16CI-1435                                 JEFFERSON CIRCUIT COURT
                                                   DIVISION ONE (1)

INNOVATIVE HEATLH CARE SOLUTIONS, LLC            PLAINTIFF

v.                           **ORDER**

APR 2 8

KRISTEN BRANNON

and

MAGNOLIA HEALTH SOLUTIONS, LLC              DEFENDANTS

* * * * * * * *

The Court will conduct a hearing on Plaintiff's Motion For Temporary Injunction on May 4, 2016 at 10:00 a.m. Sixty (60) minutes have been allotted.


                                      BARRY WILLETT
                   JEFFERSON CIRCUIT COURT JUDGE

            Date Signed:    4/26/16

c:     R. Kenyon Meyer
        Corinne E. Keel
        Nolia G. Batey

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK

APR 2 6 2016

BY     KA
    DEPUTY CLERK

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
JUDGE BARRY WILLETT
CASE NO. 16-CI-001435

*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                              PLAINTIFF

v.      <u>DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS</u>
             <u>DEMANDING JURY TRIAL</u>

KRISTEN BRANNON, and                                              DEFENDANTS
MAGNOLIA HEALTH SOLUTIONS, LLC

**AND**

KRISTEN BRANNON, and                                    COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC       COUNTERCLAIM DEFENDANTS
3011 Long Creek Way
Louisville, Kentucky 40245

          SERVE:        Kentucky Secretary of State
                        Summonses Branch
                        700 Capital Avenue, Suite 86
                        Frankfort, Kentucky 40601

and

ROBIN CAMPBELL
3011 Long Creek Way
Louisville, Kentucky 40245

          SERVE:        Robin Campbell
                        3011 Long Creek Way
                        Louisville, Kentucky 40245

and

TROY A. GUINN
3011 Long Creek Way

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000001 of 000043

Louisville, Kentucky 40245

SERVE:      Troy A. Guinn
            3011 Long Creek Way
            Louisville, Kentucky 40245

* * * * *

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or "Counterclaim Plaintiffs"), and for their Answer to Plaintiff's Complaint, defenses, and counterclaims against Innovative Health Care Solutions, LLC ("IHCS" or "Plaintiff" or "Innovative"), Robin Campbell ("Campbell"), and Troy Guinn ("Guinn") (collectively referred to as "Counterclaim Defendants") by and through undersigned counsel, state the following:

## ANSWER

### Nature of the Action

1.      Ms. Brannon and Magnolia deny that Ms. Brannon has violated or attempted to violate the confidentiality, non-disclosure, non-competition, and non-solicitation clauses of the Agreements with Innovative, as alleged in paragraph 1.

### Parties

2.      Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the truthfulness of the statements in paragraph 2. The first Agreement to which Plaintiff's Complaint refers, the June 19, 2015 Non-Disclosure and Confidentiality Agreement (the "First Agreement") lists IHCS as an Ohio limited liability company. (See Exhibit 1). However, the second Agreement to which Plaintiff's Complaint refers, the November 16, 2015 Independent Contractor Agreement, (the "Second Agreement") lists IHCS as a Kentucky limited liability

-2-

company. (See Exhibit 2). Both the Ohio and Kentucky Secretaries of State reflect business filings for this entity. Ms. Brannon and Magnolia must therefore deny the allegations in paragraph 2.

3.     Ms. Brannon and Magnolia deny the allegations in paragraph 3. Ms. Brannon is a Kentucky resident residing at 12409 Wynmeade Place, Louisville, Kentucky 40223.

4.     Ms. Brannon and Magnolia deny the allegations in paragraph 4 to the extent they refer to Magnolia as a corporation.  Magnolia is a Kentucky limited liability company with its principal place of business in Jefferson County, Kentucky.  Ms. Brannon and Magnolia admit that Ms. Brannon is the organizer, registered agent, and sole member of Magnolia.

## Jurisdiction and Venue

5.     The allegations in paragraph 5 of the Complaint state a legal conclusion to which no response is required; however, to the extent a response is required, Ms. Brannon and Magnolia deny that Plaintiff is entitled to any award of damages from Ms. Brannon or Magnolia.

## Facts

6.     Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny the complete extent or specializations of Plaintiff's business practices.  Ms. Brannon and Magnolia admit that Plaintiff has marketed and sold NSS devices.

7.     Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny the entirety of Plaintiff's clientele.  Ms. Brannon and Magnolia further lack knowledge or information sufficient to admit or deny the intents and purposes of its relationship with its employees/independent contractors.

8.     In response to the allegations in paragraph 8, Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny exactly what is provided to all of Plaintiff's contractors, and thus must deny the same. Ms. Brannon and Magnolia further lack knowledge or

information sufficient to admit or deny the exact extent of confidential and proprietary information provided to all of Plaintiff's contractors, and thus must deny the same.

9.     On information and belief, Ms. Brannon and Magnolia admit that Plaintiff has, in the past, conducted repeat business with some of its clients. However, Ms. Brannon and Magnolia lack knowledge or information sufficient to form a belief as to truthfulness or accuracy of the remaining allegations in paragraph 9, and therefore must deny the same.

10.     Ms. Brannon and Magnolia lack knowledge or information to admit or deny Plaintiff's practices with all of its contractors or Plaintiff's intents or purposes regarding its agreements. Ms. Brannon and Magnolia must therefore deny the allegations in paragraph 10.

11.     In response to the allegations in paragraph 11, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the full extent of Plaintiff's contractor requirements or purposes behind its agreements, and Ms. Brannon and Magnolia must therefore deny the same.

12.     On information and belief, Ms. Brannon and Magnolia admit the allegation in paragraph 12 of the Complaint to the extent that Robin Campbell ("Campbell") managed a medical clinic prior to March 2015. Ms. Brannon and Magnolia would clarify that Troy Guinn ("Guinn") assisted Ms. Campbell and acted in the capacity of a business partner. On information and belief, Ms. Brannon and Magnolia deny that Campbell recommended that the clinic physician hire her; Campbell's partner Guinn initially asked Ms. Brannon if she would leave her then full-time job and assist in getting the clinic set up. Guinn noted that he would ensure the billing contract would be given to Ms. Brannon once clinic setup was complete. Ms. Brannon and Magnolia further deny that these billing activities were unrelated to IHCS, as payments came from that company.

-4-

13.     On information and belief, Ms. Brannon and Magnolia admit that the medical clinic's physician separated from the clinic in March, 2015. Ms. Brannon and Magnolia deny the remaining allegations of paragraph 13.

14.     Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the truth of the allegation in paragraph 14, and must therefore deny the same.

15.     Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the accuracy of Campbell's stated intentions in paragraph 15, and must therefore deny the same. Ms. Brannon and Magnolia would again clarify that they were retained by Guinn.

16.     Ms. Brannon and Magnolia deny the allegations in paragraph 16. Campbell's partner, Guinn, insisted that Ms. Brannon create an LLC (Magnolia) through which Plaintiff would pay her.

17.     In response to the allegations in paragraph 17, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the exact timing of Plaintiff's NSS business practices. Ms. Brannon and Magnolia deny the allegations regarding the extent of her role and what she was paid. Ms. Brannon and Magnolia clarify that Ms. Brannon was paid a salary of $1,850.00 every two weeks and performed all assigned duties at the IHCS office until December 31, 2015. Ms. Brannon and Magnolia admit to performing nominal research at Mr. Guinn and Ms. Campbell's request.

18.     In response to the allegations in paragraph 18, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the timing of Plaintiff's sale of NSS products to clients or related billing services. Ms. Brannon and Magnolia admit that an agreement was signed on June 19, 2015 and believe that the Agreement speaks for itself.

-5-

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000005 of 000043

19.    In response to the allegations in paragraph 19, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

20.    In response to the allegations in paragraph 20, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

21.    In response to the allegations in paragraph 21, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

22.    In response to the allegations in paragraph 22, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

23.    In response to the allegations in paragraph 23, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

24.    In response to the allegations in paragraph 24, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

25.    In response to the allegations in paragraph 25 of the Complaint, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to what would constitute "full operations." Ms. Brannon and Magnolia admit the allegations to the extent that Ms. Brannon performed NSS billing for Plaintiff's clients.

26.    Ms. Brannon and Magnolia would clarify the allegations in paragraph 26 to the extent that Magnolia sold Plaintiff's products to clients, directly or indirectly, through subcontractors.

27.    In response to the allegations in paragraph 27, Ms. Brannon and Magnolia admit to signing an Agreement on November 16, 2015. Ms. Brannon and Magnolia state that the Agreement speaks for itself and thus deny any additional characterization of its terms.

-6-

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000006 of 000043

28.      In response to the allegations in paragraph 28, Ms. Brannon and Magnolia admit to providing billing services and other administrative services for a salary of $1,850 every two weeks ($3,700.00 per month) until January, 2016.  Ms. Brannon and Magnolia also admit to engaging subcontractor Greg Williams ("Williams") but would clarify that this occurred because Guinn asked Ms. Brannon to place Williams under Magnolia as a subcontractor.  On information and belief, Williams originally contracted directly with IHCS.

29.      In response to the allegations in paragraph 29, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

30.      Ms. Brannon and Magnolia admit the allegations in paragraph 30 to the extent that Ms. Brannon took on additional responsibilities in December, 2015.  Ms. Brannon and Magnolia admit to receiving $2,500 every two weeks ($5,000.00 per month) for billing and administrative services beginning in January, 2016.

31.      On information and belief, Ms. Brannon and Magnolia admit the allegations in paragraph 31 to the extent that Ms. Brannon performed a broad range of functions for Plaintiff, she was a central part of Plaintiff's operations, and that she, at times, had access to otherwise confidential information.

32.      Ms. Brannon and Magnolia admit the allegations in paragraph 32.

33.      Ms. Brannon and Magnolia admit the allegations in paragraph 33 to the extent that she was exposed to a substantial amount of information.  Ms. Brannon and Magnolia, however, deny the allegations to the extent that they suggest she retained any information or could recall it now – over a month after separation.

34.      Ms. Brannon and Magnolia deny the allegations in paragraph 34.

D536A413-50B6-4805-A7AE-7CA88A6695EE : 000007 of 000043

35.     In response to the allegations in paragraph 35, Ms. Brannon and Magnolia admit that Ms. Brannon provided billing services in January and February of 2016. Ms. Brannon ceased billing services in late February.

36.     On information and belief, Ms. Brannon and Magnolia admit the allegations contained in paragraph 36, to the extent that Heather Geary ("Geary") was separated from her employment with Plaintiff in January, 2016.

37.     On information and belief, Ms. Brannon and Magnolia admit that a text message exchange was presented at an unemployment hearing as alleged in paragraph 37. However, Ms. Brannon and Magnolia believe the text messages speak for themselves and deny any additional characterization of their terms. Ms. Brannon and Magnolia admit that the text exchange discusses a business venture, but deny the characterization that the work was similar to Ms. Brannon's work for Innovative. Ms. Brannon was referring to credentialing services. Ms. Brannon and Magnolia further deny the characterization of an on-going offer to hire Innovative's former employee. Ms. Brannon did ask Geary whether she would be interested in working with her. However, Ms. Brannon and Geary had performed personal injury account collections together previously, of which Plaintiff was aware and to which Plaintiff did not object, and thus waived any later objection thereto.

38.     In response to the allegations in paragraph 38, Ms. Brannon and Magnolia are without sufficient information or knowledge to confirm or deny the allegations without more specific details. Ms. Brannon and Magnolia admit, however, that the alleged protocols were informal and perpetually in flux. Ms. Brannon and Magnolia further admit that Plaintiff has changed its protocols numerous times, including changing when information should be entered.

-8-

Campbell had instructed Ms. Brannon to not enter client information into Plaintiff's software, Kareo, if the clients were not going to be billed from IHCS.

39.     In response to the allegations in paragraph 39, Ms. Brannon and Magnolia are without sufficient information or knowledge to confirm or deny the allegations without more specific details.  Ms. Brannon and Magnolia admit, however, that the alleged protocols and business practices were informal and perpetually in flux.  Ms. Brannon and Magnolia further admit that Plaintiff has changed its protocols numerous times, including changing when information should be entered.  Campbell had instructed Ms. Brannon to not enter client information into Plaintiff's software, Kareo, if the clients were not going to be billed.

40.     On information and belief, Ms. Brannon and Magnolia deny the allegations in paragraph 40 to the extent that the Plaintiff was unaware that the product forms contained Ms. Brannon's cell phone number.  The order form was changed to include Ms. Brannon's number in order to avoid having the clients directly contact the distributor or manufacturer.  Plaintiff notes in its own complaint that Ms. Brannon "...conducted precertification and billing processes, serviced client accounts, **served as a point person for communication with clients**, communicated on behalf of Innovative to Innovative's distributor, and engaged as a sales representative to sell Innovative's NSS products." (Defendants' emphasis in **bold underline**) (Plaintiff's Complaint, ¶31, p. 9).

41.     Ms. Brannon and Magnolia deny the allegations in paragraph 41 to the extent they reference a personal email address.  Prior to obtaining an IHCSNATION.COM email address, Ms. Brannon communicated with clients on an email address Guinn and Campbell directed her to use.  That email address was IHCSKB@gmail.com.  On information and belief, Guinn and Campbell maintained passwords for those email addresses. Ms. Brannon admits that Guinn and Campbell

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000009 of 000043

frequently emailed her on her personal email address, but Ms. Brannon denies initiating contact with clients from her personal email address. Guinn and Campbell communicated with Ms. Brannon on her IHCSNation.com email address regarding the Independent Contractor arrangement as well as her administrative and billing duties as an employee.

42.    Ms. Brannon and Magnolia deny the allegations in paragraph 42.

### V.   Count One (Breach of Contract)

43.    In response to paragraph 43 of the Complaint, Ms. Brannon and Magnolia restate, reaffirm, and incorporate by reference their responses to paragraphs 1-42 of the Complaint.

44.    Ms. Brannon and Magnolia deny allegations in paragraph 44 of the Complaint.

45.    Ms. Brannon and Magnolia deny allegations in paragraph 45 of the Complaint.

46.    Ms. Brannon and Magnolia deny allegations in paragraph 46 of the Complaint.

47.    Any allegation contained in Plaintiff's Complaint that is not expressly admitted above is hereby denied by Ms. Brannon and Magnolia.

### FIRST DEFENSE

48.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

49.    Plaintiff's claims should be barred, in whole or in part, by the doctrine of waiver, estoppel, or ratification.

### THIRD DEFENSE

50.    Plaintiff's complaint should be barred by the unclean hands doctrine.

-10-

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000010 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000011 of 000043

## FOURTH DEFENSE

51.    At all relevant times, Ms. Brannon and Magnolia acted in good faith, in fair dealing, and reasonably.  Plaintiff's claims should be barred, in whole or in part, by having failed to act reasonably, in good faith, and in fair dealing.

## FIFTH DEFENSE

52.    The allegations and Agreements, referenced in Plaintiff's Complaint and attached hereto as Exhibit 1 and Exhibit 2, and as part of Plaintiff's tax fraud schemes, were not supported by valid and sufficient consideration and are therefore void and/or unenforceable.

## SIXTH DEFENSE

53.    The allegations and Agreements, referenced in Plaintiff's Complaint and attached hereto as Exhibit 1 and Exhibit 2, and as part of Plaintiff's tax fraud schemes, violate Kentucky public policy and are therefore void and/or unenforceable.

## SEVENTH DEFENSE

54.    The Plaintiff's claims for damages are a result of its own negligent and/or intentional acts and/or omissions of itself for its own agents, representatives, employees and such acts and/or omissions are a complete bar to Plaintiff's right to recovery.

## EIGHTH DEFENSE

55.    Any damages that Plaintiff seeks to recover are the result of the acts and/or omissions of a third party or parties not under the control of Ms. Brannon or Magnolia and such act or omission is a complete bar to the Plaintiff's right to recover against Ms. Brannon and Magnolia or is at least a partial bar to the Plaintiff's right to recover from Ms. Brannon or Magnolia.

56.     Ms. Brannon and Magnolia reserve the right to assert all defenses, whether affirmative or otherwise, about which they currently lack sufficient information, but which may become available during the course of this litigation.

## COUNTERCLAIMS AGAINST IHCS, ROBIN CAMPBELL, TROY A. GUINN

57.     Campbell is the longtime girlfriend of Guinn and the parties live together at 3011 Long Creek Way, Louisville, KY.

58.     On information and belief, Campbell and Guinn are the owners and operators of Innovative Health Care Solutions, LLC.

59.     Ms. Brannon has known Guinn and Campbell for approximately five years. Ms. Brannon originally met Guinn and Campbell when she worked as the Director of Operations at the Louisville Pain Clinic sometime in 2011. Ms. Brannon left the Pain Clinic when it dissolved and she then pursued other administrative roles.

60.     On March 21, 2014, Guinn filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Western District of Kentucky.

61.     In July, 2014, Ms. Brannon began working as the Operations Director for a non-medical home health company.

62.     In January, 2015 Guinn approached Ms. Brannon about leaving her position as Operations Director and working for IHCS. Guinn orally promised Ms. Brannon substantial sums of money, at least $100,000.00 annually, if she left her position as the Operations Director and worked for IHCS.

63.     In January, 2015 Ms. Brannon left her position as the Operations Director for the non-medical home health company in order to go to work for Guinn. Ms. Brannon did not know

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000012 of 000043

at that time that she would be required to sign the Non-Disclosure and Confidentiality Agreement or the Independent Contractor Agreement.

64.     In January, 2015, after Ms. Brannon left her position as Operations Director, Guinn advised her that the IHCS Accountant, Mr. Dahlgren, insisted that Ms. Brannon form a company under which she would be paid by IHCS.

65.     On February 2, 2015, Ms. Brannon formed Magnolia Health Solutions, LLC.

66.     On June 19, 2015 Ms. Brannon signed the Non-Disclosure and Confidentiality Agreement on behalf of Magnolia.

67.     On information and belief, Ms. Brannon was actually an employee of IHCS, and was misclassified as an independent contractor.

68.     Ms. Brannon allowed Guinn and Campbell to operate out of her home's basement from July, 2015 to October, 2015.  IHCS office equipment and furniture was relocated from 213 East Broadway, Louisville, Kentucky to Ms. Brannon's Wynmeade Place home during this time.

69.     On November 10, 2015, Greg Williams signed an Independent Contractor Agreement ("Williams Agreement") (Exhibit 3) with Magnolia, under which he would receive commissions for devices sold.

70.     On November 16 2015, Ms. Brannon signed the Independent Contractor Agreement on behalf of Magnolia, under which she received commissions for devices sold.

71.     Throughout her relationship with Guinn and Campbell, Ms. Campbell questioned some aspects of their business practices.

72.     On March 7, 2016, Guinn and Campbell's fraudulent practices and tax-evasive maneuvers became the clear subject of an action filed in the Jefferson County Circuit Court, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573, in which Century Capital

Group, LLC d/b/a Auto Injury Assistance ("AIA"), alleges in its First Amended Complaint Demanding Jury Trial that Guinn and Campbell are evading a successful judgment against them by comingling assets and diverting funds between the parties and through their various companies.

73.     On March 15, 2016, Guinn's appointed Chapter 7 trustee, Wm. Stephen Reisz ("Mr. Reisz"), filed an action against Campbell alleging tax fraud and evasion schemes between Guinn and Campbell (*Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)). Mr. Reisz is litigating to seize Guinn's and Campbell's assets to recover funds on behalf of Guinn's bankruptcy estate.

74.     Ms. Brannon was terminated from her position with IHCS just days after the bankruptcy trustee's action was filed.

75.     On information and belief, the owners of IHCS, i.e., the sole business representatives on behalf of the Plaintiff, Guinn and Campbell, are the subject of several ongoing federal investigations regarding their fraudulent business practices, commingling of funds, and tax evasion schemes.

76.     On information and belief, Ms. Brannon received a fraudulent 1099 for tax year 2015 from Guinn and Campbell. This 1099 was from Integrity Health Care Solutions, LLC. Ms. Brannon never worked for this company. This 1099 underreported Ms. Brannon's income from IHCS by approximately $50,000.00.

77.     On April 12, 2016, Defendants and counsel met with a U.S. Internal Revenue Service agent, and as advised by the agent, submitted a form used for reporting suspected tax evasion schemes, an "Information Referral" form ("IRS Form 3949-A").

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000014 of 000043

-14-

78.   On information and belief, this litigation is related to perpetrating the fraudulent tax schemes and evasion by Guinn and Campbell and an attempt to conceal information otherwise relevant to the ongoing federal investigations as well as the other pending litigation.

## CLAIMS FOR RELIEF

## COUNT I – BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79.   Ms. Brannon and Magnolia restate, reaffirm, and incorporate by reference their responses to paragraphs 1-78 of the Complaint.

80.   Counterclaim Defendants, IHCS, Robin Campbell, and Troy A. Guinn individually and collectively breached the November 16, 2015 Independent Contractor Agreement (See Exhibit 2) with Magnolia and Ms. Brannon.

81.   As a result of the breach of the Independent Contractor Agreement, Magnolia and Brannon have been damaged and are entitled to damages for breach of contract in an amount to be determined by a jury.

82.   Without consideration to interest, Counterclaim Defendants' owe Ms. Brannon and Magnolia approximately $13,400.00 for compensatory damages as reflected by the following:

   a.   $540.00 for an incomplete payment on the last commission payment made to Magnolia; and

   b.   $12,900.00 for commissions on orders submitted prior to termination of the Independent Contractor Agreement.

83.   As a result of the breach of the Independent Contractor Agreement, Magnolia and Brannon have been damaged and are entitled to damages for breach of contract for expectation damages in an amount to be determined by a jury.

## COUNT II – TORTIOUS INTERFERENCE WITH MAGNOLIA/GREG WILLIAMS CONTRACT

84.     Counterclaim Plaintiffs restate, reaffirm, and incorporate by reference their responses in paragraphs 1-83 of this document.

85.     Counterclaim Plaintiff Magnolia had an independent contractor agreement with Greg Williams ("Mr. Williams") for the sale of NSS devices. (See Exhibit 3).

86.     Counterclaim Defendants knew of the contract and individually and in concert with one another interfered with Ms. Brannon and Magnolia's ability to perform under the Williams Agreement by wrongfully withholding commissions owed.

87.     Ms. Brannon and Magnolia have been damaged as a result of this interference and are entitled to damages in an amount to be determined by a jury.

## COUNT III – DECLARATION OF RIGHTS

88.     Counterclaim Plaintiffs restate, reaffirm, and incorporate by reference their responses in paragraphs 1-87 of this document.

89.     Magnolia has a right to continue business activities involving credentialing services and collections for personal injury accounts.

90.     A genuine dispute exists between the parties concerning the right of Magnolia to provide services unrelated to those previously performed for Counterclaim Defendants. Magnolia is entitled to an order declaring that IHCS, Robin Campbell, nor Troy Guinn possess any right to interfere with Magnolia's business activities.

**WHEREFORE,** for all of the reasons set forth above, the Defendants/Counterclaim plaintiffs respectfully pray as follows:

1. That the Plaintiff's Complaint be dismissed with respect to the Defendant, Kristen Brannon, in her individual capacity, with prejudice;

2. That the Plaintiff's complaint be dismissed with respect to the Defendant, Magnolia Heath Solutions, LLC, with prejudice;

3. Declaration of Magnolia's right to engage in lawful business activities unrelated to those of IHCS, Robin Campbell, or Troy Guinn;

4. Trial by jury on all issues so triable,

5. Compensatory damages in an amount to be determined by a jury;

6. Expectation damages on independent contractor agreement in an amount to be determined by a jury;

7. Punitive damages in an amount to be determined by a jury;

8. A reasonable fee for Ms. Brannon and Magnolia's attorney;

9. Any and all other relief to which Ms. Brannon and Magnolia may appear entitled.

Respectfully submitted,


/s/ Nolia G. Batey
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com

*Counsel for Defendants, Kristen Brannon and Magnolia Health Solutions, LLC*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on April 27, 2016, I electronically filed the foregoing ANSWER, DEFENSES, AND COUNTERCLAIMS with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

      R. Kenyon Meyer
      Corinne E. Keel
      DINSMORE & SHOHL LLP
      101 South Fifth Street, Suite 2500
      Louisville, Kentucky 40202
      kenyon.meyer@dinsmore.com
      corinne.keel@dinsmore.com

      *Counsel for Plaintiff, Innovative*
      *Health Care Solutions, LLC*

                                            */s/ Nolia G. Batey*
                                          Nolia G. Batey

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000018 of 000043

-18-

EXHIBIT

1

**Innovative Health Care Solutions**

**NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT**

This NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT ("Agreement") is made on _C/I9_, 201_6_ by and between Innovative Health Care Solutions, LLC, an Ohio limited liability company ("IHCS"), and _Alicia Brown_ located at _____ ("Contractor").

**1. Purpose.** The parties are interested in exploring the possibility of IHCS engaging Contractor for, or IHCS has engaged Contractor, to provide certain promotional, marketing or other services for IHCS (the "Purpose"). Under the Purpose, IHCS may disclose or has disclosed to Contractor certain confidential information that it desires to be treated as confidential.

**2. "Confidential Information"** means this Agreement, the Purpose (including ideas generated during the Purpose), any contracts between the parties, and any information disclosed by IHCS to Contractor, either directly or indirectly, in writing, orally or by inspection of tangible objects including, without limitation, documents, marketing and market research, know-how, market potential information, consumer/IHCS data, clinical data, formulas, product applications, potential product use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets, software, know-how, formulae, business information, and product specifications, as well as all data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions in relation to the Purpose. For avoidance of doubt, any and all data, results, materials and/or other information resulting from or in any way connected to the Purpose shall be considered Confidential Information. Confidential Information shall not, however, include any information which: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by IHCS; (ii) becomes publicly known and made generally available to the public through no action or inaction of Contractor; (iii) is obtained by Contractor from a third party without a breach of such third party's obligations of confidentiality; or (iv) is independently developed by Contractor without use of or reference to the Confidential Information, as shown by documents and other competent evidence in Contractor's possession.

**3. Non-use and Non-disclosure.** Contractor agrees to and represents and warrants that it will: (i) hold in confidence, and cause its employees, representatives, agents and permitted Subcontractors to hold in confidence, any and all Confidential Information; (ii) not use any Confidential Information for any purpose except in connection with the Purpose; (iii) use at least the same degree of care in protecting, preserving, and avoiding disclosure or dissemination of the Confidential Information as it uses for its own confidential information, but in no event less than a reasonable degree of care; (iv) take all steps as may be reasonably necessary to prevent the disclosure of any Confidential Information to others except to its employees who are required to know the Confidential Information in connection with the Purpose and who are bound to Contractor by a like obligation of confidentiality; and (v) obtain IHCS's written permission prior to using any Confidential Information outside of the Purpose. Notwithstanding the foregoing restrictions, Contractor may disclose any Confidential Information to the extent required by an order of any court or other governmental authority, but only after IHCS has been so notified in writing and has had the opportunity to obtain reasonable protection for such information in connection with such disclosure.

**4. Non-Competition and Non-Solicitation.** During the term of this Agreement and for eighteen (18) months immediately thereafter, Contractor agrees that it will not directly or indirectly do any of the following within the continental United States: (i) engage in any practice or action to promote, market, advertise or solicit sales for any recently FDA approved field stimulation device targeting peripheral and cranial nerves for chronic and acute pain. (ii) manage, operate, or provide consulting services to any entity that promotes, markets, advertises or solicits sales for any recently FDA approved field stimulation device targeting peripheral and cranial nerves for chronic and acute pain. (iii) have any sort of ownership, debt, or contractual relationship directly or indirectly with any entity that promotes, markets, advertises or solicits sales for any recently FDA approved field stimulation device targeting peripheral and cranial nerves for chronic and acute pain. Contractor also agrees that it will not directly or indirectly divert, call on, solicit, or communicate with any of IHCS's Clients or Prospective Clients, regardless of their location, for the purpose of obtaining business or developing relationships with such Clients or Prospective Clients, provided that Contractor has had either: (i) some involvement with that Client or Prospective Client during the 6-month period before the end of the later of (a) this Agreement or (b) Contractor's agreement to provide services to IHCS; or (ii) been provided some information about the Client or Prospective Client through Contractor's involvement with IHCS. The terms "Clients" and "Prospective Clients" are defined in this Agreement as any entity or person from whom IHCS has received or attempted to receive compensation at any time during the 6-month period before the end of

1

DS38A413-50B6-4805-A7AE-7CA88A6895EE : 000019 of 000043

Contractor's Agreement with IHCS. If the scope of any restrictions contained in this section is too broad to permit enforcement of such restrictions to their full extent, then such restrictions shall be enforced to the maximum extent permitted by law, and the parties hereby consent and agree that such scope may be modified accordingly in any proceeding brought to enforce such restrictions.

**5. Subcontractors.** Should Contractor determine that third parties to this Agreement will be required to fulfill any requirements of the Purpose and will need access to the Confidential Information in connection with the same ("Subcontractors"), Contractor will obtain IHCS's written consent prior to disclosure of any Confidential Information to the Subcontractor. If IHCS provides written approval, Contractor shall at a minimum ensure the Subcontractor executes a confidentiality agreement that: (i) is at least as restrictive as the confidentiality obligations in this Agreement; and (ii) names IHCS as an intended third party beneficiary with all legal rights associated thereto to enforce the confidentiality agreement.

**6. Copies/Notices/Return.** Contractor shall not make any copies of the Confidential Information except as required in connection with the Purpose and, in all instances, shall reproduce (as set forth in the original) any proprietary rights notices on any copies. Upon request, Contractor shall return all documents and other tangible objects containing or representing Confidential Information and all copies.

**7. No Obligation.** Unless the parties have otherwise agreed in writing, nothing obligates either party to proceed with any transaction between them.

**8. No Warranty.** ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS." IHCS MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE ACCURACY, COMPLETENESS OR PERFORMANCE OF ANY CONFIDENTIAL INFORMATION.

**9. No License/IHCS Materials.** No license or other intellectual property right is conveyed to Contractor by this Agreement, including rights under patent, trademark, copyright or trade secret. All ideas, designs, agreements, concepts, and materials, whether or not patentable, protectable by copyright or trademark, conceived or made by Contractor (alone or together with IHCS) through the use of any of the Confidential Information or otherwise in connection with the Purpose will be deemed: (a) part of the Confidential Information; (b) to be "works made for hire" in accordance with United States copyright law; and (c) solely owned by IHCS (collectively, the "IHCS Materials"). In the event any IHCS Materials are determined not to

constitute "works made for hire," Contractor hereby irrevocably assigns to IHCS all right, title and interest in and to any such works.

**10. Term.** This Agreement shall remain in effect until terminated in writing by a party to this Agreement (the "Termination Date"). Except as otherwise described herein, the obligations of Contractor hereunder shall survive for five (5) years from the Termination Date, except Confidential Information that constitutes (i) trade secrets of the disclosing party shall be subject to the terms of this Agreement for as long as such information remains a trade secret under applicable law; and (ii) personally identifiable information shall be subject to the terms of this Agreement forever, without expiration.

**11. Remedies.** Contractor agrees that any violation or threatened violation of this Agreement may cause irreparable injury to IHCS, entitling IHCS to seek injunctive relief, without the need to post bond, in addition to all legal remedies.

**12. Miscellaneous.** This Agreement shall bind and inure to the benefit of the parties hereto and their permitted successors and assigns. This document contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations and agreements with respect to the subject matter hereof. Failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision hereof. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto. Contractor may not assign this Agreement, or assign or delegate any rights or obligations hereunder, without the prior written permission of IHCS. In the event any term of this Agreement is found by any court to be void or otherwise unenforceable, the remainder of this Agreement shall remain valid and enforceable as though such term were absent upon the date of its execution. This Agreement may be executed by exchange of signature pages by facsimile and/or in any number of counterparts, each of which shall be an original as against any party whose signature appears thereon and all of which together shall constitute one and the same instrument. The individuals executing this Agreement below are duly elected officers of their respective organizations and have the requisite authority to bind such organization as contemplated in this Agreement. This Agreement shall be interpreted and enforced in accordance with the laws of the Commonwealth of Kentucky (regardless of the choice of law principles of Kentucky or any other jurisdiction). Any dispute shall take place in the state or federal courts covering Jefferson County, Kentucky, and

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000020 of 000043

2

Contractor and IHCS agree to the personal jurisdiction of these Courts.

**Innovative Health Care Solutions, LLC ("IHCS")**

By: _____

Name: _____

Title: _____

Date: _____

*Kristen Brannon - Magnolia Health Solutions*
**("Contractor")**

By: *Kristen Brannon*

Name: *Kristen Brannon*

Title: *Director*

Date: *6/19/15*

3

IHCS NDA 3/3/15

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000021 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000022 of 000043

EXHIBIT

2

## INDEPENDENT CONTRACTOR AGREEMENT

This **INDEPENDENT CONTRACTOR AGREEMENT** (this "Agreement"), is made and entered into on this day of _____ *11 - 16* _____, 2015 (the "Effective Date"), by and between Innovative Health Care Solutions, LLC ("IHCS"), a Kentucky limited liability company having its principal place of business at 3011 Long Creek Way, Louisville, Kentucky, 40245, and Magnolia Health Solutions (MHS), a Kentucky limited liability company, with its principal place of business at PO Box 436611, Louisville, Kentucky, 40253-6611, ("Contractor"). IHCS and Contractor are also sometimes each referred to as a "Party" and together as the "Parties".

### WITNESSETH

**WHEREAS,** IHCS provides sales, marketing and related support services to certain national distributors of medical devices, with whom IHCS has executed formal agreements ("*Distributors*"); and

**WHEREAS,** IHCS wishes to engage Contractor as an independent contractor to provide the services specified in Exhibit A (the "*Services*"); and

**WHEREAS,** Contractor wishes to provide the Services for IHCS, pursuant to the terms and subject to the conditions set forth in this Agreement.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **SERVICES**

    1.1   IHCS hereby engages Contractor, and Contractor hereby accepts such engagement, as an independent contractor to provide the Services to IHCS on the terms and conditions set forth in this Agreement.

    1.2   IHCS shall not control the manner or means by which Contractor performs the Services, including but not limited to the time and place Contractor performs the Services; provided, however, IHCS shall provide access to materials and training regarding compliance with laws and regulations and may develop processes to enhance compliance with such laws and regulations, including, without limitation, Fraud and Abuse Laws, as hereinafter defined.

    1.3   In its performance of the Services hereunder, Contractor shall:

        (a)        work with Physicians, non-clinical office and administrative staff.

        (b)        have no direct contact with any known patients of any client and/or beneficiaries of any federal, state or private benefit plan under which Company is entitled to reimbursement;

(c) refrain from offering any inducement or pay, receive, or solicit any remuneration or other items of value to or from a party in a position to make, influence, or arrange referrals of patients to IHCS;

(d) refrain from having any relationship with a physician that would cause referrals to IHCS or any of its affiliated labs by such physician to be unlawful under Section 1877 of the Social Security Act;

(e) not use employees, contractors or agents who are licensed or certified healthcare professionals;

(f) not make any representations, warranties, guarantees, indemnities, similar claims or other commitments regarding the Services, except as approved by IHCS in advance in writing;

(g) refrain from engaging in any unfair, anti-competitive, misleading or deceptive practices; and

(h) at all times conduct itself in accordance with applicable laws, regulations, rules, and best industry practices.

In no event shall Services be provided in any Prohibited Territory, as defined on Exhibit A, which shall be updated from time to time at IHCS's sole discretion.

1.4 Contractor will be responsible for managing all aspects of the relationship with IHCS's physician clients other than insurance verification and billing (*"Managing Services"*). In the event that Contractor is not performing the Managing Services in a satisfactory manner, IHCS may, in its sole discretion, assume responsibility for performing the Managing Services from Contractor, and Contractor's Fees resulting from orders received from any physician for whom IHCS has assumed the Contractor's Managing Services shall be reduced by half.

1.5 Unless otherwise set forth in <u>Exhibit A</u>, Contractor shall furnish, at Contractor's own expense, the marketing materials used by Contractor to perform the Services, with such marketing materials to be approved in advance by IHCS.

2. **TERM** The term of this Agreement will commence on the Effective Date and will continue for a period of three (3) years, unless earlier terminated in accordance with Section 9 of this Agreement (the *"Term"*). Any extension of the Term will be subject to mutual written agreement between the Parties. In the event this Agreement is terminated prior to the first anniversary of its Effective Date, the Parties shall not enter into another arrangement with each other substantially similar to that which is contemplated hereunder until the expiration of one (1) year from the Effective Date.

D536A413-50B6-4B05-A7AE-7CA8A6895EE : 000023 of 000043

3.   **FEES AND EXPENSES**

3.1   As full compensation for the Services and the rights granted to IHCS in this Agreement, IHCS shall pay Contractor, during the Term of this Agreement, one hundred fifteen dollars ($115.00) for each unit of Product ordered and paid by a physician or health care facility when paid in full upon delivery, or one hundred fifty dollars ($150.00) for each unit of Product ordered and paid by a physician or health care facility when physician or health care facility participates in IHCS's "full service program". These fees are paid as a result of the contact by and Services of Contractor (the "*Fees*"), Contractor acknowledges and agrees that IHCS may deduct from any Fees due hereunder the amount of any adjustments, deductions or losses IHCS may incur on orders for which Fees have been previously paid, due to any reason whatsoever. Contractor shall not be entitled to any portion of Fees for Marketing Services provided in violation of this Section 1.3 of this Agreement, and the Fees to be paid by IHCS to Contractor for the month in which any such violation is discovered shall be reduced by the portion of Fees obtained in connection with such violation.

3.2   Contractor is solely responsible for any travel or other costs or expenses incurred by Contractor in connection with the performance of the Services, and in no event shall IHCS reimburse Contractor for any such costs or expenses.

3.3   IHCS shall pay all Fees, minus any offset pursuant to Section 3.1, for orders upon which IHCS has received payment from Distributors during the previous month by either electronic funds, ACH, direct deposit or by IHCS company check no later than the thirtieth (30th) day of the following month.

4.   **RELATIONSHIP OF THE PARTIES**

4.1   Contractor is an independent contractor of IHCS, and this Agreement shall not be construed to create any association, partnership, joint venture, employee or agency relationship between Contractor and IHCS for any purpose. Contractor has no authority (and shall not hold IHCS out as having authority) to bind IHCS and Contractor shall not make any agreements or representations on IHCS's behalf without IHCS's prior written consent.

4.2   Without limiting Section 4.1 of this Agreement, Contractor will not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by IHCS to its employees, and IHCS will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state, or local taxes, making any insurance contributions, including unemployment or disability, or obtaining worker's compensation insurance on Contractor's behalf. Contractor shall be responsible for, and hereby indemnifies IHCS against, all such taxes or contributions, including penalties and interest. Any persons employed by Contractor in connection with the performance of the Services shall be Contractor's employees, and Contractor shall be fully responsible for them.

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000024 of 000043

DS36A413-50B6-4805-A7AE-7CA88A6895EE : 000025 of 000043

5.   **CONFIDENTIALITY** During the Term, and for five years after the later of the termination or expiration of this Agreement, Contractor agrees to and represents and warrants that it will: (i) hold in confidence, and cause its employees, representatives, agents and permitted subcontractors to hold in confidence, any and all Confidential Information; (ii) not use any Confidential Information for any purpose except in furtherance of its obligations under this Agreement; (iii) use at least the same degree of care in protecting, preserving, and avoiding disclosure or dissemination of the Confidential Information as it uses for its own confidential information, but in no event less than a reasonable degree of care; (iv) take all steps as may be reasonably necessary to prevent the disclosure of any Confidential Information to others except to its employees, representative, agents and permitted subcontractors who are required to know the Confidential Information in connection with the performance of Contractor's obligations under this Agreement and who are bound to Contractor by obligations of confidentiality at least as restrictive at those contained in this Section 5; and (v) obtain IHCS's written permission prior to using   any   Confidential Information for any purpose other than in connection with the performance of Contractor's obligations under this Agreement. Notwithstanding the foregoing restrictions, Contractor may disclose any Confidential Information to the extent required by an order of any court or other governmental authority, but only after IHCS has been so notified in writing and has had the opportunity to obtain reasonable protection for such information in connection with such disclosure. *"Confidential Information"* means this Agreement, any contracts or agreements between the Parties, and any information disclosed by IHCS to Contractor, either directly or indirectly, in writing, orally or by inspection of tangible objects including, without limitation, documents, marketing and consumer research, know-how, market potential information, consumer/IHCS data, clinical data, formulas, product applications, potential consumer use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets, software, know-how, formulae, business information, and product specifications, as well as all data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions. For avoidance of doubt, any and all data, results, materials and/or other information resulting from or in any way connected to this Agreement shall be considered Confidential Information. Confidential Information shall not, however, include any information which: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by IHCS; (ii) becomes publicly known and made generally available to the public through no action or inaction of Contractor; (iii) is obtained by Contractor from a third party without a breach of such third party's obligations of confidentiality; or (iv) is independently developed by Contractor without use of or reference to the Confidential Information, as shown by documents and other competent evidence in Contractor's possession.

6.   **NON-SOLICITATION** Contractor agrees that during the Term and for a period of twelve (12) months following the termination or expiration of this Agreement, Contractor shall not make any solicitation to employ IHCS's employees, officers, managers and personnel, including IHCS's independent contractors, without the written consent of IHCS.   For the purposes of this Section 6, a general advertisement or notice of a job listing or opening or other similar general publication of a job search or availability to fill employment positions, including on the internet, shall not be construed as a solicitation or inducement, and the hiring

of any such employees or independent contractor who freely responds thereto shall not be a breach of this Section 6.

7.   **EQUITABLE REMEDIES**   The Parties acknowledge that money damages may not be an adequate remedy for breach of Sections 5 or 6 of this Agreement because of the difficulty of ascertaining the amount of damage that may be suffered in the event that of such breach. Therefore, each Party shall be entitled to seek equitable relief, including injunctive relief, without the need to post bond, and specific performance, in the event of any breach or threatened breach of the provisions of this Agreement by the other in addition to all other remedies available at law or in equity.

8.
**TERMINATION**

8.1   IHCS may terminate this Agreement, effective upon written notice to Contractor, in the event that Contractor breaches this Agreement, and such breach is incapable of cure or with respect to a breach capable of cure, Contractor does not cure such breach within thirty (30) days after receipt of written notice of such breach.

8.2   IHCS may terminate this Agreement, effective upon written notice to Contractor, in the event that IHCS's agreement with Distributors is terminated.

8.3   Upon expiration or termination of this Agreement for any reason, or at any other time upon IHCS's written request, Contractor shall within five (5) days after such expiration or termination:

(a)   deliver to IHCS all hardware, software, tools, equipment or other materials provided for Contractor's use by the Company;

(b)   deliver to IHCS all tangible documents and materials (and any copies) containing, reflecting, incorporating or based on the Confidential Information;

(c)   deliver to IHCS all tangible documents and materials (and any copies) containing or reflecting any trademark or copyright materials of Distributors or IHCS and discontinue any use, either electronic or tangible, thereof;

(d)   permanently erase all of the Confidential Information from Contractor's computer systems; and

(e)   certify in writing to IHCS that Contractor has complied with the requirements of this Section 9.3.

8.4   The terms and conditions of this Section 8 and Sections 5, 6, 7, 10 and 11.9 of this Agreement will survive the expiration or termination of this Agreement.

9.   **ASSIGNMENT**   Contractor may assign any rights, or delegate or subcontract any obligations, under this Agreement; provided Contractor obtains IHCS's prior written consent.

Any attempted assignment without IHCS's prior written consent shall be void and of no effect. IHCS may freely assign its rights and obligations under this Agreement at any time. Subject to the limits on assignment stated above, this Agreement will inure to the benefit of, be binding upon, and be enforceable against, each of the Parties hereto and their respective successors and permitted assigns.

10.   **INTELLECTUAL PROPERTY**

10.1. Contractor hereby irrevocably assigns to IHCS all right, title and interest in and to all ideas, information, know-how, technical data, processes, formulas, innovations, trade secrets, customer and client lists, inventions, discoveries or improvements, marketing concepts, business plans and any other work product produced discovered, conceived or developed by Contractor in providing Services to IHCS hereunder including, without limitation, all applicable proprietary rights thereto, to the extent that any of the above relates to medical devices or the marketing or sale thereof (collectively, the *"Work Product"*). If C o n t r a c t o r has any such rights that cannot be assigned to IHCS, Contractor waives the enforcement of such rights, and if Contractor has any rights that cannot b e assigned or waived, Contractor hereby grants to IHCS an exclusive, i r r e v o c a b l e, perpetual, worldwide, fully paid license, with right to sublicense through multiple tiers, to such rights. Contractor acknowledges that there are, and may be, future rights that IHCS may otherwise become entitled to with respect to the Work Product that do not yet exist, as well as new uses, media, means and for IHCS of exploitation throughout the universe exploiting current or future  technology yet to be developed, and Contractor specifically intends the foregoing assignment of rights to IHCS to include all such now known or unknown uses, media and for IHCS of exploitation throughout the universe.

10.2   Contractor may be provided with materials and documents that contain trademarks or copyrighted materials owned by Distributors or IHCS. Contractor shall not use such trademarks or copyrighted materials except in connection with the Services. Contractor shall indemnify IHCS from any and all loss, liability, claim, damage, cost, fee (including reasonable attorneys' fees) or expense of any kind which IHCS may, directly or indirectly, incur or be subjected to as a result of Contractor or its subcontractors, independent consultants, and agents' violation of the foregoing.

11.   **MISCELLANEOUS**

11.1   All notices to be delivered under this Agreement will be in writing and will be deemed to be properly given when (i) delivered to any designated representative of the Party entitled to receive the notice, or (ii) two (2) days following the date upon which such notice was sent in writing to a designated representative of the recipient Party, by way of a nationally recognized, U.S.-based, overnight delivery service, properly addressed to the Party entitled to receive such notice. Unless changed by written notice given pursuant to this Section 12.1, the respective addresses of the Parties to which notices are to be delivered under this Agreement are as follows:

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000027 of 000043

If to IHCS:
3011 Long Creek Way
Louisville, Ky 40245

If to Contractor:
PO Box 436611
Louisville, KY 40253-6611

11.2  The headings used in this Agreement are for ease of reference only and shall not affect the construction or interpretation of this Agreement.

11.3  This Agreement, including its exhibits, contains the entire agreement and understanding between the Parties with respect to the transactions contemplated under and the subject matter of this Agreement and supersedes all prior arrangements or understandings, whether written or oral, with respect thereto. This Agreement may be amended or supplemented only with the unanimous written agreement of the Parties. Any of the terms and conditions of this Agreement may be waived at any time and from time to time in writing by the Party entitled to the benefit thereof without affecting any other terms or conditions of this Agreement. Any waiver of a breach or requirement of any provision of this Agreement will not operate as or be construed as a waiver of any other or subsequent breach or requirement.

11.4  The invalidity or unenforceability of any provision or part of a provision of this Agreement does not in any way affect the validity or enforceability of the remainder of the Agreement. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

11.5  This Agreement will be governed by, performed under, construed, and enforced in accordance with the laws of the Commonwealth of Kentucky, without regard to its conflict of laws principles or those of any other jurisdiction. Each of the Parties irrevocably and unconditionally confirms and agrees that it is and shall continue to be subject to the jurisdiction of the courts of Jefferson County, Kentucky, and subject to service of process in the Commonwealth of Kentucky. Each of the Parties hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of the courts of Jefferson County, Kentucky, for any actions, suits, or proceedings arising out of or relating to this Agreement or the transactions contemplated by this Agreement and agrees not to commence any litigation relating thereto except in such courts.

11.6  Each Party shall fully comply, at its own expense, with all applicable laws, statutes, rules, and regulations that may apply to the Services, including, without limitation, by obtaining and maintaining all required licenses, making, executing, and filing all necessary reports, and declaring and paying all applicable taxes, the requirements for which arise as a result of such Party's activities under this Agreement.

11.7  This Agreement may be executed in multiple counterparts, and each such counterpart will be deemed to be an original, but all such counterparts together will constitute one and the same agreement. Signatures transmitted by facsimile or other electronic

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000028 of 000043

means will be deemed to be original signatures for the purpose of duly executing this Agreement.

11.8  It is the intent of the Parties for this Agreement to comply with the federal Anti-Kickback Statute (42 U.S.C. 1320a-7b), the regulations promulgated there under, including any applicable safe harbors, the Stark law (42 U.S.C. 1395nn), False Claims Act (31 U.S.C. 3729), Beneficiary Inducement Statute (42 U.S.C. 1320a-7(a)) and any similar state laws (collectively "*Fraud and Abuse Laws*"). The Parties acknowledge that neither is knowingly or willfully soliciting or receiving any remuneration directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual for the furnishing of, arranging for the furnishing of, or recommending, purchasing, leasing, ordering any good, facility, service or item for which payment may be made in whole or in part under Medicare, Medicaid or any other federal health care program. In the event that any provision of this Agreement is found to violate or, in the determination of IHCS may reasonably be considered as violating any Fraud and Abuse Laws, the Parties shall work in good faith to modify this Agreement only to the extent necessary to comply with such Fraud and Abuse Laws and preserve the original intent of this Agreement to the greatest extent possible. Additionally, both Parties acknowledge that they each have, and agree to maintain, a robust compliance program and to train, to the best of its ability, all of its employees, agents and independent contractors on same.

11.9  If applicable, the Parties to this Agreement intend to comply with Section 1861 (v) (1) (I) of the Social Security Act, as amended, and written regulations promulgated thereunder. Accordingly, to the extent applicable, the Parties agree to comply with the following statutory requirements governing the maintenance of documentation to verify the cost of any service rendered pursuant to this Agreement: (i) until the expiration of four (4) years after the furnishing of any service pursuant to this Agreement, Contractor will make available, upon written request of the Secretary of Health and Human Services, or upon request of the Comptroller General of the United States, or any of their duly authorized representatives, copies of this Agreement and any books, documents, records, or other data of the Parties that are necessary to certify the nature and extent of cost incurred for such service; and (ii) if Contractor carries out any of its duties under this Agreement through a sub-contract with a related organization involving a value or cost of $10,000 or more over a twelve (12) month period, Contractor will cause such sub-contract to contain a clause to the effect that, until the expiration of four (4) years after the furnishing of any service pursuant to said sub-contract, the related organization will make available, upon written request of the Secretary of Health and Human Services, or upon request of the Comptroller General of the United States, or any of their duly authorized representatives, copies of said sub- contract and any books, documents, records, or other data of said related organization that are necessary to certify the nature and extent of such costs. This provision shall survive termination or expiration of this Agreement.

11.10  Contractor shall, at its sole expense, provide and maintain, and require its permitted subcontractors to provide and maintain, professional liability insurance for all of its employees performing Services hereunder in an amount not less than One Million Dollars ($1,000,000) per claim and Two Million Dollars ($2,000,000) in aggregate. Contractor shall provide a certificate of insurance evidencing the foregoing insurance coverage. Contractor shall further provide and maintain appropriate payments and coverage for workers' compensation,

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000029 of 000043

unemployment insurance, and any other insurance or benefit required by law in connection with the Services hereunder.  Contractor shall provide proof of its current Workers' Compensation Coverage, such as its Certificate of Premium Payment, upon request.

11.12   The individuals executing this Agreement below are duly elected officers of their respective organizations and have the requisite authority to bind such organization as contemplated in this Agreement.

11.13   All Services provided by Contractor hereunder shall be performed and provided in accordance with all applicable local, state, and federal laws, rules, and regulations concerning the confidentiality of patient records, including but not limited to the Health Insurance Portability and Accountability Act of 1996 and all regulations promulgated thereunder, and including the Health Information Technology for Economic and Clinical Health Act and all regulations promulgated thereunder.

[Signature Page Follows]

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000030 of 000043

## Signature Page

To evidence the Parties' agreement to this Agreement's provisions, the Parties have executed and delivered this Agreement on the dates set below their signatures, but as of the Effective Date.

**IHCS**
3011 Long Creek Way
Louisville, KY

By: _Robin Campbell_
    (signature)

Name: Robin Campbell

Title: Owner

Date: __11-16-15__

**Magnolia Health Solutions**
PO Box 436611
Louisville, KY 40253-6611

By: _Kristen Brannon_
    (signature)

Name: Kristen Brannon

Title: Owner

Date: __11/16/2015__

Email: _____

EIN: __47-298 1654__

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000031 of 000043

## Exhibit A

"*Services*" means the Managing Services and the following:

1. Contractor shall use its best, good faith efforts to provide information about NSS The Neuro-Stim devise, a peripheral nerve stimulator used to treat acute and chronic pain patients (the "*Product*") to Non-Clinical Staff of physician and other medical services provider offices and their procurement officers. Contractor shall not perform Services hereunder directly to physicians or other health care providers, unless requested and in conjunction with Non-Clinical Staff when possible. Contractor will have no exclusive right (i) to provide information about the Product or (ii) to provide information about the Product within any particular geographical territory.

2. Contractor shall present the Product in a professional manner and shall distribute or disseminate only such information about the Product as has been provided to him or her by IHCS or as has been approved by IHCS in writing prior to such distribution or dissemination. In no event shall Contractor present the Product in any manner other than the manner for which the Product are approved by the United States Food and Drug Administration, if applicable.

3. Contractor shall use his or her best, good faith efforts to act in accordance with any materials, policies, procedures, trainings or other directives which IHCS makes available to Contractor with respect to compliance with federal, state and local laws, including the Fraud and Abuse Laws. Contractor shall attend, at his or her sole expense, any training that IHCS may reasonably request from time to time regarding compliance with federal, state and local laws, including the Fraud and Abuse Laws.

4. Contractor shall not have direct contact with any beneficiaries or members of insurance plans, including, without limitation, Medicare, Medicaid, CHAMPUS/Tricare, or CHIP for the purpose of performing Services hereunder.

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000032 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000033 of 000043

EXHIBIT

3

# INDEPENDENT CONTRACTOR AGREEMENT

This **INDEPENDENT CONTRACTOR AGREEMENT** (this "Agreement"), is made and entered into on this day of November 10, 2015 (the "Effective Date"), by and between Magnolia Health Solutions (MHS), a Kentucky limited liability company, with its principal place of business at PO Box 436611, Louisville, KY 40253-6611 ("MHS"), and Greg Williams, with its principal place of business at 3123 36th Ave. NW, Olympia, WA 98502 ("Contractor"). MHS and Contractor are also sometimes each referred to as a "Party" and together as the "Parties".

## WITNESSETH

**WHEREAS**, MHS provides sales, marketing and related support services to certain national distributors of medical devices, with whom MHS has executed formal agreements (**"Distributors"**); and

**WHEREAS**, MHS wishes to engage Contractor as an independent contractor to provide the services specified in Exhibit A (the **"Services"**); and

**WHEREAS**, Contractor wishes to provide the Services for MHS, pursuant to the terms and subject to the conditions set forth in this Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  **SERVICES**

    1.1  MHS hereby engages Contractor, and Contractor hereby accepts such engagement, as an independent contractor to provide the Services to MHS on the terms and conditions set forth in this Agreement.

    1.2  MHS shall not control the manner or means by which Contractor performs the Services, including but not limited to the time and place Contractor performs the Services; provided, however, MHS shall provide access to materials and training regarding compliance with laws and regulations and may develop processes to enhance compliance with such laws and regulations, including, without limitation, Fraud and Abuse Laws, as hereinafter defined.

    1.3  In its performance of the Services hereunder, Contractor shall:

    (a)  work with Physicians, non-clinical office and administrative staff.

    (b)  have no direct contact with any known patients of any client and/or beneficiaries of any federal, state or private benefit plan under which Company is entitled to reimbursement;

    (c)  refrain from offering any inducement or pay, receive, or solicit

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000034 of 000043

any remuneration or other items of value to or from a party in a position to make, influence, or arrange referrals of patients to MHS;

(d)     refrain from having any relationship with a physician that would cause referrals to MHS or any of its affiliated labs by such physician to be unlawful under Section 1877 of the Social Security Act;

(e)     not use employees, contractors or agents who are licensed or certified healthcare professionals;

(f)     not make any representations, warranties, guarantees, indemnities, similar claims or other commitments regarding the Services, except as approved by MHS in advance in writing;

(g)     refrain from engaging in any unfair, anti-competitive, misleading or deceptive practices; and

(h)     at all times conduct itself in accordance with applicable laws, regulations, rules, and best industry practices.

In no event shall Services be provided in any Prohibited Territory, as defined on Exhibit A, which shall be updated from time to time at MHS's sole discretion.

1.4     Contractor will be responsible for managing all aspects of the relationship with MHS's physician clients other than insurance verification and billing ("*Managing Services*"). In the event that Contractor is not performing the Managing Services in a satisfactory manner, MHS may, in its sole discretion, assume responsibility for performing the Managing Services from Contractor, and Contractor's Fees resulting from orders received from any physician for whom MHS has assumed the Contractor's Managing Services shall be reduced by half.

1.5     Unless otherwise set forth in Exhibit A, Contractor shall furnish, at Contractor's own expense, the marketing materials used by Contractor to perform the Services, with such marketing materials to be approved in advance by MHS.

2.     **TERM**   The term of this Agreement will commence on the Effective Date and will continue for a period of three (3) years, unless earlier terminated in accordance with Section 9 of this Agreement (the "*Term*"). Any extension of the Term will be subject to mutual written agreement between the Parties. In the event this Agreement is terminated prior to the first anniversary of its Effective Date, the Parties shall not enter into another arrangement with each other substantially similar to that which is contemplated hereunder until the expiration of one (1) year from the Effective Date.

## 3. FEES AND EXPENSES

3.1   As full compensation for the Services and the rights granted to MHS in this Agreement, MHS shall pay Contractor, during the Term of this Agreement, seventy five dollars ($60.00) for each unit of Product ordered and paid by a physician or health care facility when paid in full upon delivery or one hundred twenty five dollars ($100.00) for each unit of Product ordered and paid by a physician or health care facility when physician or health care facility participates in MHS's "full service program". These fees are paid as a result of the contact by and Services of Contractor (the "*Fees*"), Contractor acknowledges and agrees that MHS may deduct from any Fees due hereunder the amount of any adjustments, deductions or losses MHS may incur on orders for which Fees have been previously paid, due to any reason whatsoever. Contractor shall not be entitled to any portion of Fees for Marketing Services provided in violation of this Section 1.3 of this Agreement, and the Fees to be paid by MHS to Contractor for the month in which any such violation is discovered shall be reduced by the portion of Fees obtained in connection with such violation.

3.2   Contractor is solely responsible for any travel or other costs or expenses incurred by Contractor in connection with the performance of the Services, and in no event shall MHS reimburse Contractor for any such costs or expenses.

3.3   MHS shall pay all Fees, minus any offset pursuant to Section 3.1, for orders upon which MHS has received payment from Distributors during the previous month by either electronic funds, ACH, direct deposit or by MHS company check no later than the thirtieth (30th) day of the following month.

## 4. RELATIONSHIP OF THE PARTIES

4.1   Contractor is an independent contractor of MHS, and this Agreement shall not be construed to create any association, partnership, joint venture, employee or agency relationship between Contractor and MHS for any purpose. Contractor has no authority (and shall not hold MHS out as having authority) to bind MHS and Contractor shall not make any agreements or representations on MHS's behalf without MHS's prior written consent.

4.2   Without limiting Section 4.1 of this Agreement, Contractor will not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by MHS to its employees, and MHS will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state, or local taxes, making any insurance contributions, including unemployment or disability, or obtaining worker's compensation insurance on Contractor's behalf. Contractor shall be responsible for, and hereby indemnifies MHS against, all such taxes or contributions, including penalties and interest. Any persons employed by Contractor in connection with the performance of the Services shall be Contractor's employees, and Contractor shall be fully responsible for them.

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000035 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000036 of 000043

5. **CONFIDENTIALITY** During the Term, and for five years after the later of the termination or expiration of this Agreement, Contractor agrees to and represents and warrants that it will: (i) hold in confidence, and cause its employees, representatives, agents and permitted subcontractors to hold in confidence, any and all Confidential Information; (ii) not use any Confidential Information for any purpose except in furtherance of its obligations under this Agreement; (iii) use at least the same degree of care in protecting, preserving, and avoiding disclosure or dissemination of the Confidential Information as it uses for its own confidential information, but in no event less than a reasonable degree of care; (iv) take all steps as may be reasonably necessary to prevent the disclosure of any Confidential Information to others except to its employees, representative, agents and permitted subcontractors who are required to know the Confidential Information in connection with the performance of Contractor's obligations under this Agreement and who are bound to Contractor by obligations of confidentiality at least as restrictive at those contained in this Section 5; and (v) obtain MHS's written permission prior to using any Confidential Information for any purpose other than in connection with the performance of Contractor's obligations under this Agreement. Notwithstanding the foregoing restrictions, Contractor may disclose any Confidential Information, to the extent required by an order of any court or other governmental authority, but only after MHS has been so notified in writing and has had the opportunity to obtain reasonable protection for such information in connection with such disclosure. *"Confidential Information"* means this Agreement, any contracts or agreements between the Parties, and any information disclosed by MHS to Contractor, either directly or indirectly, in writing, orally or by inspection of tangible objects including, without limitation, documents, marketing and consumer research, know-how, market potential information, consumer/MHS data, clinical data, formulas, product applications, potential consumer use information, customer lists, patient lists and information, operating plans, financial data, business and/or marketing plans, forecasts, designs, prototypes, concepts, technology, trade secrets, software, know-how, formulae, business information, and product specifications, as well as all data compilations, analyses, conversations, discussions, expressions of opinions, and descriptions. For avoidance of doubt, any and all data, results, materials and/or other information resulting from or in any way connected to this Agreement shall be considered Confidential Information. Confidential Information shall not, however, include any information which: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by MHS; (ii) becomes publicly known and made generally available to the public through no action or inaction of Contractor; (iii) is obtained by Contractor from a third party without a breach of such third party's obligations of confidentiality; or (iv) is independently developed by Contractor without use of or reference to the Confidential Information, as shown by documents and other competent evidence in Contractor's possession.

6. **NON-SOLICITATION** Contractor agrees that during the Term, and for a period of twelve (12) months following the termination or expiration of this Agreement, Contractor shall not make any solicitation to employ MHS's employees, officers, managers and personnel, including MHS's independent contractors, without the written consent of MHS. For the purposes of this Section 6, a general advertisement or notice of a job listing or opening or other similar general publication of a job search or availability to fill employment positions, including on the internet, shall not be construed as a solicitation or inducement, and the hiring of any such employees or independent contractor who freely responds thereto shall not be a breach of

D536A413-5086-4805-A7AE-7CA88A6895EE : 000037 of 000043

this Section 6.

7.   **EQUITABLE REMEDIES**  The Parties acknowledge that money damages may not be an adequate remedy for breach of Sections 5 or 6 of this Agreement because of the difficulty of ascertaining the amount of damage that may be suffered in the event that of such breach. Therefore, each Party shall be entitled to seek equitable relief, including injunctive relief, without the need to post bond, and specific performance, in the event of any breach or threatened breach of the provisions of this Agreement by the other in addition to all other remedies available at law or in equity.

8.
**TERMINATION**

8.1   MHS may terminate this Agreement, effective upon written notice to Contractor, in the event that Contractor breaches this Agreement, and such breach is incapable of cure or with respect to a breach capable of cure, Contractor does not cure such breach within thirty (30) days after receipt of written notice of such breach.

8.2   MHS may terminate this Agreement, effective upon written notice to Contractor, in the event that MHS's agreement with Distributors is terminated.

8.3   Upon expiration or termination of this Agreement for any reason, or at any other time upon MHS's written request, Contractor shall within five (5) days after such expiration or termination:

(a)   deliver to MHS all hardware, software, tools, equipment or other materials provided for Contractor's use by the Company;

(b)   deliver to MHS all tangible documents and materials (and any copies) containing, reflecting, incorporating or based on the Confidential Information;

(c)   deliver to MHS all tangible documents and materials (and any copies) containing or reflecting any trademark or copyright materials of Distributors or MHS and discontinue any use, either electronic or tangible, thereof;

(d)   permanently erase all of the Confidential Information from Contractor's computer systems; and

(e)   certify in writing to MHS that Contractor has complied with the requirements of this Section 9.3.

8.4   The terms and conditions of this Section 8 and Sections 5, 6, 7, 10 and 11.9 of this Agreement will survive the expiration or termination of this Agreement.

9.   **ASSIGNMENT**  Contractor may assign any rights, or delegate or subcontract any obligations, under this Agreement, provided Contractor obtains MHS's prior written consent. Any attempted assignment without MHS's prior written consent shall be void and of no effect.

MHS may freely assign its rights and obligations under this Agreement at any time. Subject to the limits on assignment stated above, this Agreement will inure to the benefit of, be binding upon, and be enforceable against, each of the Parties hereto and their respective successors and permitted assigns.

## 10.   INTELLECTUAL PROPERTY

10.1.   Contractor hereby irrevocably assigns to MHS all right, title and interest in and to all ideas, information, know-how, technical data, processes, formulas, innovations, trade secrets, customer and client lists, inventions, discoveries or improvements, marketing concepts, business plans and any other work product produced discovered, conceived or developed by Contractor in providing Services to MHS hereunder including, without limitation, all applicable proprietary rights thereto, to the extent that any of the above relates to medical devices or the marketing or sale thereof (collectively, the *"Work Product"*). If Contractor has any such rights that cannot be assigned to MHS, Contractor waives the enforcement of such rights, and if Contractor has any rights that cannot be assigned or waived, Contractor hereby grants to MHS an exclusive, irrevocable, perpetual, worldwide, fully paid license, with right to sublicense through multiple tiers, to such rights. Contractor acknowledges that there are, and may be, future rights that MHS may otherwise become entitled to with respect to the Work Product that do not yet exist, as well as new uses, media, means and for MHS of exploitation throughout the universe exploiting current or future  technology yet to be developed, and Contractor specifically intends the foregoing assignment of rights to MHS to include all such now known or unknown uses, media and for MHS of exploitation throughout the universe.

10.2 Contractor may be provided with materials and documents that contain trademarks or copyrighted materials owned by Distributors or MHS.  Contractor shall not use such trademarks or copyrighted materials except in connection with the Services. Contractor shall indemnify MHS from any and all loss, liability, claim, damage, cost, fee (including reasonable attorneys' fees) or expense of any kind which MHS may, directly or indirectly, incur or be subjected to as a result of Contractor or its subcontractors, independent consultants, and agents' violation of the foregoing.

## 11.   MISCELLANEOUS

11.1   All notices to be delivered under this Agreement will be in writing and will be deemed to be properly given when (i) delivered to any designated representative of the Party entitled to receive the notice, or (ii) two (2) days following the date upon which such notice was sent in writing to a designated representative of the recipient Party, by way of a nationally recognized, U.S.-based, overnight delivery service, properly addressed to the Party entitled to receive such notice. Unless changed by written notice given pursuant to this Section 12.1, the respective addresses of the Parties to which notices are to be delivered under this Agreement are as follows:

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000038 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000039 of 000043

If to MIIS:                                    If to Contractor:

1903 Cardinal Harbor Drive

Prospect, KY 40059

11.2   The headings used in this Agreement are for ease of reference only and shall not affect the construction or interpretation of this Agreement.

11.3   This Agreement, including its exhibits, contains the entire agreement and understanding between the Parties with respect to the transactions contemplated under and the subject matter of this Agreement and supersedes all prior arrangements or understandings, whether written or oral, with respect thereto. This Agreement may be amended or supplemented only with the unanimous written agreement of the Parties. Any of the terms and conditions of this Agreement may be waived at any time and from time to time in writing by the Party entitled to the benefit thereof without affecting any other terms or conditions of this Agreement. Any waiver of a breach or requirement of any provision of this Agreement will not operate as or be construed as a waiver of any other or subsequent breach or requirement.

11.4   The invalidity or unenforceability of any provision or part of a provision of this Agreement does not in any way affect the validity or enforceability of the remainder of the Agreement. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

11.5   This Agreement will be governed by, performed under, construed, and enforced in accordance with the laws of the Commonwealth of Kentucky, without regard to its conflict of laws principles or those of any other jurisdiction. Each of the Parties irrevocably and unconditionally confirms and agrees that it is and shall continue to be subject to the jurisdiction of the courts of Jefferson County, Kentucky, and subject to service of process in the Commonwealth of Kentucky. Each of the Parties hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of the courts of Jefferson County, Kentucky, for any actions, suits, or proceedings arising out of or relating to this Agreement or the transactions contemplated by this Agreement and agrees not to commence any litigation relating thereto except in such courts.

11.6   Each Party shall fully comply, at its own expense, with all applicable laws, statutes, rules, and regulations that may apply to the Services, including, without limitation, by obtaining and maintaining all required licenses, making, executing, and filing all necessary reports, and declaring and paying all applicable taxes, the requirements for which arise as a result of such Party's activities under this Agreement.

11.7   This Agreement may be executed in multiple counterparts, and each such counterpart will be deemed to be an original, but all such counterparts together will constitute one and the same agreement. Signatures transmitted by facsimile or other electronic means will

be deemed to be original signatures for the purpose of duly executing this Agreement.

11.8   It is the intent of the Parties for this Agreement to comply with the federal Anti-Kickback Statute (42 U.S.C. 1320a-7b), the regulations promulgated there under, including any applicable safe harbors, the Stark law (42 U.S.C. 1395nn), False Claims Act (31 U.S.C. 3729), Beneficiary Inducement Statute (42 U.S.C. 1320a-7(a)) and any similar state laws (collectively *"Fraud and Abuse Laws"*). The Parties acknowledge that neither is knowingly or willfully soliciting or receiving any remuneration directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual for the furnishing of, arranging for the furnishing of, or recommending, purchasing, leasing, ordering any good, facility, service or item for which payment may be made in whole or in part under Medicare, Medicaid or any other federal health care program. In the event that any provision of this Agreement is found to violate or, in the determination of MHS may reasonably be considered as violating any Fraud and Abuse Laws, the Parties shall work in good faith to modify this Agreement only to the extent necessary to comply with such Fraud and Abuse Laws and preserve the original intent of this Agreement to the greatest extent possible. Additionally, both Parties acknowledge that they each have, and agree to maintain, a robust compliance program and to train, to the best of its ability, all of its employees, agents and independent contractors on same.

11.9   If applicable, the Parties to this Agreement intend to comply with Section 1861 (v) (1) (I) of the Social Security Act, as amended, and written regulations promulgated thereunder. Accordingly, to the extent applicable, the Parties agree to comply with the following statutory requirements governing the maintenance of documentation to verify the cost of any service rendered pursuant to this Agreement: (i) until the expiration of four (4) years after the furnishing of any service pursuant to this Agreement, Contractor will make available, upon written request of the Secretary of Health and Human Services, or upon request of the Comptroller General of the United States, or any of their duly authorized representatives, copies of this Agreement and any books, documents, records, or other data of the Parties that are necessary to certify the nature and extent of cost incurred for such service; and (ii) if Contractor carries out any of its duties under this Agreement through a sub-contract with a related organization involving a value or cost over or over a twelve (12) month period, Contractor will cause such sub-contract to contain a clause to the effect that, until the expiration of four (4) years after the furnishing of any service pursuant to said sub-contract, the related organization will make available, upon written request of the Secretary of Health and Human Services, or upon request of the Comptroller General of the United States, or any of their duly authorized representatives, copies of said sub-contract and any books, documents, records, or other data of said related organization that are necessary to certify the nature and extent of such costs. This provision shall survive termination or expiration of this Agreement.

11.10   Contractor shall, at its sole expense, provide and maintain, and require its permitted subcontractors to provide and maintain, professional liability insurance for all of its employees performing Services hereunder in an amount not less than One Million Dollars ($1,000,000) per claim and Two Million Dollars ($2,000,000) in aggregate. Contractor shall provide a certificate of insurance evidencing the foregoing insurance coverage. Contractor shall further provide and maintain appropriate payments and coverage for workers' compensation, unemployment insurance, and any other insurance or benefit required by law in connection with the Services hereunder. Contractor shall provide proof of its current Workers' Compensation Coverage, such

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000040 of 000043

as its Certificate of Premium Payment, upon request.

11.12.   The individuals executing this Agreement below are duly elected officers of their respective organizations and have the requisite authority to bind such organization as contemplated in this Agreement.

11.13   All Services provided by Contractor hereunder shall be performed and provided in accordance with all applicable local, state, and federal laws, rules, and regulations concerning the confidentiality of patient records, including but not limited to the Health Insurance Portability and Accountability Act of 1996 and all regulations promulgated thereunder, and including the Health Information Technology for Economic and Clinical Health Act and all regulations promulgated thereunder.

[Signature Page Follows]

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000041 of 000043

## Signature Page

To evidence the Parties' agreement to this Agreement's provisions, the Parties have executed and delivered this Agreement on the dates set below their signatures, but as of the Effective Date.

**Magnolia Health Solutions**

PO Box 436611

Louisville, KY 40253-6611

By: _____
      (signature)

Name: _____

Title: _____

Date: _____

**Greg Williams**

3123 36th Ave NW.

Olympia, WA 98502

By: _____
      (signature)

Name: Greg Williams

Title: _____

Date: 11/10/2015

Email: gwilliams67@gmail.com

EIN: _____

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000042 of 000043

D536A413-50B6-4805-A7AE-7CA88A6895EE : 000043 of 000043

## Exhibit A

"*Services*" means the Managing Services and the following:

1. Contractor shall use its best, good faith efforts to provide information about NSS The Neuro-Stim devise, a peripheral nerve stimulator used to treat acute and chronic pain patients (the "*Product*") to Non-Clinical Staff of physician and other medical services provider offices and their procurement officers. Contractor shall not perform Services hereunder directly to physicians or other health care providers, unless requested and in conjunction with Non-Clinical Staff when possible. Contractor will have no exclusive right (i) to provide information about the Product or (ii) to provide information about the Product within any particular geographical territory.

2. Contractor shall present the Product in a professional manner and shall distribute or disseminate only such information about the Product as has been provided to him or her by MHS or as has been approved by MHS in writing prior to such distribution or dissemination. In no event shall Contractor present the Product in any manner other than the manner for which the Product are approved by the United States Food and Drug Administration, if applicable.

3. Contractor shall use his or her best, good faith efforts to act in accordance with any materials, policies, procedures, trainings or other directives which MHS makes available to Contractor with respect to compliance with federal, state and local laws, including the Fraud and Abuse Laws. Contractor shall attend, at his or her sole expense, any training that MHS may reasonably request from time to time regarding compliance with federal, state and local laws, including the Fraud and Abuse Laws.

4. Contractor shall not have direct contact with any beneficiaries or members of insurance plans, including, without limitation, Medicare, Medicaid, CHAMPUS/Tricare, or CHIP for the purpose of performing Services hereunder.

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
JUDGE BARRY WILLETT
CASE NO. 16-CI-001435



*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.     **MOTION TO QUASH PLAINTIFF IHCS'S SUBPOENA DUCES TECUM**

KRISTEN BRANNON, and                              DEFENDANTS
MAGNOLIA HEALTH SOLUTIONS, LLC

**AND**

KRISTEN BRANNON, and              COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC, and   COUNTERCLAIM DEFENDANTS
ROBIN CAMPBELL, and
TROY A. GUINN

* * * * *

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions,

LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or

"Counterclaim Plaintiffs") in objection to Plaintiff/Counterclaim Defendant Innovative Health

Care Solutions, LLC ("IHCS") Subpoena Duces Tecum Documents Subpoenaed for Production at

Hearing, say as follows:

1.      On April 26, 2016 Counsel for Plaintiff/Counterclaim Defendant IHCS filed a

Subpoena Duces Tecum and requested production of a number of documents to be presented at a

hearing on May 4, 2016.

2.     On information and belief, Counterclaim Defendants Robin Campbell and Troy Guinn are the true owners and operators of Innovative Health Care Solutions, LLC.

3.     The documents requested by IHCS are virtually identical to those sought in Plaintiff's April 13, 2016 Request for Production including in its Notice of Proposed Discovery Requests for Expedited Response.

4.     Ms. Brannon and Magnolia are willing to produce responsive documents in the ordinary course of discovery on a rolling basis provided the requests are not objectionable due to being overbroad, unduly burdensome, etc.

5.     Ms. Brannon and Magnolia maintain the belief that this litigation is a fishing expedition and attempt to perpetrate fraud and protect information otherwise sought by federal authorities as well as those involved in other pending litigation with the Counterclaim Defendants.

6.     Ms. Brannon and Magnolia generally object to IHCS's first bulleted request for "All agreements, contracts, memoranda or understandings between Defendants and any other party for any business purpose since June 19, 2015" to the extent that it is overly broad and unduly burdensome.   Plaintiff has failed to define "...any business purpose" and Ms. Brannon and Magnolia cannot reasonably be expected to divine what is meant.   This request is simply too vague for a response.

7.     Ms. Brannon and Magnolia generally object to IHCS's second bulleted request for "Any and all communications between Defendants and any of Innovative's clients, prospective clients, distributors, manufacturers, contractors, or employee since March 16, 2016, including but not limited to exchanges using personal phones or email accounts."   Ms. Brannon and Magnolia are willing to admit that they have received contact inquiries, however Ms. Brannon and Magnolia

have made clear their lack of connection to IHCS.  Ms. Brannon and Magnolia has directed inquirers to contact IHCS instead.

8.      Ms. Brannon and Magnolia generally object to IHCS's third bulleted request for "All documents communicated on behalf of any person or entity other than Innovative, including Magnolia, to or from any client or prospective client of Innovative." Ms. Brannon and Magnolia object to this request to the extent that it requests information not within the custody or control of Ms. Brannon or Magnolia.  On information and belief, Magnolia has not communicated to any client or prospective client of IHCS since March 16, 2016.

9.      Ms. Brannon and Magnolia generally object to IHCS's fourth bulleted request for "Any and all communications between Defendants and any person, regarding any client or prospective client of Innovative since March 16, 2016." Ms. Brannon and Magnolia object to this request to the extent it requests information otherwise protected by Attorney-Client privilege and/or work product doctrine.

10.     Ms. Brannon and Magnolia generally object to IHCS's fifth bulleted response for "Any and all personal or business bank records reflecting Defendants' sources of income since June 19, 2015." Ms. Brannon and Magnolia object to this request as it is overly broad and unduly burdensome.    Ms. Brannon and Magnolia have a right to privacy and request the Plaintiff/Counterclaim Defendants more narrowly tailor its request such to include only information potentially relevant.

11.     Ms. Brannon and Magnolia generally object to IHCS's sixth bulleted response for "All Documents obtained by reason of Defendants' contractual relationship with Innovative, including but not limited to documents regarding any client or prospective client of Innovative or any of Innovative's services, marketing, strategies, plans, agreements, products, contractors,

-3-

manufacturers, distributors, or employees." Ms. Brannon and Magnolia object to this request to the extent it calls for production of documents not within the custody or control of Magnolia.

      12.    Ms. Brannon and Magnolia generally object to IHCS's seventh bulleted request for "Any and all communications from Defendants' Innovative email account to any of your personal email accounts, relating in any way to Innovative, any customer or prospective customer of Innovative, or Innovative's products, distributors, manufacturers, since June 19, 2015." Ms. Brannon and Magnolia object to this request to the extent it would be unduly burdensome. IHCS has within its custody and control the server for Ms. Brannon Innovative email account as well as the passwords thereto. IHCS could easily search its own server for any responsive emails.

      13.    Ms. Brannon and Magnolia reserve the right to make any and all applicable objections in further discovery requests regardless of those asserted herein.

      WHEREFORE, PREMISES CONSIDERED, Defendants/Counterclaim Plaintiffs Ms. Brannon and Magnolia object to the Subpoena Duces Tecum and respectfully request the Court to enter an order quashing the same.

                  Respectfully submitted,

                  */s/ Nolia G. Batey*
                  Nolia G. Batey
                  BATEY LAW OFFICE, PLLC
                  130 Fairfax Avenue, Suite LL-B
                  Louisville, KY 40207
                  P: (502) 509-9407
                  F: (502) 470-3634
                  nbatey@bateylawoffice.com
                  *Counsel for Defendants/*
                  *Counterclaim Plaintiffs*

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
JUDGE BARRY WILLETT
CASE NO. 16-CI-001435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.      **ORDER TO QUASH PLAINTIFF IHCS'S SUBPOENA DUCES TECUM**

KRISTEN BRANNON, and                                    DEFENDANTS
MAGNOLIA HEALTH SOLUTIONS, LLC

**AND**

KRISTEN BRANNON, and                         COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC, and   COUNTERCLAIM DEFENDANTS
ROBIN CAMPBELL, and
TROY A. GUINN

* * * * *

This matter, coming to be heard on Plaintiff/Counterclaim Defendant IHCS's Subpoena

Duces Tecum served on Kristen Brannon and Magnolia Health Solutions, LLC on April 26, 2016,

the parties having been heard, and the Court being fully and sufficiently advised,

IT IS HEREBY ORDERED and ADJUDGED that the PLAINTIFF IHCS'S SUBPOENA

DUCES TECUM is **QUASHED**.

SO ORDERED, this _____ day of _____, 2016.

_____
Judge, Jefferson Circuit Court

Tendered by:

*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants/Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on April 28, 2016, I electronically filed the foregoing with the Jefferson Circuit Court, and served a copy via USPS first-class mail to all of the following parties:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff/Counterclaim*
*Defendant Innovative Health Care*
*Solutions, LLC*

TROY A. GUINN
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

ROBIN CAMPBELL
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

*/s/ Nolia G. Batey*
Nolia G. Batey

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435



*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                         PLAINTIFF

v.

KRISTEN BRANNON
and
MAGNOLIA HEALTH SOLUTIONS, LLC                              DEFENDANTS

**AND**

KRISTEN BRANNON, and                       COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC, and   COUNTERCLAIM DEFENDANTS
ROBIN CAMPBELL, and
TROY A. GUINN

\* \* \* \* \*

## DEFENDANTS' RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions,

LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or

"Counterclaim Plaintiffs"), and for their Response in Opposition to Plaintiff Innovative Health

Care Solutions, LLC's ("IHCS" or "Plaintiff" or "Innovative") Motion for Temporary Injunction,

by and through undersigned counsel, state the following:

**I.     INTRODUCTION**

Ms. Brannon and Magnolia hereby request this Court deny the Motion for Temporary

Injunction filed by Innovative Health Care Solutions, LLC ("IHCS" or "Plaintiff") on the grounds

that 1) Plaintiff's motion does not satisfy CR 65 requisites, and 2) Plaintiff's request for equity relief is barred by "unclean hands."

## II.   SUMMARY OF ARGUMENT

Plaintiff's Verified Complaint alleges that Defendants breached signed agreements ("Non-Disclosure Agreement" or "First Agreement"; and "Independent Contractor Agreement" or "Second Agreement") and violated the non-competition and non-solicitation clauses of those agreements, and as such, asks the Court to "[t]emporarily and permanently restrain and enjoin Defendants from violating the terms of the First Agreement and the Second Agreement" (Complaint, ¶1, p.12). On April 15, 2016, Plaintiff filed Its Motion for Temporary Injunction ("Plaintiff's Motion") and a Memorandum in Support ("Plaintiff's Memorandum"), reiterating its allegations and purporting to offer "new" evidence of alleged misconduct.

Defendants have requested a jury trial to examine the apparent controversy raised by the Plaintiff. Defendants deny most all allegations raised in Plaintiff's Verified Complaint and as reiterated in both Plaintiff's Motion and Plaintiff's Memorandum. Defendants assert that Plaintiff's allegations are a fabrication of a controversy that does not exist in reality. Defendants also assert that Plaintiff is currently in arrears for fees and commissions still owed to Defendants for products sold and services rendered.

## III.   FACTUAL BACKGROUND

Robin Campbell ("Campbell") is the longtime girlfriend of Troy Guinn ("Guinn") and the parties live together at 3011 Long Creek Way, Louisville, KY.  On information and belief, Campbell and Guinn are the owners and operators of Innovative Health Care Solutions, LLC. Ms. Brannon has known Guinn and Campbell for approximately five years. Ms. Brannon originally met Guinn and Campbell when she worked as the Director of Operations at the Louisville Pain

Clinic sometime in 2011. Ms. Brannon left the Pain Clinic when it dissolved and she then pursued other administrative roles.

On March 21, 2014, Guinn filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Western District of Kentucky. In July, 2014, Ms. Brannon began working as the Operations Director for a non-medical home health company. In January, 2015 Guinn approached Ms. Brannon about leaving her position as Operations Director and working for IHCS. Guinn orally promised Ms. Brannon substantial sums of money, at least $100,000.00 annually, if she left her position as the Operations Director and worked for IHCS.

In January, 2015 Ms. Brannon left her position as the Operations Director for the non-medical home health company in order to go to work for Guinn. Ms. Brannon did not know at that time that she would be required to sign the Non-Disclosure and Confidentiality Agreement or the Independent Contractor Agreement. Also in January, 2015, after Ms. Brannon left her position as Operations Director, Guinn advised her that the IHCS Accountant, Mr. Dahlgren, insisted that Ms. Brannon form a company under which she would be paid by IHCS. On February 2, 2015, Ms. Brannon formed Magnolia Health Solutions, LLC.

On June 19, 2015 Ms. Brannon signed the Non-Disclosure and Confidentiality Agreement ("First Agreement") on behalf of Magnolia. On information and belief, Ms. Brannon was actually an employee of IHCS, and was misclassified as an independent contractor. Ms. Brannon allowed Guinn and Campbell to operate out of her home's basement from July, 2015 to October, 2015. IHCS office equipment and furniture was relocated from 213 East Broadway, Louisville, Kentucky to Ms. Brannon's Wynmeade Place home during this time.

On November 10, 2015, Greg Williams signed an Independent Contractor Agreement ("Williams Agreement") with Magnolia, under which he would receive commissions for devices

sold.   On November 16 2015, Ms. Brannon signed the Independent Contractor Agreement ("Second Agreement") on behalf of Magnolia, under which she received commissions for devices sold.   Throughout her relationship with Guinn and Campbell, Ms. Campbell questioned some aspects of their business practices.

On March 7, 2016, Guinn and Campbell's fraudulent practices and tax-evasive maneuvers became the clear subject of an action filed in the Jefferson County Circuit Court, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573.   On March 15, 2016, Guinn's appointed Chapter 7 trustee, Wm. Stephen Reisz ("Mr. Reisz"), filed an action against Campbell alleging tax fraud and evasion schemes between Guinn and Campbell (*Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)).   Ms. Brannon was terminated from her position with IHCS just days after the bankruptcy trustee's action was filed.

On information and belief, the owners of IHCS, i.e., the sole business representatives on behalf of the Plaintiff, Guinn and Campbell, are the subject of several ongoing federal investigations regarding their fraudulent business practices, commingling of funds, and tax evasion schemes.   On information and belief, Ms. Brannon received a fraudulent 1099 for tax year 2015 from Guinn and Campbell.   This 1099 was from Integrity Health Care Solutions, LLC.   Ms. Brannon never worked for this company.   This 1099 underreported Ms. Brannon's income from IHCS by approximately $50.000.00.   On April 12, 2016, Defendants and counsel met with a U.S. Internal Revenue Service agent, and as advised by the agent, submitted a form used for reporting suspected tax evasion schemes, an "Information Referral" form ("IRS Form 3949-A").

On information and belief, this litigation is related to perpetrating the fraudulent tax schemes and evasion by Guinn and Campbell and an attempt to conceal information otherwise relevant to the ongoing federal investigations as well as the other pending litigation.

-4-

## IV.   REQUISITES FOR INJUNCTIVE RELIEF

Court Rule 65 governs injunctive relief in the State of Kentucky. Per CR 65, a temporary injunction may be granted during the pendency of an action if it is clearly shown that the movant's rights are being, or will be, violated and the movant will suffer immediate and irreparable harm. This rule has been construed as requiring the trial court to deny injunctive relief unless it finds (1) that the movant's position presents a substantial question on the underlying merits of the case, i.e. that there is a substantial possibility that the movant will ultimately prevail; (2) that the movant's remedy will be irreparably impaired absent the extraordinary relief; and (3) that an injunction will not be inequitable, i.e. will not unduly harm other parties or disserve the public. *Norsworthy v. Ky. Bd. of Med. Licensure*, 330 S.W.3d 58, 61, 2009 Ky. LEXIS 94 (Ky. 2009) (citing *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482,484, 2008 Ky. LEXIS 187 (Ky. 2008)).

## V.   ARGUMENT AND AUTHORITIES

### A.   PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION DOES NOT SATISFY CR 65 REQUISITES

#### 1.   Plaintiff's fabricated controversy does not raise a sufficient "substantial question"

Defendants assert that Plaintiff's fabricated controversy does not raise a sufficient "substantial question," and thus, does not satisfy CR 65 requisites. "A doubtful case should await a trial on the merits because the temporary injunction often has the effect of enforcing a mere claim of right" *Commonwealth v. Wilkinson*, 828 S.W.2d 610, 612, 1992 Ky. LEXIS 111 (Ky. 1992).

Plaintiff's language is overly vague to disguise its mischaracterization of the facts to fabricate a controversy. Ms. Brannon and Magnolia have followed both the spirit and the letter of the Agreements. The sparse situations in which the Plaintiff alleges misconduct by Defendants, a

misconduct that alleges Defendants violated the non-competition and non-solicitation terms of the First and Second Agreements, does not amount to proving a real controversy exists.

Plaintiff asserts:

> In the exchange, which took place in January 2016, Brannon makes reference to starting a new business venture at that time and doing work similar to Brannon's work for Innovative. Brannon also referenced an on-going offer to hire Innovative's former employee in the new venture, which solicitation appears to have begun before the former employee left her job with Innovative.

(Plaintiff's Memorandum, p.10).

The text exchange in question took place January 24-29, 2016 between Ms. Brannon and a former colleague, Ms. Heather Geary ("Ms. Geary"). Ms. Brannon and Magnolia admit that the text exchange discusses a new business venture, but deny the characterization that the work was similar to Ms. Brannon's work for Innovative. Ms. Brannon was referring to credentialing services, of which was explained to Campbell at a lunch on or about March 16, 2016, when Campbell was initially satisfied with Ms. Brannon's explanation. Ms. Brannon and Magnolia further deny the characterization of an "on-going offer to hire Innovative's former employee." Ms. Brannon did ask Ms. Geary in the text exchange whether she would be interested in working with her. However, Ms. Brannon and Ms. Geary had previously performed personal injury account collections together, of which Plaintiff was aware and to which Plaintiff did not object, and thus waived any later objection thereto.

Plaintiff continues to assert:

> Innovative also has discovered unauthorized altered versions of its product order forms, listing Brannon's personal cell phone number as the primary client contact, rather than Innovative's current business phone number. This was done by Brannon without approval by Innovative.

(Plaintiff's Memorandum, p. 11)

Defendants deny the allegations to the extent that the Plaintiff was unaware that the product forms contained Ms. Brannon's cell phone number.  The order form had undergone a number of changes because Guinn and Campbell believed the distributor and manufacturer were taking their client accounts.  The order form was changed to include Ms. Brannon's number to avoid having the clients directly contact the distributor or manufacturer. Plaintiff previously admitted:

> In her various roles for Innovative, Brannon was responsible for a broad range of functions. Brannon conducted precertification and billing processes, serviced client accounts, **served as a point person for communication with clients**, communicated on behalf of Innovative to Innovative's distributor, and engaged as a sales representative to sell Innovative's NSS products.

(Defendants' emphasis in **bold underline**) (Plaintiff's Memorandum, p. 8).

Plaintiff's reference to this incident falsely insinuates that Ms. Brannon was acting against IHCS's best interests, which contradicts Plaintiff's own allegation that Ms. Brannon was their point person for communication with clients.

Plaintiff's mischaracterization continues, "Since becoming aware of the text messages, Innovative has discovered two clients with executed billing contracts with Innovative, for which there is no information in Innovative's computer system," and "Innovative also discovered an E-Fax communication sent to Innovative from an additional client requesting precertification of a patient. The client's intake information is missing from Innovative's database" (Plaintiff's Memorandum, p. 10). The alleged protocols were informal and perpetually in flux, and Plaintiff changed the protocols numerous times, including changing when information should be entered. Campbell had instructed Ms. Brannon to not enter client information into Plaintiff's software, Kareo, if the clients were not going to be billed from IHCS.

Plaintiff states, "In particular, the PayPal records produced by Defendants showed thousands of dollars were paid to Magnolia by an entity associated with Innovative" (Plaintiff's

Memorandum, p.12). If Magnolia conducted business with an entity that is merely **associated** with IHCS, that does not prove any kind of nefarious activity by Defendants. The Agreements in question do not forbid providing unrelated services to merely associated entities. Further, the Plaintiff has failed to identify the associated entity. The Defendant cannot reasonably be expected to cease providing even unrelated services to entities for whom IHCS fails to identify. Defendants do not deny providing services involving credentialing and personal injury account collections to other companies outside of its service to IHCS. However, Defendants do deny that they engaged in any competitive schemes against the Plaintiff while performing these services.

2.    **Plaintiff produces a hypothetical injury that does not amount to a proper definition of "irreparable injury"**

Plaintiff's definition of "irreparable injury" is based solely on a hypothetical situation deriving from a fabricated controversy. "Clearly the courts are not involved in deciding purely hypothetical questions." *Kraus v. Kentucky State Senate*, 872 S.W.2d 433, 1993 Ky. LEXIS 169 (Ky. 1993) (citing, *Commonwealth v. Crow*, 263 Ky. 322, 92 S.W.2d 330 (1936)). Plaintiff's response to the text exchange, mischaracterization of the form alterations, and false correlation with the entity for or with whom both conduct business, can be defined as nothing more than "anticipated danger." As such, "[a]n injunction will not be granted on the ground merely of an anticipated danger or an apprehension of it, but there must be a reasonable probability that injury will be done if no injunction is granted." *Norsworthy*, 330 S.W.3d at 63.

3.    **A temporary injunction before a trial on the merits would be inequitable for Defendants**

This action is, *inter alia*, a business strategy by the Plaintiff to stifle Defendants' ability to conduct their business by ruining the reputation of Defendants. Ms. Brannon and Magnolia's reputation rests mainly upon trust and credibility; and abiding by these signed agreements and

contracts is paramount to good business practice of maintaining trust and credibility. Defendants further argue that their intention is to abide by the signed agreements between Magnolia and IHCS primarily to ensure Defendants' reputation as trustworthy. In other words, it is in Defendants' best interests to fully abide by the agreements. Ms. Brannon and Magnolia have followed both the spirit and the letter of the Agreements, despite believing the Agreements to be unenforceable.

Currently, Defendants do not possess the interest nor the means—the resources or the logistics—to actually compete with IHCS by selling NSS devices. Defendants did not take with them any of Plaintiff's confidential information pertaining to clients, contractors, manufacturers or distributors, and access to Plaintiff's databases ceased upon Ms. Brannon's termination from IHCS. Ms. Brannon nor Magnolia are currently not in the business of selling NSS devices, and will certainly not be doing so in the immediate future, mainly because such a venture would not be fruitful, profitable, nor practical. Thus, not only do Defendants declare that they intend to abide by the non-competition clauses of the agreements, they could not do otherwise even if they wanted.

If the Court issues the Temporary Injunction at the same time that Defendants have not and will not violate the terms of the contract, it will damage the reputation of Defendants, which will interfere with their ability to conduct their current business. If the Court does not issue a temporary injunction, Plaintiffs will not actually be harmed, because Defendants have declared their compliance to the full terms of the agreements.

**B.    PLAINTIFF'S MOTION FOR EQUITY RELIEF IS BARRED BY THE "UNCLEAN HANDS" DOCTRINE**

The owners of IHCS, i.e., the sole business representatives on behalf of the Plaintiff, are the subject of ongoing federal investigations by multiple federal agencies. These investigations, on information and belief, could likely result in criminal charges against the owners of IHCS. Thus, per Defendants' current knowledge and belief, Guinn and Campbell have "unclean hands."

-9-

*Time Finance Co. v. Varney*, 253 S.W.2d 233, 1952 Ky. LEXIS 1065 (Ky. 1952). "Unclean hands are an absolute bar to equitable relief, including injunctive relief." *Norsworthy*, 330 S.W.3d at fn.7 (citing *Time Finance Co. v. Varney*, 253 S.W.2d 233, 1952 Ky. LEXIS 1065 (Ky. 1952)).

On March 21, 2014, Mr. Guinn filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Western District of Kentucky. Ms. Campbell is the defendant of a complaint filed on March 15, 2016 by the appointed Chapter 7 trustee, Wm. Stephen Reisz, alleging tax fraud and evasion schemes between Guinn and Campbell (*Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)). Reisz is adversarily litigating to seize Guinn's and Campbell's assets to recover funds on behalf of Guinn's bankruptcy estate.

These alleged tax-evasion schemes as perpetrated by Mr. Guinn and Ms. Campbell are the subject of another action filed in the Jefferson County Circuit Court, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573, in which Century Capital Group, LLC d/b/a Auto Injury Assistance ("AIA"), alleges that Guinn and Campbell are evading a successful judgment against them by comingling assets and diverting funds through the companies.

On April 12, 2016, Defendants and counsel met with a U.S. Internal Revenue Service agent, and as advised by the agent, submitted a form used for reporting suspected tax evasion schemes, an "Information Referral" form ("IRS Form 3949-A"). Unbeknownst to Defendants at the time, however, an investigation re the same was already underway.

## VI.   **CONCLUSION**

The substantive and equitable considerations do not warrant the issuance of a temporary injunction against Ms. Brannon and Magnolia. Accordingly, the Plaintiff's Motion for Temporary Injunction should be **DENIED**.

Respectfully submitted this 28th day of April, 2016.

_/s/ Nolia G. Batey_
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
_Counsel for Defendants/_
_Counterclaim Plaintiffs_

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

**AND**

KRISTEN BRANNON, and                          COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC, and   COUNTERCLAIM DEFENDANTS
ROBIN CAMPBELL, and
TROY A. GUINN

\* \* \* \* \*

## <u>ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION</u>

This matter, coming to be heard on Plaintiff's Motion for Temporary Injunction, the

parties having been heard, and the Court being fully and sufficiently advised,

IT IS HEREBY ORDERED and ADJUDGED that the motion is **DENIED**.

SO ORDERED, this _____ day of _____, 2016.

_____
Judge, Jefferson Circuit Court

-12-

Tendered by:

*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants/Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on April 28, 2016, I electronically filed the foregoing with the Jefferson Circuit Court, and served a copy via USPS first-class mail to all of the following parties:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff/Counterclaim
Defendant Innovative Health Care
Solutions, LLC*

TROY A. GUINN
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

ROBIN CAMPBELL
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

*/s/ Nolia G. Batey*
Nolia G. Batey

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

2016 MAY -3  AM 11: 22

CLERK 5

INNOVATIVE HEALTH CARE SOLUTIONS, LLC _____ D.C.  PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

## AGREED ORDER TO ENFORCE RESTRICTIVE COVENANTS

The parties, Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff") and Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), have proposed to resolve Plaintiff's pending motions for preliminary injunction and for expedited discovery against Defendants for breach of their restrictive covenants contained in the Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement (together, the "Agreements") they entered with Plaintiff. At this time, Defendants have represented to Innovative, while reserving the right to challenge the validity of the Agreements and without admitting any wrongdoing, that they are not currently engaged in activities which violate the restrictive covenants of the Agreements.

As such, **IT IS HEREBY ORDERED:**

1.     Innovative's Motion for Expedited Discovery and Motion for Temporary Injunction are hereby deemed withdrawn.

2.     By agreement of the parties, Defendants shall not engage in activities which would violate the following provisions of their agreements with Innovative: Non-Disclosure and Confidentiality Agreement ¶¶ 2-4, 6; Independent Contractor Agreement, ¶¶ 5, 6.

3.     This Order shall remain in effect until the earlier of September 16, 2017, an Order of this Court rescinding this Order, agreement to the contrary by the parties, or until Innovative receives from Defendants a written notice of Defendants' intent to engage in activities which would violate the above-referenced provisions of the Agreements.

4.     Nothing in this Order shall prohibit Innovative from seeking to enforce this Order or its restrictive covenants with Defendants, including the pursuit of injunctive relief, or any of Innovative's other legal rights, should Innovative learn that Defendants are engaging activities which would violate the above-referenced provisions of the Agreements, receive a notice from Defendants of their intent to engage in such activities, or learn that Defendants are in any other way violating their Agreements with Innovative.

**SO ORDERED** this _____ day of _____, 2016 at _____ am/pm.


_____
Judge

_____
Date

2

HAVE SEEN AND AGREED:


Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen Brannon*
*and Magnolia Health Care Solutions, LLC*


R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

10307422v2

3

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

COMMONWEALTH OF KENTUCKY

2016 MAY 12   AM 11: 53   JEFFERSON CIRCUIT COURT

DIVISION 1

CLERK 5   CASE NO. 16-CI-01435

D.C.
INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

* * * * * * *

## NOTICE – MOTION - ORDER

All parties shall take notice that this Motion will come on for hearing on the 16th

day of May, 2016 at the hour of 8:45 a.m., or as soon thereafter as counsel may be heard.

## MOTION TO COMPEL THE DEPOSITION OF KRISTEN BRANNON

Plaintiff Innovative Health Care Solutions, LLC ("Innovative") hereby moves the

Court pursuant to CR 30.01, CR 30.02 and CR 37.01, to compel Defendant Kristen

Brannon ("Brannon") to appear for a deposition.  In support of this Motion, Innovative

states as follows:

1.      Innovative has alleged by its Verified Complaint that Defendants,

Brannon and Magnolia Health Solutions, LLC, have breached their non-competition,

non-solicitation, and confidentiality agreements with Innovative.

2.      Due to the nature of the allegations in the Verified Complaint, counsel for

Innovative has repeatedly communicated the need to take the deposition of Kristen

Brannon as quickly as possible to discover and prevent ongoing violations of Defendants' agreements with Innovative.

3.     In addition to seeking injunctive relief in its Verified Complaint, Innovative filed a Motion for Temporary Injunction on April 15, 2016.

4.     On May 2, 2016, during negotiations to enter an Agreed Order on Innovative's Motion for Temporary Injunction, Defendants' counsel indicated by phone that she would work with Innovative's counsel to set Kristen Brannon's deposition for a mutually convenient time within the following 30 days.

5.     Also on May 2, 2016, counsel for Innovative proposed May 24 or 25, 2016 as potential dates to take Brannon's deposition and asked for alternative dates in case of schedule conflicts.

6.     On May 10, 2016, having received no answer from defense counsel regarding the proposed dates for Brannon's deposition, counsel for Innovative asked again for a response. Counsel for Defendants indicated that Brannon would not sit for deposition on the suggested dates and did not offer any alternative dates for deposition.

7.     Also on May 10, 2016, counsel for Innovative asked that defense counsel propose alternative dates for Brannon's deposition prior to June 3, 2016 and stated that, without a timely deposition, Innovative would be forced to renew its Motion for Temporary Injunction to protect its business interests.

8.     On May 11, 2016, Defendants' counsel replied stating that she would propose a discovery schedule "within a week or so" and still failed to offer any potential dates for Brannon's deposition before — or after — June 3, 2016.

9.     Despite defense counsel's insistence on delaying Brannon's deposition, no discovery schedule is required in Kentucky State courts. "After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination." Ky. CR 30.01. Leave of court to take a deposition is required "only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons upon *any* defendant." Ky. CR 30.01.  More than 30 days have passed since Defendants were served on April 8, 2016.

10.     In agreeing to the aforementioned Agreed Order to withdraw its Motion for Temporary Injunction, and thereby foregoing an opportunity to question Brannon under oath, Innovative relied on its understanding that defense counsel would work with Innovative's counsel to schedule Brannon's deposition within the following 30 days. Defense counsel has since refused to offer any dates for Brannon's deposition.

11.     Further, Innovative's counsel has offered to limit the scope of Brannon's initial deposition to whether there are violations of the restrictive covenants in Defendants' agreements with Innovative. Counsel for Defendants has still refused to offer potential dates for Brannon's deposition.

12.     Because Innovative lacks information regarding Defendants' conflicts or preferred dates for Brannon's deposition, Innovative has noticed Brannon's deposition for May 24, 2016 at 9:30 a.m. Defendants' counsel has indicated she will file a motion for protective order, rather than produce Brannon for the noticed deposition.

## CONCLUSION

For the foregoing reasons, Innovative respectfully requests that this Court compel Kristen Brannon to appear for deposition, either at the presently noticed time of May 24, 2016 at 9:30 a.m. or at an alternative mutually agreeable time prior to June 3, 2016. In the alternative, in the event Innovative is unable to schedule a timely deposition, it will renew its motion for a temporary injunction and request that the Court schedule the matter for a hearing.

## CERTIFICATION OF EFFORT TO RESOLVE

Pursuant to JRP 402, the undersigned counsel hereby affirms that they have conferred with opposing counsel and that they are unable to reconcile their differences with opposing counsel, having exhausted extrajudicial means of compromise.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 12th day of May, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
<u>nbatey@bateylawoffice.com</u>

_____
*Counsel for Plaintiff*

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT 2016 MAY 12  AM 11: 53
DIVISION 1
CASE NO. 16-CI-01435          CLERK 5

INNOVATIVE HEALTH CARE SOLUTIONS, LLC      _____ D.C. PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

\* \* \* \* \* \* \*

## ORDER

Upon Motion of the Plaintiff, Innovative Health Care Solutions, LLC, and the

Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Kristen Brannon shall appear for deposition in

her individual capacity and on behalf of Magnolia Health Care Solutions, LLC on May

24, 2016 at 9:30 a.m. or at a mutually agreeable time and place prior to June 3, 2016.

Entered this _____ day of May, 2016.

_____
JUDGE, JEFFERSON CIRCUIT COURT

Tendered by:

_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax:  (502) 585-2207
*Counsel for Innovative*

6

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

2016 MAY -3  AM 11: 22

CLERK 5

INNOVATIVE HEALTH CARE SOLUTIONS, LLC

**PLAINTIFF**
D.C.

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC

**DEFENDANTS**

## <u>AGREED ORDER TO ENFORCE RESTRICTIVE COVENANTS</u>

The parties, Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff") and Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), have proposed to resolve Plaintiff's pending motions for preliminary injunction and for expedited discovery against Defendants for breach of their restrictive covenants contained in the Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement (together, the "Agreements") they entered with Plaintiff. At this time, Defendants have represented to Innovative, while reserving the right to challenge the validity of the Agreements and without admitting any wrongdoing, that they are not currently engaged in activities which violate the restrictive covenants of the Agreements.

As such, **IT IS HEREBY ORDERED**:

1.       Innovative's Motion for Expedited Discovery and Motion for Temporary Injunction are hereby deemed withdrawn.



MAY 16

2.     By agreement of the parties, Defendants shall not engage in activities which would violate the following provisions of their agreements with Innovative: Non-Disclosure and Confidentiality Agreement ¶¶ 2-4, 6; Independent Contractor Agreement, ¶¶ 5, 6.

3.     This Order shall remain in effect until the earlier of September 16, 2017, an Order of this Court rescinding this Order, agreement to the contrary by the parties, or until Innovative receives from Defendants a written notice of Defendants' intent to engage in activities which would violate the above-referenced provisions of the Agreements.

4.     Nothing in this Order shall prohibit Innovative from seeking to enforce this Order or its restrictive covenants with Defendants, including the pursuit of injunctive relief, or any of Innovative's other legal rights, should Innovative learn that Defendants are engaging activities which would violate the above-referenced provisions of the Agreements, receive a notice from Defendants of their intent to engage in such activities, or learn that Defendants are in any other way violating their Agreements with Innovative.

**SO ORDERED** this _____ day of _____, 2016 at _____ am/pm.

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK

MAY 1 2 2016

BY _____
DEPUTY CLERK

_____
Judge

_____
Date    5/10/16

2

HAVE SEEN AND AGREED:

_____
Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen Brannon*
*and Magnolia Health Care Solutions, LLC*


_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*


10307422v2

3



COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

### *ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

\* \* \* \* \*

## DEFENDANTS' MOTIONS FOR A PROTECTIVE ORDER
## AND TO STAY DISCOVERY

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions,

LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or

"Counterclaim Plaintiffs"), and for their Motions for a Protective Order and to Stay Discovery,

supported by their May 13, 2016 DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR

MOTION FOR A PROTECTIVE ORDER, MOTION TO STAY DISCOVERY, AND IN

OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL filing, by and through undersigned

counsel, hereby request this Court grant Defendants' Motions for a Protective Order and to Stay

Discovery.

The Kentucky Rules of Civil Procedure grant this Court full authority to issue a protective

order to prevent the abuse of discovery. See CR 26.03(1); *Hoffman v. Dow Chemical Co.*, 413

S.W.2d 332 (1967). A protective order is proper where a party requires protection from annoyance,

embarrassment, oppression, or undue expense or burden, and may require "that certain matters not

be inquired into, or that the scope of the discovery be limited to certain matters." CR 26.03.  The

scope of examination permitted in a deposition is limited to matters, not privileged, which are

relevant to the subject matter involved in the pending action.  CR 26.02.  It is the duty of the court to keep the inquiry within reasonable bounds and to restrict questions to those having "substantial relevancy" to the pending matter.  *Carpenter v. Wells*, 358 S.W.2d 524, 526 (Ky. App. 1962) (internal quotation omitted).

This Court has broad discretion to grant a protective order that will stay discovery and generally prevent abuse of the discovery process.  This Court should stay discovery in the current matter pending Campbell and Guinn's federal criminal investigations.

Despite the unenforceability of the agreements at the center of this dispute, Defendants have represented to Plaintiff that they have followed both the spirit and the letter of the Agreements.  Defendants have gone so far as to sign an Agreed Order expressing Defendants' commitment to abide by the otherwise unenforceable agreements.

Plaintiff's Motion to Compel a Deposition from Ms. Brannon is the latest in a series of Motions made before this Court intended to embarrass, harass, and/or intimidate Ms. Brannon. Defendants have made countless attempts at extrajudicial resolution.  Absent an Order of this Court, Ms. Brannon will not be intimidated to the point of failing to cooperate regarding investigations into Guinn and Campbell's criminal enterprise.

In light of the complicated nature of Plaintiff's criminal enterprise and Defendant's intended RICO claim, *inter alia*, Defendants request that this Court (1) Quash/Cancel the Plaintiff's May 12, 2016 Deposition Notice (erroneously noted to have been served on April 12, 2016 in the Certificate of Service of the same); (2) Deny the Plaintiff's May 12, 2016 Motion to Compel; (3) Grant the Defendants' Motion for a Protective Order, and (4) Grant the Defendants' Motion to Stay Discovery.

discovery be stayed until Defendants have filed their Amended Answer including a detailed RICO claim.   In the alternative, Defendants request that Plaintiff's Motion to Compel the Deposition of Kristen Brannon be denied and the Plaintiff be ordered to engage in good faith discovery negotiations,

WHEREFORE, Defendants request this Court:

(1) **QUASH/CANCEL** Plaintiff's May 12, 2016 Deposition Notice; and

(2) **DENY** Plaintiff's May 12, 2016 Motion to Compel the Deposition; and

(3) **GRANT** the Defendants' May 13, 2016 Motion for a Protective Order; and

(4) **GRANT** the Defendants' May 13, 2016 Motion to Stay Discovery.

Respectfully submitted this 13th day of May, 2016.

*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen*
*Brannon and Magnolia Health*
*Solutions, LLC*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on May 13th, 2016, I electronically filed the foregoing DEFENDANTS' MOTIONS FOR A PROTECTIVE ORDER AND TO STAY DISCOVERY with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care Solutions, LLC
and Robin Campbell*

Troy A. Guinn
3011 Long Creek Way
Louisville, KY 40245
*Counterclaim Defendant*

*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Kristen Brannon and
Magnolia Health Solutions, LLC*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS


* * * * * * *

## INNOVATIVE'S MOTION TO DISMISS COUNTERCLAIMS
## OF BRANNON AND MAGNOLIA

Pursuant to Kentucky Civil Rule 12.02(f), Innovative Health Care Solutions, LLC ("Innovative"), by counsel, moves this Court for an Order dismissing the counterclaims of Defendants Kristen Brannon ("Brannon") and Magnolia Health Care Solutions, LLC ("Magnolia"). In support of the motion, Innovative relies upon the attached memorandum in support and proposed order.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 17th day of May, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com

*Counsel for Plaintiff*

2

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                      PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                      DEFENDANTS

* * * * * * *

## MEMORANDUM IN SUPPORT OF INNOVATIVE'S MOTION TO DISMISS COUNTERCLAIMS OF BRANNON AND MAGNOLIA

Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff"), by counsel, in support of its motion to dismiss the counterclaims of Kristen Brannon ("Brannon") and Magnolia Health Care Solutions, LLC ("Magnolia") (collectively, "Defendants"), pursuant to Civil Rule 12.02(f), states as follows.

### INTRODUCTION

Innovative filed its Verified Complaint on March 28, 2016, giving rise to this action. Innovative alleged past and ongoing violations by Defendants of multiple restrictive covenants in two agreements executed between the parties. (*See* Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement, attached to Defendants' Answer and Counterclaims as Exhibits 1 & 2, respectively (collectively, the "Agreements")). In addition to answering, Brannon and Magnolia brought a three-count counterclaim against Innovative and joined two additional defendants to their counterclaims, Robin Campbell and Troy Guinn. Robin Campbell is

the sole member and manager of Innovative. Troy Guinn is a former employee of Innovative with no ownership interest in the company. Robin Campbell and Troy Guinn have been in a long term romantic relationship.

In their counterclaims, Defendants seek relief on three counts: Count I, Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing; Count II, Tortious Interference with Magnolia/Greg Williams Contract; and Count III, Declaration of Rights. The first two counts are based on Innovative's alleged underpayment of commissions to Magnolia under the terms of the Independent Contractor Agreement. The third count seeks a declaration that Innovative does not possess any right to interfere with Magnolia's business activities.

Despite the nature of these claims, the facts alleged in Brannon and Magnolia's counterclaims have little to do with the contracts at issue or the business relationships between the parties. Instead, Defendants enumerate a number of vague and conclusory allegations about unrelated matters in an attempt to cast Innovative, Campbell, and Guinn in a bad light, including, among other things, generic and unsupported allegations of questionable business practices (Def. Answer and Counterclaims ¶ 71), tax evasion tactics (*id.* ¶¶ 72-73, 76-78), and a discussion of unrelated litigation (*id.* ¶¶ 60, 72-75). These allegations are irrelevant at best and contain false and misleading information.

However, even when taking Defendants' allegations as true for the purposes of this motion to dismiss, Defendants fail to state claims on which relief can be granted. On the face of the allegations and the Agreements attached to Defendants' Answer and

Counterclaims, Innovative has acted within its rights, both in withholding commissions not earned prior to the termination of the Independent Contractor Agreement and in pursuing legal action to enforce restrictive covenants under the Agreements.

## STANDARD OF REVIEW

A motion to dismiss should be granted if it appears that the plaintiff would not be entitled to relief under any set of facts that could be proved in support of his claim. *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002); *Pari-Mutuel Clerks Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). Although all factual allegations made by a plaintiff are taken as true, legal conclusions or unwarranted inferences are not. *Potter v. Trivette*, 197 S.W.2d 245, 246 (Ky. 1946). If a plaintiff does not articulate a set of facts to support his claim, then the defendant's motion should be granted. *See id.* The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *See Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985). Whether the plaintiff may be entitled to relief if facts in the complaint can be proven is purely a matter of law. *Bagby v. Koch*, 98 S.W.3d 521 (Ky. App. 2002).

## ARGUMENT

### I.   Brannon and Magnolia Fail to State a Claim for Breach of Contract Against Innovative in Count I

In Count I of the counterclaims, Brannon and Magnolia allege breach of contract and the implied covenant of good faith and fair dealing. The basis of Count I is the alleged underpayment of commissions under the Independent Contractor Agreement.

Defendants allege that Brannon and Magnolia are owed "$12,900.00 for commissions on orders submitted prior to termination of the Independent Contractor Agreement." (Defs. Answer and Counterclaims ¶ 82.)[1] This alleged debt does not constitute a breach of the Independent Contractor Agreement.

As a preliminary matter, only Innovative and Magnolia were parties to the Independent Contractor Agreement. (*See* Independent Contractor Agreement, attached as Exhibit 2 to Defs. Answer and Counterclaims.) Thus, Kristen Brannon cannot assert a claim for breach under the contract in her individual capacity.

Magnolia's claim for commissions on "orders submitted prior to termination of the Independent Contractor Agreement" (*id.* ¶ 82) also fails as a matter of law based on the terms of the Independent Contractor Agreement. Commissions under the Independent Contractor Agreement are only to be paid during the term of the agreement and are due only after orders are paid in full, not for "submitted" orders.

Section 3.1 of the Independent Contractor Agreement provides:

> IHCS shall pay Contractor, **during the Term of this Agreement**, one hundred fifteen dollars ($115. 00) for each unit of Product ordered and paid by a physician or health care facility **when paid in full upon delivery**, or one hundred fifty dollars ($150.00) for each unit of Product ordered and paid by a physician or health care facility when physician or health care facility participates in IHCS's "full service program"

(Independent Contractor Agreement ¶ 3.1) (emphasis added). Magnolia alleges that it "submitted" orders prior to termination, but fails to allege that Innovative received

---

[1] Count I also alleges that Innovative owes "$540.00 for an incomplete payment on the last commission payment made to Magnolia." (Defs. Answer and Counterclaims ¶ 82.) While Magnolia owes Innovative more than this amount, Innovative is not moving to dismiss this aspect of the claim at this time.

4

payment for the orders prior to termination. Further, commissions under the Independent Contractor Agreement are only to be paid "during the Term of [the] Agreement." *Id.* As such, Innovative has no obligation to pay commissions on orders merely submitted during the contract term.

Count I also alleges a breach of the implied covenant of good faith and fair dealing, based on Innovative's alleged failure to pay commissions that Defendants allege are due. However, "[a]n implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Farmers Bank & Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11, 2005 Ky. LEXIS 241, *17 (Ky. 2005). Innovative has no obligation to pay commissions not earned during the contract term of the Independent Contractor Agreement. Innovative's actions comport with its rights under the agreement and do not constitute a breach of the implied covenant of good faith and fair dealing. For these reasons, the allegations in Count I that Innovative breached the Independent Contractor Agreement and the implied covenant of good faith and fair dealing should be dismissed.

**II.    Brannon and Magnolia Fail to State a Claim for Tortious Interference Against Innovative in Count II.**

Count II of the counterclaims alleges tortious interference with an independent contractor agreement between Magnolia and Greg Williams. Defendants plead that there existed a subcontractor agreement between Magnolia and Williams (Defs. Answer and Counterclaims ¶¶ 28, 69, 85) and that Innovative "interfered with Ms. Brannon and

Magnolia's ability to perform under the Williams Agreement by wrongfully withholding commissions owed" (*id.* ¶ 86).

As a preliminary matter, only Magnolia and Greg Williams were parties to the so-called "Williams Agreement." (*See* Defs. Answer and Counterclaims ¶¶ 28, 69, 85, Ex. 3.) Thus, Kristen Brannon cannot assert a claim for tortious interference in her individual capacity.

The elements of a claim for tortious interference with contract are as follows: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) that the defendant intended to cause a breach of that contract; (4) that the defendant's actions did indeed cause a breach; (5) that damages resulted to the plaintiff; and (6) that the defendant had no privilege or justification to excuse its conduct. *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6, 2012 Ky. App. LEXIS 67, *12, 2012 WL 1370878 (Ky. Ct. App. 2012); *Demoisey v. Ostermiller*, 2016 Ky. App. LEXIS 71, *23-26 (Ky. Ct. App. May 6, 2016). Further, "to prevail [on an interference claim] a party seeking recovery must show malice or some significantly wrongful conduct." *National Collegiate Athletic Asso. v. Hornung*, 754 S.W.2d 855, 859, 1988 Ky. LEXIS 37, *12 (Ky. 1988).

The sole basis of Count II of Brannon and Magnolia's counterclaims is Innovative's alleged "wrongful" withholding of the commission payments sought in Count I. In pleading Count II, Defendants do nothing more that rehash the breach of contract claim in Count I and fail to plead the additional required elements of tortious interference, including the intention to cause a breach of contract and the requisite malice or wrongdoing. The common law claim for tortious interference involves the

"imposition of liability upon a stranger to an existing contract for wrongfully procuring a party to the contract not to perform." *See National Collegiate Athletic Asso. v. Hornung*, 754 S.W.2d 855, 858, 1988 Ky. LEXIS 37, *9 (Ky. 1988). Here, Defendants only allege that though Innovative's alleged breach of the Independent Contractor Agreement with Magnolia, i.e. failing to pay commissions sought, Innovative "interfered with **Magnolia's** ability to perform under the Williams Agreement." (Defs. Answer and Counterclaims ¶ 86) (emphasis added). There is no allegation that Innovative took any affirmative action to cause such breach or that it had any intention to do so.

As discussed above, Innovative's actions in withholding the commissions sought in Count I do not constitute a breach of contract. However, even assuming such conduct constituted a breach of contract, that breach alone would not constitute tortious interference of the Williams Agreement. Defendants fail to plead a distinct cause of action outside of the initial alleged breach. For these reasons, the allegations in Count II that Innovative tortiously interfered with the Magnolia/Williams Independent Contractor Agreement should be dismissed.

**III.   Brannon and Magnolia Fail to State a Proper Claim for a Declaration of Rights Against Innovative in Count III.**

Count III of Defendants' counterclaims seeks a declaration of rights that Innovative does not "possess any right to interfere with Magnolia's business activities." (*Id.* ¶ 90.) In support of this claim for relief, Defendants state that "a genuine dispute exists between the parties concerning the right of Magnolia to provide services unrelated to those previously performed for Counterclaim Defendants." (*Id.* ¶ 90.) No

such dispute exists. Innovative does not have any interest in preventing Magnolia from engaging in business activities "unrelated to those previously performed for [Innovative]" except to the extent that those activities would otherwise violate the Agreements at issue here. Likewise, Brannon and Magnolia have no right to violate those Agreements.

As a preliminary matter, Count III specifically seeks a declaration of rights with respect to the business activities of Magnolia. (*See* Defs. Answer and Counterclaims ¶¶ 89-90.) Thus, Kristen Brannon cannot assert the instant claim for a declaration of rights in her individual capacity.

Kentucky law allows plaintiffs to seek declaratory relief where "an actual controversy exists." KRS 418.040. When there is "no actual justiciable controversy presented by the petition the court [is] without jurisdiction to entertain it or to attempt to adjudge the academic question submitted." *Revis v. Daugherty*, 215 Ky. 823, 826, 287 S.W. 28, 29, 1926 Ky. LEXIS 818, *7 (Ky. 1926). Further, "[t]he court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action." KRS 418.065.

Here Defendants ask the Court to make a purely abstract ruling, unrelated to the true controversy at hand. An order of this Court stating that Innovative does not "possess any right to interfere with Magnolia's business activities" which are "unrelated to those previously performed for [Innovative]" would do nothing to resolve the underlying controversy of the parties' rights under the Agreements at issue. Count

8

III of Defendants' counterclaims misstates the nature of the dispute between the parties and should be dismissed for failing to state an appropriate justiciable controversy for declaratory relief.

## CONCLUSION

For the reasons set forth above, Innovative Health Care Solutions, LLC respectfully request that the counterclaims against them be dismissed with prejudice. A proposed order is attached.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this __17th__ day of May, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
nbatey@bateylawoffice.com

_____

*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

* * * * * * *

## ORDER

Upon Motion of Innovative Health Care Solutions, LLC, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that of Defendants' counterclaims against Innovative Health Care Solutions, LLC be dismissed with prejudice, with the exception of Magnolia's claim for $540.00 in past due commissions.

Entered this _____ day of _____, 2016.

_____
JUDGE, JEFFERSON CIRCUIT COURT

Tendered by:

_____
R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
*Counsel for Innovative*

11



COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                           DEFENDANTS

\* \* \* \* \*

## TENDERED ORDER FOR A PROTECTIVE ORDER
## AND TO STAY DISCOVERY

Upon the motions for a protective order and to stay discovery filed by the Defendants,

Kristen Brannon and Magnolia Health Solutions, LLC, with the Court being sufficiently advised,

**IT IS HEREBY ORDERED** that

(1) Plaintiff's Notice of Deposition is **QUASHED/CANCELLED**; and

(2) Plaintiff's Motion to Compel the Deposition of Kristen Brannon is **DENIED**; and

(3) Defendants' Motion for a Protective Order is **GRANTED**; and

(4) Defendants' Motion to Stay Discovery is **GRANTED**.

Entered this _____ day of _____, 20___.


_____
JUDGE, JEFFERSON CIRCUIT COURT

Tendered by:

_Nolia G. Batey_
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen Brannon*
*and Magnolia Health Solutions, LLC*

NO. 16CI-1435                           JEFFERSON CIRCUIT COURT
                                                     DIVISION ONE (1)

INNOVATIVE HEATLH CARE SOLUTIONS, LLC          PLAINTIFF

v.                          **ORDER**

KRISTEN BRANNON

and

MAGNOLIA HEALTH SOLUTIONS, LLC                 DEFENDANTS

\* \* \* \* \* \* \* \*

      The Court will conduct a hearing on Plaintiff's Motion To Compel The

Deposition Of Kristen Brannon on June 9, 2016 at 11:00 a.m.

 

 

<br>

                                  _____
                                     BARRY WILLETT
                      JEFFERSON CIRCUIT COURT JUDGE
             Date Signed: _____5/17/16_____

c:     R. Kenyon Meyer
        Corinne E. Keel
        Nolia G. Batey

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK

MAY 17 2016

BY _____
DEPUTY CLERK

MAY 20 2016

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC             PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC           DEFENDANTS

\* \* \* \* \* \* \*

## CAMPBELL'S MOTION TO DISMISS COUNTERCLAIMS
## OF BRANNON AND MAGNOLIA

Pursuant to Kentucky Civil Rule 12.02(f), Robin Campbell ("Campbell"), by counsel, moves this Court for an Order dismissing the counterclaims of Defendants Kristen Brannon ("Brannon") and Magnolia Health Care Solutions, LLC ("Magnolia") (collectively, "Defendants"). In support of the motion, Campbell relies upon the attached memorandum in support and proposed order.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative*
*Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 23rd day of May, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com

*Counsel for Plaintiff*

2

FILED CLERK'S OFFICE

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

2016 MAY 23   PM 4 29

CLERK 10

INNOVATIVE HEALTH CARE SOLUTIONS, LLC   BY ———————— PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

\* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF CAMPBELL'S MOTION TO DISMISS COUNTERCLAIMS OF BRANNON AND MAGNOLIA

Robin Campbell ("Campbell"), by counsel, in support of her motion to dismiss the counterclaims of Defendants Kristen Brannon ("Brannon") and Magnolia Health Care Solutions, LLC ("Magnolia") (collectively, "Defendants"), pursuant to Civil Rule 12.02(f), states as follows.

### INTRODUCTION

Plaintiff Innovative Health Care Solutions, LLC filed its Verified Complaint on March 28, 2016. Innovative alleged past and ongoing violations by Defendants of multiple restrictive covenants in two agreements. Defendants attached the agreements to their Answer and Counterclaims. (Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement, attached to Defendants' Answer and Counterclaims as Exhibits 1 & 2, respectively (collectively, the "Agreements")). Brannon and Magnolia filed a three-count counterclaim against Innovative and joined two additional defendants to their counterclaims, Robin Campbell and Troy Guinn. Robin

Campbell is the sole member and manager of Innovative. Troy Guinn is a former employee of Innovative with no ownership interest in the company.

In their counterclaims, Defendants seek relief on three counts: Count I, Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing; Count II, Tortious Interference with Magnolia/Greg Williams Contract; and Count III, Declaration of Rights. The first two counts are based on Innovative's alleged underpayment of commissions to Magnolia under the terms of the Independent Contractor Agreement. The third count seeks a declaration that Innovative, Robin Campbell, and Troy Guinn do not possess any right to "interfere" with Magnolia's business activities.

As a matter of law, each of the three counts fails to state a claim against Campbell. Only Innovative, and not Campbell, was a party to the Agreements at issue. All three counts of the counterclaims are based on provisions in these Agreements (to which Campbell was never a party). As such, Campbell should be dismissed as a defendant.

## ARGUMENT

### I.   Robin Campbell Should be Dismissed as a Defendant to all of Defendants' Counterclaims.

The counterclaims are based on the Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement. Robin Campbell was not a party to either agreement.

Count I alleges a breach of the Independent Contractor Agreement and a breach of the implied covenant of good faith and fair dealing under the contract. Specifically,

Defendants allege that commissions owed under the Independent Contractor Agreement were not paid. The parties to the Independent Contractor Agreement were Innovative and Magnolia. Campbell was not a party to the Independent Contractor Agreement.

Count II asserts a tortious interference with contract claim based on the allegation that commissions owed to Magnolia pursuant to the Independent Contractor Agreement were not paid, causing Magnolia to breach its subcontractor agreement with Greg Williams. Again, Robin Campbell was not a party to the Independent Contractor Agreement.

Count III alleges,

> A genuine dispute exists between the parties concerning the right of Magnolia to provide services unrelated to those previously performed for Counterclaim Defendants. Magnolia is entitled to an order declaring that IHCS, Robin Campbell, nor Troy Guinn possess any right to interfere with Magnolia's business activities.

(Defs. Answer and Counterclaims ¶ 90.) Any dispute that exists regarding Magnolia's "right" to conduct business arises out of the restrictive covenants of the Non-Disclosure and Confidentiality Agreement and the Independent Contractor Agreement. Robin Campbell was not a party to either of these Agreements.

The issues raised by Defendants, i.e. Innovative's non-payment of commissions allegedly owed and Innovative's right—or lack thereof—to constrain Magnolia's business activities, relate solely to functions of Innovative as an entity, and not to Campbell personally. Campbell's status as a sole member of Innovative is not sufficient

to render her personally liable for the debts or obligations of Innovative. Accordingly, Campbell is not a proper defendant to Brannon and Magnolia's Counterclaims.

The principle that a member of a limited liability company cannot be individually liable for the debts or liabilities of the company is clear in Kentucky. KRS 275.150 provides, that

> no member, manager, employee, or agent of a limited liability company . . . shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner . . . or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in **contract**, tort, or otherwise."

KRS 275.150 (emphasis added). The Kentucky Supreme Court has applied the individual immunity found in KRS 275.150 to cases where a sole member of a limited liability company causes a contract to be entered by the company. *See Pannell v. Shannon*, 425 S.W.3d 58, 65, 2014 Ky. LEXIS 94, *14, 2014 WL 1101472 (Ky. 2014) ("This Court sees no reason to depart from the rule that if the body of the contract states that the agreement is with a corporation or other entity, then the officer or agent signing the agreement has not signed in her individual capacity and cannot be held personally liable solely because of her signature.") The *Pannell* court also reasserted that

> there is no question that a limited liability company is a legal entity distinct from its members and that a member of a limited liability company shall not be a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company. This is the case even where there is only one member.

*Pannell*, 425 S.W.3d at 74 (internal citations omitted).

4

In executing the Non-Disclosure and Confidentiality Agreement and Independent Contractor Agreement on behalf of Innovative, Robin Campbell did not, as a matter of law, subject herself to personal liability. The counterclaims relate to the rights and obligations of Innovative under the Agreements. As such Robin Campbell is not a proper defendant for the counterclaims of Brannon and Magnolia and should be dismissed from all counts.

## CONCLUSION

For the reasons set forth above, Robin Campbell respectfully requests that the counterclaims against her be dismissed with prejudice. A proposed order is attached.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 23rd day of May, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
nbatey@bateylawoffice.com

_____
*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

FILED CLERK'S OFFICE
JEFFERSON CIRCUIT COURT
2016 MAY 23  PM 4 29

CLERK 10

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

BY _____

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

* * * * * * *

## ORDER

Upon Motion of Robin Campbell, and the Court being otherwise sufficiently

advised,

**IT IS HEREBY ORDERED** that Counts I, III, and III of the counterclaims of

Kristen Brannon and Magnolia Health Solutions, LLC against Robin Campbell be

dismissed with prejudice.

Entered this _____ day of _____, 2016.

_____
JUDGE, JEFFERSON CIRCUIT COURT

Tendered by:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax:  (502) 585-2207
*Counsel for Innovative*

7

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

***ELECTRONICALLY FILED***

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

\* \* \* \* \*

**DEFENDANTS' CR 15.01 MOTION FOR LEAVE TO FILE
AN AMENDED ANSWER AND COUNTERCLAIMS**

Pursuant to CR 15.01, Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health

Solutions, LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and

Magnolia" or "Counterclaim Plaintiffs"), move the Court for Leave to File an Amended Answer

and Counterclaims. Defendants have recently received new information that warrants amending

their Answer and Counterclaims with pleading of civil RICO claims. In addition, new information

gives Defendants reason to plead their current counterclaims with more clarity as a basis for their

claims. CR 15.01 permits Defendants to amend their counterclaims if no responsive pleading has

been filed by the opposing party. Thus far, Plaintiff has filed two motions to dismiss, which are

not considered responsive pleadings. CR 7.01 and 7.02; *Kentucky Lake Vacation Land, Inc. v.*

*State Prop. And Bldgs. Comm'n*, 333 S.W.2d 779, 781 (Ky. 1960) (citing *Ohio Casualty Insurance*

*Co. v. Farmer's Bank of Clay, Kentucky*, 178 F.2d 570 (6 Cir. 1949)).

WHEREFORE, Defendants request this Court **GRANT** Defendants' Motion for Leave to

File an Amended Answer with Counterclaims on June 7, 2016.

1

Respectfully submitted this 24th day of May, 2016.

/s/ Nolia G. Batey
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen*
*Brannon and Magnolia Health*
*Solutions, LLC*

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on May 24, 2016, I electronically filed the foregoing DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED ANSWER WITH COUNTERCLAIMS with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care*
*Solutions, LLC and Robin Campbell*

Troy A. Guinn
3011 Long Creek Way
Louisville, KY 40245
*Counterclaim Defendant*

/s/ Nolia G. Batey
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Kristen Brannon and*
*Magnolia Health Solutions, LLC*

A829174F-6EB5-4E25-872A-F05635851301 : 000002 of 000003

Presiding Judge: HON. BARRY WILLETT (630175)

MOT : 000002 of 000002

2

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

### ELECTRONICALLY FILED

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

\* \* \* \* \*

### TENDERED ORDER

Defendants move the Court pursuant to CR 15.01 for leave to file an Amended Answer

and Counterclaims.

**IT IS HEREBY ORDERED** that Defendants motion for leave to file an Amended

Answer and Counterclaims is **GRANTED**, and the amended pleading is due on June 7, 2016.

_____

JUDGE, JEFFERSON CIRCUIT COURT

_____

DATE

Tendered by:
_Nolia G. Batey_____
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407;
F: (502) 470-3634
nbatey@bateylawoffice.com
_Counsel for Defendants, Kristen Brannon_
_and Magnolia Health Solutions, LLC_

A829174F-6EB5-4E25-872A-F05635851 3D1 : 000003 of 000003

Presiding Judge: HON. BARRY WILLETT (630175)

TD : 000001 of 000001

COMMONWEALTH OF KENTUCKY

FILED IN CLERKS OFF.
JEFFERSON CIRCUIT CT.

JEFFERSON CIRCUIT COURT

DIVISION 1   2016 MAY 27   PM 12: 19

CASE NO. 16-CI-01435

CLERK 5

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                         PLAINTIFF

_____ D.C.

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                         DEFENDANTS

## AGREED ORDER

The parties, Plaintiff, Innovative Health Care Solutions, LLC ("Innovative" or "IHCS" or "Plaintiff") and Defendants, Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), have agreed to a mutually convenient date for the deposition of Kristen Brannon. Brannon will appear for deposition on June 17, 2016. As a result of this agreement, Plaintiff's Motion to Compel the Deposition of Kristen Brannon, filed May 12, 2016, and Defendants' Motion for Protective Order and to Stay Discovery, filed May 13, 2016, are hereby dismissed as moot. The hearing on these motions, scheduled for June 9, 2016, is cancelled.

As such, **IT IS HEREBY ORDERED**:

**SO ORDERED** this _____ day of _____, 2016 at _____ am/pm.

_____

Judge

_____

Date

HAVE SEEN AND AGREED:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen Brannon
and Magnolia Health Solutions, LLC*

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

10370099v1

2

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

***ELECTRONICALLY FILED***

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                           DEFENDANTS

\* \* \* \* \*

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF IHCS'S MOTION TO DISMISS COUNTERCLAIMS OF BRANNON AND MAGNOLIA

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or "Counterclaim Plaintiffs"), and for their Response in Opposition to Plaintiff Innovative Health Care Solutions, LLC'S ("IHCS" or "Plaintiff" or "Innovative") Motion to Dismiss, by and through undersigned counsel, state the following:

## I.   **INTRODUCTION**

Ms. Brannon and Magnolia hereby request this Court deny the Plaintiff's Motion to Dismiss on the grounds that a motion to dismiss at this juncture is premature, and that the amendment process, for which Defendants intend to amend their Answer and Counterclaims, should take precedence. Upon filing the amended Answer and Counterclaims, Plaintiff will be allotted the time to respond per Kentucky Rules of Civil Procedure, and thus will not be unfairly prejudiced. Further, Plaintiff's Motion to Dismiss should be denied as a matter of law as the Defendants' current counterclaims were sufficiently and properly pleaded.

1

In Its Verified Complaint, Plaintiff alleges that Defendants breached signed agreements ("Non-Disclosure Agreement" or "First Agreement"); and ("Independent Contractor Agreement" or "Second Agreement") and violated the non-competition and non-solicitation clauses of those agreements, and as such, asks the Court to "[t]emporarily and permanently restrain and enjoin Defendants from violating the terms of the First Agreement and the Second Agreement" (Complaint, ¶1, p.12).

Defendants counterclaim that Plaintiff breached the Second Agreement, as well as the covenant of good faith and fair dealing, and has and continues to commit tortious interference in regard to Magnolia's independent contractor.  Plaintiff IHCS, Guinn, and Campbell are currently in arrears for outstanding commissions and payments for services owed.

## II.      **STANDARD OF REVIEW**

In the Commonwealth, Court Rule 12.02 governs motions to dismiss.  "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594 (Ky. App. 2011) (citing *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky. 1964) (internal citation omitted)).  "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *Id.* (citing *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002)).  "It is not necessary to state a claim with technical precision under this rule, as long as a complaint gives a defendant fair notice and identifies the claim." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky, 2005); see also *Morris v. Cabinet for Families and Children*, 69 S.W.3d 73, 74 (Ky. 2002).   The complaint should set out facts or conclusions

sufficient to identify the basis of the claim. *Natural Res. And Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989).

**III.   ARGUMENT AND AUTHORITIES**

**A.   DEFENDANTS INTEND TO AMEND THEIR ANSWER AND COUNTERCLAIMS PURSUANT TO CR 15.01**

Pursuant to CR 6.02(b) and CR 15.01, Defendants moved the Court for leave to file their Amended Answer and Counterclaims, with the intent of filing said pleading on June 7, 2016. Defendants have noticed both the Court and Plaintiff of their intention to amend their Answer and Counterclaims, primarily to incorporate new evidence supporting civil RICO claims.   Pursuant to CR 15.01, which states that, "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served," Defendants should be allowed to amend their pleading before dismissing any counterclaims. Since a motion to dismiss is not considered a responsive pleading, CR 15.01 should still apply. *Kentucky Lake Vacation Land, Inc. v. State Prop. And Bldgs. Comm'n*, 333 S.W.2d 779, 781 (Ky. 1960).

**B.   TROY GUINN IS A *DE FACTO* OWNER OF INNOVATIVE HEALTH CARE SOLUTIONS, LLC**

Defendants simply cannot address this litigation without referring to Troy Guinn ("Guinn") as a *de facto* owner of IHCS. While Robin Campbell ("Campbell") is noted on paper as the owner of IHCS, Ms. Brannon has direct knowledge that contradicts Plaintiff's notion that Guinn is a mere "former employee." Aside from some procedural instructions, (*e.g.*, Campbell's instruction on when to add a client's name to the database) Guinn typically exercised managerial and operational control of IHCS.  Further, Campbell's instructions were frequently overruled by Guinn, who on numerous occasions stated orally and in text messages directly to Ms. Brannon that he, not Campbell, was the CEO and the individual in charge of IHCS. Also, the use of "former" to denote a past relationship between Guinn and IHCS is intentionally deceptive. On information and belief,

3

Guinn's managerial and operational control over IHCS continues to this day. In fact, IHCS's Independent Contractor Agreement with Magnolia was terminated through Guinn's personal attorney, Mike McClain.

Guinn's operational and managerial control over IHCS is such that he was and remains in control of the enterprise. As it pertains to Defendants' intended civil RICO claim, in *Reves v. Ernst & Young*, the U.S. Supreme Court held that, under 18 U.S.C. § 1962(c), participation in the conduct of an enterprise requires an element of direction over the affairs of the enterprise. Formal control or responsibility, that is, whose name appears on the paper, is not required. The test is whether an individual exercised sufficient "managerial or operational control" for liability to be factual. 507 U.S. 170, 1170 (1993). Per Guinn's declaration that he, not Campbell, was the CEO and individual in charge, and that Guinn overruled Campbell during conflicts in instructions, that Guinn's attorney and not Campbell's began this pursuit against Defendants, and that Guinn maintains sufficient managerial and operational control of IHCS per § 1962(c), renders Guinn a *de facto* owner of IHCS. As such, it would be impossible for Defendants to state the facts of this case without addressing Guinn's conduct and role.

On May 19, 2016, Defendants refiled their current Answer, Defenses and Counterclaim ("Defendants' Answer") with an Alias Summons in an attempt to serve Guinn, who apparently failed to respond to the certified mail notice issued by the Jefferson County Clerk's Office. Guinn's personal attorney, Mike McClain, has stated that he is not authorized to receive service, either. The May 19 Alias Summons was submitted to the Jefferson County Sheriff's Department. The process will be repeated for the Amended Answer and Counterclaims.

4

C.   **DEFENDANTS' COUNTERCLAIMS ARE SUFFICIENTLY PLEADED AS A MATTER OF LAW**

    1.   **Ms. Brannon and Magnolia have sufficiently stated a claim for breach of contract against IHCS in Count I.**

Defendants' claim for a breach of contract in Count I is sufficiently pleaded as a matter of law. For one, Defendants argue that the Agreements are not enforceable, because the Agreements use language that contradicts established labor laws in the State of Kentucky, such as KRS 342.050, which prohibits contracts and agreements intended to relieve employers of their obligations. *Ratliff v. Redmon*, 396 S.W.2d 320, 323 (Ky.App. 1965) (Regards the Workmen's Compensation Act, but would still generally apply to Kentucky statutes). Defendants have pleaded that "Ms. Brannon was actually an employee of IHCS, and was misclassified as an independent contractor." (Defendants' Answer, ¶ 67, Page 13).

Secondly, the State of Kentucky protects the rights of employees in regard to commissions, vested commissions, and vested interest in commissions, even after the termination of the employee. KRS 337.010(1)(c); *Barnes, et al. v. Indian Refining Co., et al.*, 134 S.W.2d 620 (Ky.App. 1939); *Friction Materials Co., Inc. v. Stinson*, 833 S.W.2d 388 (Ky.App. 1992). The Commonwealth liberally interprets the scope of the employee relationship and greatly limits the scope of the independent contractor relationship. *Ratliff*, 329 S.W.2d at 324.

Ms. Brannon was IHCS's employee prior to signing the agreements. Guinn and Campbell exercised absolute operational and managerial control over Ms. Brannon's work at IHCS. Ms. Brannon worked out of the IHCS office until IHCS relocated their office to her home's basement. After that, Ms. Brannon worked out of the IHCS office's new location on La Grange Road. Ms. Brannon received a bimonthly salary as well as commission payments for devices sold. Ms. Brannon believed upon her hire that she would always be an employee of IHCS, but was compelled to enter into the independent contractor agreement through vague promises and false

5

guarantees. This agreement did not stop her services as an employee; rather it added commissions for devices sold in addition to her duties as an employee.

   2.     **Ms. Brannon and Magnolia have sufficiently stated a claim for tortious interference against IHCS, Guinn, and Campbell in Count II.**

Defendants counterclaim that Plaintiff breached the contract and implied covenant of good faith and fair dealing by withholding commissions. In addition, Guinn and/or Campbell directly contacted Magnolia's subcontractor, Greg Williams ("Williams"), without Ms. Brannon's knowledge or permission, and provided him with false information bolstering Plaintiff's fabricated controversy, information that negatively impacted the business relationship between Defendants and Williams. By withholding the commissions owed, which served as the means of paying Williams, and by "poisoning the well," Defendants were constructively forced to breach the Williams-Magnolia Agreement, and are still actively working to resolve this breach at great expense and financial injury, as well as overall reputational harm, directly caused by Plaintiff's breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference.

In addressing the requisites for stating a claim for tortious interference, Campbell, and Guinn acting as *de facto* owner of IHCS, instructed Ms. Brannon to hire Williams with specific objectives, and provided Ms. Brannon with the contractual language to use. So Guinn and Campbell were (1) aware of the existence of the Williams-Magnolia Agreement, (2) as well as its contents. Being fully aware of Ms. Brannon's contractual commitments to Williams, Guinn and Campbell (3) purposely and maliciously interfered with those commitments by withholding commissions owed and by directly contacting Williams to poison the well, the latter of whom later disclosed the conversation to Ms. Brannon. This conduct by Guinn and Campbell, with Guinn acting as Plaintiff IHCS's *de facto* owner, (4) forced Defendants to breach the Williams-Magnolia

Agreement, which consequentially (5) caused expense and financial injury to Defendants. Guinn and Campbell (6) had no privilege or justification for this conduct. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6, 2012 Ky. App. LEXIS 67, *12, 2012 WL 1370878 (Ky.Ct.App. 2012); *Demoisey v. Ostermiller*, 2016 Ky. App. LEXIS 71, *23-26 (Ky.Ct.App. May 6, 20126).

The conduct was malicious, because Plaintiff was retaliating against Defendants for a non-existent breach of confidentiality, as if Defendants had disclosed confidential information to Plaintiff's opponents in the other cases cited, the case styled as *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016) ("Bankruptcy Case") and the case styled as *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573 ("Century Case") (see Defendants' Answer, ¶ 78, p. 15). This malice gives Defendants a remedy of law to seek recovery. *National Collegiate Athletic Assoc. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988).    Counterclaim Defendants Guinn, Campbell, and IHCS are liable for tortious interference by wrongfully interfering with the Williams-Magnolia Agreement. *Carmichael-Lynch-Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc.*, 561 S.W.2d 99, 102 (Ky. App. 1977).

Upon information and belief, Guinn is still in contact with Greg Williams directly, without permission of Magnolia, and is still actively poisoning the well.  Guinn has compelled Williams, per Williams' response to Defense Counsel's initial investigation, into not cooperating with Defendants, using the threats of litigation similar to the current litigation before this Court.  It is not known, pending a deposition of Williams, if he is still involved in selling NSS devices, or for that matter still has any working relationship with IHCS. Defendants intend to depose Williams, if possible, as part of their discovery process.

**3.    Ms. Brannon and Magnolia have properly stated a claim for a Declaration of Rights against IHCS in Count III.**

This controversy has injured Ms. Brannon and Magnolia, who are having to turn away business clients seeking her services unrelated to IHCS, just because IHCS alleges they are "associated" with them. A declaration of rights would divorce such clientele from the agreements at issue and allow Ms. Brannon and Magnolia to resume services unrelated to NSS devices to such clients, and resume earning money to make a living. "An 'actual controversy' is not one which involves a question which is academic or hypothetical or which calls for nothing more than an advisory opinion....Rather, it is a controversy over present rights, duties, and liabilities." *Rosenbalm v. Commerical Bank of Middlesboro*, 838 S.W.2d 423, 427-428 (Ky.App. 1992) (citing *Bischoff v. City of Newport,* 733 S.W.2d 762, 763-764 (Ky.App. 1987). "A declaratory judgment should not address merely a 'present controversy,' but a 'justiciable controversy.'" *Id.* (citing *Dravo v. Liberty Nat'l Bank & Trust Co., Ky.*, 267 S.W.2d 95, 97 (1954).

A justiciable controversy is one of a pecuniary nature, for which a declaration of Defendants' rights would address. *Id.* (citing *Cooper v. Kentuckian Citizen, Ky.*, 258 S.W.2d 695, 696 (1953); and also *Doremus v. Board of Education*, 342 U.S. 429, 433-435 (1952)). Contrary to Plaintiff's argument in its Motion to Dismiss (page 8), a declaration of rights would resolve the non-competition portion of the controversy and focus the rest of the dispute onto the non-solicitation portion.

## IV.    CONCLUSION

Pursuant to CR 6.02(b) and CR 15.01, Defendants have moved the Court for leave to file their Amended Answer and Counterclaims on June 7, 2016. Defendants request that the Court deny Plaintiff's Motion to Dismiss the Counterclaims as premature, and allow the amendment process to take precedence. Or in the alternative, deny Plaintiff's request as a matter of law based

on Defendants' current well-pleaded counterclaims. Accordingly, the Plaintiff's Motion to Dismiss should be **DENIED**.

Respectfully submitted this 27th day of May, 2016.


*/s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants, Kristen*
*Brannon and Magnolia Health*
*Solutions, LLC*

9

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on May 27, 2016, I electronically filed the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care
Solutions, LLC and Robin Campbell*

Troy Guinn
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

 

 

 

 

           */s/ Nolia G. Batey*
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com

*Counsel for Defendants/
Counterclaim Plaintiffs*

10

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                    DEFENDANTS

\* \* \* \* \*

## <u>ORDER DENYING PLAINTIFF'S MOTION TO DISMISS</u>

This matter, coming to be heard on Plaintiff's Motion to Dismiss, the parties having been

heard, and the Court being fully and sufficiently advised,

IT IS HEREBY ORDERED and ADJUDGED that the motion is **DENIED**.

SO ORDERED, this _____ day of _____, 2016.

_____
Judge, Jefferson Circuit Court

Tendered by:

_/s/ Nolia G. Batey_____
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants/Counterclaim Plaintiffs*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435



*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

\* \* \* \* \*

## DEFENDANTS' RESPONSE IN OPPOSITION TO CAMPBELL'S MOTION TO DISMISS

 Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions,
LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or
"Counterclaim Plaintiffs"), and for their Response in Opposition to Counterclaim Defendant Robin
Campbell's ("Campbell" or "Counterclaim Defendant") Motion to Dismiss, by and through
undersigned counsel, state the following:

## I. INTRODUCTION

 Ms. Brannon and Magnolia hereby request this Court deny Campbell's Motion to Dismiss
on the grounds that a motion to dismiss at this juncture is premature, and that the amendment
process, for which Defendants intend to amend their Answer and Counterclaims, should take
precedence.  Upon filing the amended Answer and Counterclaims, Campbell will be allotted the
time to respond per Kentucky Rules of Civil Procedure, and thus will not be unfairly prejudiced.
In the alternative, Campbell's Motion to Dismiss should be denied as a matter of law as the
Defendants' current counterclaims were sufficiently and properly pleaded as to justify Campbell's
involvement in her individual capacity.

1

In Its Verified Complaint, Plaintiff alleges that Defendants breached signed agreements ("Non-Disclosure Agreement" or "First Agreement"; and "Independent Contractor Agreement" or "Second Agreement") and violated the non-competition and non-solicitation clauses of those agreements, and as such, asks the Court to "[t]emporarily and permanently restrain and enjoin Defendants from violating the terms of the First Agreement and the Second Agreement" (Complaint, ¶1, p.12).

Defendants counterclaim that Plaintiff breached the Second Agreement, as well as the covenant of good faith and fair dealing, and has and continues to commit tortious interference in regard to Magnolia's independent contractor. Plaintiff IHCS, Campbell, and Guinn are currently in arrears for outstanding commissions and payments.

## II.    **STANDARD OF REVIEW**

In the Commonwealth, Court Rule 12.02 governs motions to dismiss. "Under CR 12.02 a court should not dismiss for failure to state a claim unless the pleading party appears not to be entitled to relief under any state of facts which could be proved in support of his claim." *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594 (Ky. App. 2011) (citing *Weller v. McCauley*, 383 S.W.2d 356, 357 (Ky. 1964) (citation omitted)). "In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *Id.* (citing *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002)). "It is not necessary to state a claim with technical precision under this rule, as long as a complaint gives a defendant fair notice and identifies the claim." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky, 2005); see also *Morris v. Cabinet for Families and Children*, 69 S.W.3d 73, 74 (Ky. 2002). The complaint should set out facts or conclusions

2

sufficient to identify the basis of the claim. *Natural Res. And Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989).

## III.   ARGUMENT AND AUTHORITIES

### A.   DEFENDANTS INTEND TO AMEND THEIR ANSWER AND COUNTERCLAIMS PURSUANT TO CR 15.01

Pursuant to CR 6.02(b) and CR 15.01, Defendants moved the Court for leave to file their Amended Answer and Counterclaims, with the intent of filing said pleading on June 7, 2016. Defendants have noticed both the Court and Plaintiff of their intention to amend their Answer and Counterclaims, primarily to incorporate new evidence supporting civil RICO claims. Pursuant to CR 15.01, which states that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served," thus Defendants should be allowed to amend their pleading before dismissing any counterclaims. Since a motion to dismiss is not considered a responsive pleading, CR 15.01 should still apply. *Kentucky Lake Vacation Land, Inc. v. State Prop. And Bldgs. Comm'n*, 333 S.W.2d 779, 781 (Ky. 1960).

### B.   CAMPBELL SHOULD NOT BE DISMISSED IN HER INDIVIDUAL CAPACITY BECAUSE IHCS WAS NOT A SEPARATE AND DISTINCT ENTITY FROM HER PERSON

Plaintiff accurately quotes KRS 275.150, which states:

> [N]o member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any manner, in this or any other state, or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise. KRS 275.150.

This statutory protection from liability, however, is not absolute. "Piercing the corporate veil is an equitable doctrine invoked by the courts to allow a creditor recourse against the shareholders of a corporation." *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360

3

S.W.3d 152, 155 (Ky. 2012). The Court of Appeals of Kentucky found that there "is no legal basis why this equitable doctrine should not also be applicable to LLCs." *Mountain Paving & Construction, LLC v. Workman*, 2012-CA-001822-MR (Ky.App. January 24, 2014) (unpublished; citing *Inter-Tel Technologies*). As such, the *Workman* Court looked for two elements in determining the success of a veil-piercing claim: 1) whether individuals being held liable exercised such dominion over the corporation so that no real separation exists, and 2) that a "continued recognition of the corporation as a separate entity would sanction a fraud or promote injustice." *Inter-Tel Technologies*, 360 S.W.3d at 155.

**1.     Campbell and Guinn exercised dominion and control over their LLCs, including IHCS, such that there is and was no true separation**

As part of their pursuit in Civil RICO claims, Defendants intend to demonstrate that Plaintiff IHCS's owners, Guinn and Campbell, relied upon a tax-evasion scheme, in which they would create and dissolve multiple LLCs for the purpose of transferring and commingling assets to evade creditors, including the U.S. Internal Revenue Service. Defendants argue that they are entitled and will prove a civil RICO claim.

In support of this claim, Defendants will pursue discovery intended to expose these shell companies as part of, *inter alia*, a tax-evasion scheme. Out of this conduct, Guinn and Campbell strive to both retaliate against Defendants for a non-existent breach of confidentiality in regard to the Bankruptcy and Century cases, to learn via the deposition of Ms. Brannon what information was allegedly disclosed to the opposing counsels in the Bankruptcy and Century cases, and obstruct Defendants from complying with the federal authorities currently investigating Guinn and Campbell for both tax evasion and bankruptcy fraud.

**2.      Troy Guinn and Robin Campbell commingled LLC and personal assets**

In addition, Defendants intend to prove that Guinn and Campbell commingled corporate and personal assets, and that, as part of the civil RICO claim, disguised much of their personal wealth as LLC assets. Plaintiff IHCS is but one of many LLCs designed for this purpose, along with the other LLC mentioned in the current action before this Court, Integrity Health Care Solutions, LLC (Defendants' Answer, ¶ 76, p.14) (both Innovative Health Care Solutions, LLC and Integrity Health Care Solutions, LLC bear the deceptively similar acronym IHCS). This commingling of personal and corporate assets provides Defendants with a cause to pierce the corporate veil and pursue liability claims against IHCS's owners, Guinn and Campbell.

**C.      *PANNELL v. SHANNON* DOES NOT APPLY TO CURRENT ACTION**

Aside from failing to apply its own standard of law to suing Ms. Brannon in her individual capacity alongside Magnolia Health Solutions, LLC, Plaintiff wrongly applies the *Pannell* standard to its cause. In *Pannell v. Shannon*, 425 S.W.3d 58 (Ky. 2014), the Supreme Court of Kentucky did not need to pierce the corporate veil. It affirmed the Court of Appeals decision to affirm the Fayette Circuit Court's absolving Defendant Shannon from any individual liability. Their decision is correct because she signed a lease agreement in her capacity as a member of an LLC, so that the LLC was the tenant and not her individually. As far as can be determined from the case review, Defendant Shannon did not commingle her personal assets with the LLC and maintained a separation between her person and the LLC. Thus, her activities were not a perpetration of a fraud or injustice, but a mere dispute over a business arrangement. *Pannell* is simply not analogous to the current action.

On the other hand, Campbell, alongside Guinn as a *de facto* owner of IHCS, perpetrated a fraud and injustice, evident when issuing a tax form 1099 to Ms. Brannon via Integrity Health Care Solutions LLC, instead of Innovative Health Care Solutions LLC (see Exhibit 1). In addition, the

5

1099 was issued to Ms. Brannon and not Magnolia, and underreported Ms. Brannon's "Nonemployee compensation" by approximately $50,000. This is further evidence of Guinn and Campbell's commingling of assets as part of a tax-evasion scheme. Defendants argue that IHCS's corporate veil can and should be easily pierced.

## IV.   CONCLUSION

While Defendants acknowledge that the Court is not obligated to make a factual determination at this stage of litigation, Defendants do argue that dismissing their claims against Robin Campbell in her individual capacity would go toward sanctioning a fraud and promoting an injustice. Defendants intend to pursue a counteraction to be part of their Amended Answer and Counterclaims that will pierce the corporate veil and expose both Guinn and Campbell's liability in the case *sub judice*. Accordingly, Counterclaim Defendant Robin Campbell's Motion to Dismiss should be **DENIED**.

Respectfully submitted this 2nd day of June, 2016.

> /s/ Nolia G. Batey
> Nolia G. Batey
> BATEY LAW OFFICE, PLLC
> 130 Fairfax Avenue, Suite LL-B
> Louisville, KY 40207
> P: (502) 509-9407
> F: (502) 470-3634
> nbatey@bateylawoffice.com
> *Counsel for Defendants,*
> *Counterclaim Plaintiffs*

6

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on June 2, 2016, I electronically filed the foregoing DEFENDANTS' OPPOSITION TO ROBIN CAMPBELL'S MOTION TO DISMISS with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care*
*Solutions, LLC and Robin Campbell*

Troy Guinn
3011 Long Creek Way
Louisville, Kentucky 40245
*Counterclaim Defendant*

　　　 */s/ Nolia G. Batey*　　　　　
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants/*
*Counterclaim Plaintiffs*

7

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| INTEGRITY HEALTH CARE SOLUTIONS LLC<br>3011 LONG CREEK WAY<br>LOUISVILLE, KY 40245 | $<br>2 Royalties<br>$ | **2015**<br>Form **1099-MISC** | |
| | 3 Other income<br>$ | 4 Federal income tax withheld<br>$ | **Copy B**<br>**For Recipient** |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments |
| Redacted  8291 | Redacted  5982 | $ | $ |
| RECIPIENT'S name, address, ZIP/postal code & country<br><br>KRISTEN BRANNON<br><br>P O BOX 436611<br><br>LOUISVILLE, KY 40253 | 7 Nonemployee compensation<br><br>$        7400.00 | 8 Substitute payments in lieu of dividends or interest<br>$ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds<br>$ | |
| | 11 | 12 | |
| Account number (see instructions)<br><br>4 | FATCA filing requirement<br>☐ | 13 Excess golden parachute payments<br>$ | 14 Gross proceeds paid to an attorney<br>$ | |
| 15a Section 409A deferrals<br>$ | 15b Section 409A income<br>$ | 16 State tax withheld<br>$<br>$ | 17 State/Payer's state no. | 18 State income<br>$<br>$ |

Form **1099-MISC**      (keep for your records)          Department of the Treasury - Internal Revenue Service    38-2099603

Exhibit 1

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
CASE NO. 16-CI-001435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON, and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

* * * * *

## ORDER DENYING PLAINTIFF'S MOTION TO DISMISS

This matter, coming to be heard on Robin Campbell's Motion to Dismiss, the parties

having been heard, and the Court being fully and sufficiently advised,

IT IS HEREBY ORDERED and ADJUDGED that the motion is **DENIED**.

SO ORDERED, this _____ day of _____, 2016.

_____
Judge, Jefferson Circuit Court

Tendered by:

_/s/ Nolia G. Batey_____
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
*Counsel for Defendants/Counterclaim Plaintiffs*

COMMONWEALTH OF KENTUCKY
JEFFERSON CIRCUIT COURT
DIVISION 1
CASE NO. 16-CI-01435

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.

KRISTEN BRANNON and
MAGNOLIA HEALTH SOLUTIONS, LLC                          DEFENDANTS

\* \* \* \* \* \* \*

### INNOVATIVE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF BRANNON AND MAGNOLIA

Innovative Health Care Solutions, LLC ("Innovative"), by counsel, for its reply in support of its motion to dismiss counterclaims of Kristen Brannon ("Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively, "Defendants"), states as follows.

Defendants' response to Innovative's motion to dismiss their counterclaims fails to address the actual grounds for Innovative's motion to dismiss. Rather, Defendants counter Innovative's motion with a series of unrelated and irrelevant arguments and bolster claims that have not been previously asserted.

First, Defendants inform the Court that they intend to amend their counterclaims. (Defs. Resp. at 3.) This, as yet unrealized, intention is not a ground to deny Innovative's motion to dismiss. Defendants also call Innovative's motion to dismiss "premature." (*Id.* at 1.) On the contrary, under Civil Rule 12.02, the motion is timely.

Defendants next argue that "Troy Guinn is a *de facto* owner of Innovative Health Care Solutions, LLC." (*Id.* at 3.) Again, this argument is completely irrelevant to Innovative's motion to dismiss Defendants' counterclaims. Innovative's motion to dismiss focuses squarely on addressing Defendants' counterclaims *with respect to Innovative*. Defendants' asserted claims against Troy Guinn—or their difficulty in serving him with process—have no bearing on the substance of the motion before the Court.

Defendants' remaining arguments purport to address Innovative's motion, by stating that each of Defendants' three claims was, indeed, sufficiently pleaded. However, Defendants still fail to address the arguments made in Innovative's motion to dismiss their counterclaims.

In support of their Count I breach of contract claim, Defendants argue that "the Agreements [at issue] are not enforceable" and that "Ms. Brannon was actually an employee of IHCS, and was misclassified as an independent contractor." (Defs. Resp. at 5.) Defendants go on to state that "Kentucky protects the rights of employees in regard to commissions, vested commissions, and vested interest in commissions, even after the termination of the employee" (*id.*), citing KRS § 337.010, which includes "commissions" within the definition of "wages" under Kentucky employment law. However, Defendants fail to address the underlying issue raised in Innovative's motion to dismiss—the commissions sought were never earned under the plain language of the contract.

2

In Count I, Defendants seek commissions for "orders submitted prior to termination of the Independent Contractor Agreement." (Defs. Answer and Counterclaims ¶ 82) (emphasis added). As explained in Innovative's motion to dismiss, commissions under the Independent Contractor Agreement are due only after orders are paid in full, not for "submitted" orders. Even assuming, *arguendo*, that Brannon should have been treated as an employee, the law does not require payment on commissions which were not earned during the period of employment. Defendants do not rebut or dispute the meaning of the contract language upon which Innovative relies.

In support of their tortious interference claim in Count II, Defendants allege a host of entirely new facts not pleaded in their counterclaims. Whereas Count II of Defendants' counterclaims alleges simply that Innovative "interfered with Ms. Brannon and Magnolia's ability to perform under the Williams Agreement by wrongfully withholding commissions owed," (Defs. Answer and Counterclaims ¶ 86), Defendants' response newly alleges that Guinn and Campbell had unspecified contact and/or conversations with Greg Williams, supposedly "poisoning the well," and that such contact occurred "without permission of Magnolia." (Defs. Resp. at 6-7.) Defendants also newly allege that the commissions sought were withheld for the purpose of retaliation and with malice. (*Id.*) Innovative cannot respond to these vague factual allegations, which were not pleaded in Defendants' counterclaims, other than to reiterate that the commissions withheld were never earned by Magnolia under the plain language of the Independent Contractor Agreement—a fact which remains unaddressed.

In support of Count III of Defendants' counterclaims, Defendants state that, "[t]his controversy has injured Ms. Brannon and Magnolia, who are having to turn away business clients seeking her services unrelated to IHCS, just because IHCS alleges they are 'associated' with them." (Defs. Resp. at 8.) Defendants go on to state that, "[a] declaration of rights would divorce such clientele from the agreements at issue and allow Ms. Brannon and Magnolia to resume services unrelated to NSS devices to such clients, and resume earning money to make a living." (*Id.*) Defendants seem to be arguing that they are turning down business which they believe is not barred by the restrictive covenants in the Agreements. Defendants' request for an order of this Court stating that Innovative does not "possess any right to interfere with Magnolia's business activities" which are "unrelated to those previously performed for [Innovative]," (Defs. Answer and Counterclaims ¶ 90), is vague and has no basis in the contractual language of the Agreements at issue. On the other hand, Plaintiff has already raised the pertinent contract issues in its breach of contract claim, which seeks to prohibit Defendants from violating the restrictive covenants in the Agreements. As stated in Innovative's motion to dismiss, Innovative does not have any interest in preventing Magnolia from engaging in business activities "unrelated to those previously performed for [Innovative]" except to the extent that those activities would otherwise violate the Agreements at issue here. Count III of Defendants' counterclaims fails to raise a justiciable controversy, as Defendants seek the Court's declaratory ruling without any legal basis. To date, Defendants have failed to clearly articulate a controversy that would allow this Court to make a coherent declaratory ruling.

For all of the foregoing reasons, Defendants counterclaims should be dismissed.

Respectfully Submitted,

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky  40202
Phone: (502) 540-2300
Fax: (502) 585-2207
kenyon.meye@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Plaintiff, Innovative
Health Care Solutions, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via email and U.S. Mail, this 6th day of June, 2016, upon:

Nolia G. Batey
Batey Law Office PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY  40207
nbatey@bateylawoffice.com

*Counsel for Plaintiff*

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)
JUDGE BARRY WILLETT
CASE NO. 16-CI-001435

*ELECTRONICALLY FILED*

INNOVATIVE HEALTH CARE SOLUTIONS, LLC                    PLAINTIFF

v.          **FIRST AMENDED ANSWER, DEFENSES, AND**
            **COUNTERCLAIMS DEMANDING JURY TRIAL**

KRISTEN BRANNON, and                                     DEFENDANTS
MAGNOLIA HEALTH SOLUTIONS, LLC

**AND**

KRISTEN BRANNON, and                         COUNTERCLAIM PLAINTIFFS
MAGNOLIA HEALTH SOLUTIONS, LLC

v.

INNOVATIVE HEALTH CARE SOLUTIONS, LLC        COUNTERCLAIM DEFENDANTS
3011 Long Creek Way
Louisville, Kentucky 40245

      SERVE:    Kentucky Secretary of State
                        Summonses Branch
                        700 Capital Avenue, Suite 86
                        Frankfort, Kentucky 40601

and

ROBIN CAMPBELL
3011 Long Creek Way
Louisville, Kentucky 40245

      SERVE:    Robin Campbell
                        3011 Long Creek Way
                        Louisville, Kentucky 40245

and

TROY A. GUINN
3011 Long Creek Way

Louisville, Kentucky 40245

      SERVE:     Troy A. Guinn
                   3011 Long Creek Way
                   Louisville, Kentucky 40245

* * * * *

Come now Defendants Kristen Brannon ("Ms. Brannon") and Magnolia Health Solutions, LLC ("Magnolia") (collectively referred to as "Defendants" or "Ms. Brannon and Magnolia" or "Counterclaim Plaintiffs"), and for their Answer to Plaintiff's Complaint, defenses, and counterclaims against Innovative Health Care Solutions, LLC ("IHCS" or "Plaintiff" or "Innovative"), Robin Campbell ("Campbell"), and Troy Guinn ("Guinn") (collectively referred to as "Counterclaim Defendants") by and through undersigned counsel, state the following:

<strong>ANSWER</strong>

<strong>Nature of the Action</strong>

1.    Ms. Brannon and Magnolia deny that Ms. Brannon has violated or attempted to violate the confidentiality, non-disclosure, non-competition, and non-solicitation clauses of the Agreements with Innovative, as alleged in paragraph 1.

<strong>Parties</strong>

2.    Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the truthfulness of the statements in paragraph 2. The first Agreement to which Plaintiff's Complaint refers, the June 19, 2015 Non-Disclosure and Confidentiality Agreement (the "First Agreement") lists IHCS as an Ohio limited liability company. (See Exhibit 1). However, the second Agreement to which Plaintiff's Complaint refers, the November 16, 2015 Independent Contractor Agreement, (the "Second Agreement") lists IHCS as a Kentucky limited liability

2

company. (See Exhibit 2).  Both the Ohio and Kentucky Secretaries of State reflect business filings for this entity.  Ms. Brannon and Magnolia must therefore deny the allegations in paragraph 2.

3.    Ms. Brannon and Magnolia deny the allegations in paragraph 3. Ms. Brannon is a Kentucky resident residing at 12409 Wynmeade Place, Louisville, Kentucky 40223.

4.    Ms. Brannon and Magnolia deny the allegations in paragraph 4 to the extent they refer to Magnolia as a corporation.  Magnolia is a Kentucky limited liability company with its principal place of business in Jefferson County, Kentucky.  Ms. Brannon and Magnolia admit that Ms. Brannon is the organizer, registered agent, and sole member of Magnolia.

### Jurisdiction and Venue

5.    The allegations in paragraph 5 of the Complaint state a legal conclusion to which no response is required; however, to the extent a response is required, Ms. Brannon and Magnolia deny that Plaintiff is entitled to any award of damages from Ms. Brannon or Magnolia.

### Facts

6.    Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny the complete extent or specializations of Plaintiff's business practices.  Ms. Brannon and Magnolia admit that Plaintiff has marketed and sold NSS devices.

7.    Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny the entirety of Plaintiff's clientele.  Ms. Brannon and Magnolia further lack knowledge or information sufficient to admit or deny the intents and purposes of its relationship with its employees/independent contractors.

8.    In response to the allegations in paragraph 8, Ms. Brannon and Magnolia lack knowledge or information sufficient to admit or deny exactly what is provided to all of Plaintiff's contractors, and thus must deny the same.  Ms. Brannon and Magnolia further lack knowledge or

information sufficient to admit or deny the exact extent of confidential and proprietary information provided to all of Plaintiff's contractors, and thus must deny the same.

9.      On information and belief, Ms. Brannon and Magnolia admit that Plaintiff has, in the past, conducted repeat business with some of its clients.  However, Ms. Brannon and Magnolia lack knowledge or information sufficient to form a belief as to truthfulness or accuracy of the remaining allegations in paragraph 9, and therefore must deny the same.

10.      Ms. Brannon and Magnolia lack knowledge or information to admit or deny Plaintiff's practices with all of its contractors or Plaintiff's intents or purposes regarding its agreements.  Ms. Brannon and Magnolia must therefore deny the allegations in paragraph 10.

11.      In response to the allegations in paragraph 11, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the full extent of Plaintiff's contractor requirements or purposes behind its agreements, and Ms. Brannon and Magnolia must therefore deny the same.

12.      On information and belief, Ms. Brannon and Magnolia admit the allegation in paragraph 12 of the Complaint to the extent that Robin Campbell ("Campbell") managed a medical clinic prior to March 2015. Ms. Brannon and Magnolia would clarify that Troy Guinn ("Guinn") assisted Ms. Campbell and acted in the capacity of a business partner.  On information and belief, Ms. Brannon and Magnolia deny that Campbell recommended that the clinic physician hire her; Campbell's partner Guinn initially asked Ms. Brannon if she would leave her then full-time job and assist in getting the clinic set up.  Guinn noted that he would ensure the billing contract would be given to Ms. Brannon once clinic setup was complete. Ms. Brannon and Magnolia further deny that these billing activities were unrelated to IHCS, as payments came from that company.

13.    On information and belief, Ms. Brannon and Magnolia admit that the medical clinic's physician separated from the clinic in March, 2015.  Ms. Brannon and Magnolia deny the remaining allegations of paragraph 13.

14.    Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the truth of the allegation in paragraph 14, and must therefore deny the same.

15.    Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the accuracy of Campbell's stated intentions in paragraph 15, and must therefore deny the same.  Ms. Brannon and Magnolia would again clarify that they were retained by Guinn.

16.    Ms. Brannon and Magnolia deny the allegations in paragraph 16.  Campbell's partner, Guinn, insisted that Ms. Brannon create an LLC (Magnolia) through which Plaintiff would pay her.

17.    In response to the allegations in paragraph 17, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the exact timing of Plaintiff's NSS business practices.  Ms. Brannon and Magnolia deny the allegations regarding the extent of her role and what she was paid.  Ms. Brannon and Magnolia clarify that Ms. Brannon was paid a salary of $1,850.00 every two weeks and performed all assigned duties at the IHCS office until December 31, 2015.  Ms. Brannon and Magnolia admit to performing nominal research at Mr. Guinn and Ms. Campbell's request.

18.    In response to the allegations in paragraph 18, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to the timing of Plaintiff's sale of NSS products to clients or related billing services.  Ms. Brannon and Magnolia admit that an agreement was signed on June 19, 2015 and believe that the Agreement speaks for itself.

19.     In response to the allegations in paragraph 19, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

20.     In response to the allegations in paragraph 20, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

21.     In response to the allegations in paragraph 21, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

22.     In response to the allegations in paragraph 22, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

23.     In response to the allegations in paragraph 23, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

24.     In response to the allegations in paragraph 24, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

25.     In response to the allegations in paragraph 25 of the Complaint, Ms. Brannon and Magnolia are without sufficient knowledge or information to form a belief as to what would constitute "full operations." Ms. Brannon and Magnolia admit the allegations to the extent that Ms. Brannon performed NSS billing for Plaintiff's clients.

26.     Ms. Brannon and Magnolia would clarify the allegations in paragraph 26 to the extent that Magnolia sold Plaintiff's products to clients, directly or indirectly, through subcontractors.

27.     In response to the allegations in paragraph 27, Ms. Brannon and Magnolia admit to signing an Agreement on November 16, 2015. Ms. Brannon and Magnolia state that the Agreement speaks for itself and thus deny any additional characterization of its terms.

28.     In response to the allegations in paragraph 28, Ms. Brannon and Magnolia admit to providing billing services and other administrative services for a salary of $1,850 every two weeks ($3,700.00 per month) until January, 2016.  Ms. Brannon and Magnolia also admit to engaging subcontractor Greg Williams ("Williams") but would clarify that this occurred because Guinn asked Ms. Brannon to place Williams under Magnolia as a subcontractor.  On information and belief, Williams originally contracted directly with IHCS.

29.     In response to the allegations in paragraph 29, Ms. Brannon and Magnolia state that the Agreement speaks for itself, and thus deny any additional characterization of its terms.

30.     Ms. Brannon and Magnolia admit the allegations in paragraph 30 to the extent that Ms. Brannon took on additional responsibilities in December, 2015.  Ms. Brannon and Magnolia admit to receiving $2,500 every two weeks ($5,000.00 per month) for billing and administrative services beginning in January, 2016.

31.     On information and belief, Ms. Brannon and Magnolia admit the allegations in paragraph 31 to the extent that Ms. Brannon performed a broad range of functions for Plaintiff, she was a central part of Plaintiff's operations, and that she, at times, had access to otherwise confidential information.

32.     Ms. Brannon and Magnolia admit the allegations in paragraph 32.

33.     Ms. Brannon and Magnolia admit the allegations in paragraph 33 to the extent that she was exposed to a substantial amount of information.  Ms. Brannon and Magnolia, however, deny the allegations to the extent that they suggest she retained any information or could recall it now – over a month after separation.

34.     Ms. Brannon and Magnolia deny the allegations in paragraph 34.

35.     In response to the allegations in paragraph 35, Ms. Brannon and Magnolia admit that Ms. Brannon provided billing services in January and February of 2016. Ms. Brannon ceased billing services in late February.

36.     On information and belief, Ms. Brannon and Magnolia admit the allegations contained in paragraph 36, to the extent that Heather Geary ("Geary") was separated from her employment with Plaintiff in January, 2016.

37.     On information and belief, Ms. Brannon and Magnolia admit that a text message exchange was presented at an unemployment hearing as alleged in paragraph 37. However, Ms. Brannon and Magnolia believe the text messages speak for themselves and deny any additional characterization of their terms. Ms. Brannon and Magnolia admit that the text exchange discusses a business venture, but deny the characterization that the work was similar to Ms. Brannon's work for Innovative. Ms. Brannon was referring to credentialing services. Ms. Brannon and Magnolia further deny the characterization of an on-going offer to hire IHCS's former employee. Ms. Brannon did ask Geary whether she would be interested in working with her. However, Ms. Brannon and Geary had performed personal injury account collections together previously, of which Plaintiff was aware and to which Plaintiff did not object, and thus waived any later objection thereto.

38.     In response to the allegations in paragraph 38, Ms. Brannon and Magnolia are without sufficient information or knowledge to confirm or deny the allegations without more specific details. Ms. Brannon and Magnolia admit, however, that the alleged protocols were informal and perpetually in flux. Ms. Brannon and Magnolia further admit that Plaintiff has changed its protocols numerous times, including changing when information should be entered.

Campbell had instructed Ms. Brannon to not enter client information into Plaintiff's software, Kareo, if the clients were not going to be billed from IHCS.

39.    In response to the allegations in paragraph 39, Ms. Brannon and Magnolia are without sufficient information or knowledge to confirm or deny the allegations without more specific details. Ms. Brannon and Magnolia admit, however, that the alleged protocols and business practices were informal and perpetually in flux. Ms. Brannon and Magnolia further admit that Plaintiff has changed its protocols numerous times, including changing when information should be entered. Campbell had instructed Ms. Brannon to not enter client information into Plaintiff's software, Kareo, if the clients were not going to be billed.

40.    On information and belief, Ms. Brannon and Magnolia deny the allegations in paragraph 40 to the extent that the Plaintiff was unaware that the product forms contained Ms. Brannon's cell phone number. The order form was changed to include Ms. Brannon's number in order to avoid having the clients directly contact the distributor or manufacturer. Plaintiff notes in its own complaint that Ms. Brannon "…conducted precertification and billing processes, serviced client accounts, **served as a point person for communication with clients**, communicated on behalf of Innovative to Innovative's distributor, and engaged as a sales representative to sell Innovative's NSS products." (Defendants' emphasis in **bold underline**) (Plaintiff's Complaint, ¶31, p. 9).

41.    Ms. Brannon and Magnolia deny the allegations in paragraph 41 to the extent they reference a personal email address. Prior to obtaining an IHCSNATION.COM email address, Ms. Brannon communicated with clients on an email address Guinn and Campbell directed her to use. That email address was IHCSKB@gmail.com. On information and belief, Guinn and Campbell maintained passwords for those email addresses. Ms. Brannon admits that Guinn and

Campbell frequently emailed her on her personal email address, but Ms. Brannon denies initiating contact with clients from her personal email address. Guinn and Campbell communicated with Ms. Brannon on her IHCSNation.com email address regarding the Independent Contractor arrangement as well as her administrative and billing duties as an employee.

42.     Ms. Brannon and Magnolia deny the allegations in paragraph 42.

### Count One (Breach of Contract)

43.     The preceding paragraphs are realleged and incorporated herein by reference.

44.     Ms. Brannon and Magnolia deny allegations in paragraph 44 of the Complaint.

45.     Ms. Brannon and Magnolia deny allegations in paragraph 45 of the Complaint.

46.     Ms. Brannon and Magnolia deny allegations in paragraph 46 of the Complaint.

47.     Any allegation contained in Plaintiff's Complaint that is not expressly admitted above is hereby denied by Ms. Brannon and Magnolia.

### FIRST DEFENSE

48.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

49.     Plaintiff's claims should be barred, in whole or in part, by the doctrine of waiver, estoppel, or ratification.

### THIRD DEFENSE

50.     Plaintiff's complaint should be barred by the unclean hands doctrine.

### FOURTH DEFENSE

51.     At all relevant times, Ms. Brannon and Magnolia acted in good faith, in fair dealing, and reasonably. Plaintiff's claims should be barred, in whole or in part, by having failed to act reasonably, in good faith, and in fair dealing.

### FIFTH DEFENSE

52.     The allegations and Agreements, referenced in Plaintiff's Complaint and attached hereto as Exhibit 1 and Exhibit 2, and as part of Plaintiff's tax fraud schemes, were not supported by valid and sufficient consideration and are therefore void and/or unenforceable.

## SIXTH DEFENSE

53.     The allegations and Agreements, referenced in Plaintiff's Complaint and attached hereto as Exhibit 1 and Exhibit 2, and as part of Plaintiff's tax fraud schemes, violate Kentucky public policy and are therefore void and/or unenforceable.

## SEVENTH DEFENSE

54.     The Plaintiff's claims for damages are a result of its own negligent and/or intentional acts and/or omissions of itself for its own agents, representatives, employees and such acts and/or omissions are a complete bar to Plaintiff's right to recovery.

## EIGHTH DEFENSE

55.     Any damages that Plaintiff seeks to recover are the result of the acts and/or omissions of a third party or parties not under the control of Ms. Brannon or Magnolia and such act or omission is a complete bar to the Plaintiff's right to recover against Ms. Brannon and Magnolia or is at least a partial bar to the Plaintiff's right to recover from Ms. Brannon or Magnolia.

56.     Ms. Brannon and Magnolia reserve the right to assert all defenses, whether affirmative or otherwise, about which they currently lack sufficient information, but which may become available during the course of this litigation.

## COUNTERCLAIMS AGAINST IHCS, ROBIN CAMPBELL, TROY A. GUINN

57.     Campbell is the longtime girlfriend of Guinn and the parties live together at 3011 Long Creek Way, Louisville, KY.

58.     Ms. Brannon has known Guinn and Campbell for approximately five years. Ms. Brannon originally met Guinn and Campbell when she worked as the Director of Operations at the Louisville Pain Clinic sometime in 2011. Ms. Brannon left the Pain Clinic when it dissolved and she then pursued other administrative roles.

59.     From time to time, Ms. Brannon performed services for medical companies as a sole proprietor including *inter alia*, billing services, account collections, and credentialing services. Ms. Brannon's income from these services varied from month to month, but she typically received at least hundreds of dollars of income from these services each month.

60.     Innovative Health Care Solutions, LLC is referred to herein as the "first IHCS". The first IHCS was formed on November 5, 2014 as an Ohio Limited Liability Company. The Ohio Secretary of State's website lists Chad N. Eckhardt of Frost Brown Todd as the incorporator and registered agent.

61.     At all relevant times, Guinn exercised managerial and operational control over the first IHCS and its affairs.

62.     On March 21, 2014, Guinn filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Western District of Kentucky.

63.     In July, 2014, Ms. Brannon began working as the Operations Director for a non-medical home health company.

64.     In January, 2015 Guinn approached Ms. Brannon about leaving her position as Operations Director and working for IHCS. Guinn orally promised Ms. Brannon substantial sums of money, at least $100,000.00 annually, if she left her position as the Operations Director and worked for IHCS.

12

65.     In January, 2015 Ms. Brannon left her position as the Operations Director for the non-medical home health company in order to go to work for Guinn. Ms. Brannon did not know at that time that she would be required to sign the Non-Disclosure and Confidentiality Agreement or the Independent Contractor Agreement.

66.     Guinn knowingly misrepresented to Ms. Brannon the nature of the work IHCS would be doing, knowingly misrepresented the amount for which she would be compensated, and knowingly concealed the fraudulent nature of his joint enterprises with Campbell. Ms. Brannon relied on these misrepresentations to her detriment.

67.     In January, 2015, after Ms. Brannon left her position as Operations Director, Guinn advised her that the IHCS Accountant, Mr. Dahlgren, insisted that Ms. Brannon form a company under which she would be paid by IHCS.

68.     On February 2, 2015, Ms. Brannon formed Magnolia Health Solutions, LLC.

69.     On June 19, 2015 Ms. Brannon signed the Non-Disclosure and Confidentiality Agreement on behalf of Magnolia.

70.     Ms. Brannon was actually an employee of IHCS, and was misclassified as an independent contractor.

71.     Ms. Brannon allowed Guinn and Campbell to operate out of her home's basement from July, 2015 to October, 2015. IHCS office equipment and furniture was relocated from 213 East Broadway, Louisville, Kentucky to Ms. Brannon's Wynmeade Place home during this time.

72.     On November 10, 2015, Greg Williams signed an Independent Contractor Agreement ("Williams Agreement") (Exhibit 3) with Magnolia, under which he would receive commissions for devices sold.

73.    On November 16 2015, Ms. Brannon signed the Independent Contractor Agreement on behalf of Magnolia, under which she received commissions for devices sold.

74.    On November 25, 2015, Guinn refers to himself as the CEO of the first IHCS in a text exchange with Ms. Brannon.

75.    During her employment with IHCS, all of the computers and email accounts were protected by a single password known to Guinn and Campbell.

76.    On March 7, 2016, Guinn and Campbell's fraudulent practices and tax-evasive maneuvers became the clear subject of an action filed in the Jefferson County Circuit Court, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573, in which Century Capital Group, LLC d/b/a Auto Injury Assistance ("AIA"), alleges in its First Amended Complaint Demanding Jury Trial that Guinn and Campbell are evading a successful judgment against them by commingling assets and diverting funds between the parties and through their various companies.  Plaintiffs in this *Century Capital Group* action allege numerous fraudulent transfers between Campbell and Guinn for the purpose of delaying, hindering, or defrauding creditors. (See Exhibit 4).

77.    On March 15, 2016, Guinn's appointed Chapter 7 trustee, Wm. Stephen Reisz ("Mr. Reisz"), filed an action against Campbell alleging tax fraud and evasion schemes between Guinn and Campbell (*Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)) (See Exhibit 5).  Mr. Reisz is litigating to seize Guinn's and Campbell's assets to recover funds on behalf of Guinn's bankruptcy estate.

78.    On or about March 16, 2016, a day or so after the bankruptcy trustee's action was filed, Campbell advised Ms. Brannon to discontinue direct communications with Guinn. Campbell advised that messages to Guinn should be relayed through her and that Guinn would

respond via the same.  On information and belief, this action was taken in furtherance of the bankruptcy fraud.

79.     On or about March 18, 2016, Ms. Brannon was terminated from her position with IHCS.

80.     On March 28, 2016, Plaintiff IHCS filed the current action in Jefferson Circuit Court alleging violations of the First and Second Agreements referenced herein in ¶2.

81.     On May 6, 2016, Mr. Reisz amended his March 15, 2016 action to expand the relevant time-period to include post-petition transfers.

82.     On information and belief, the owners of IHCS, *i.e.*, the sole business representatives on behalf of the Plaintiff, Guinn and Campbell, are the subject of several ongoing federal investigations regarding their fraudulent business practices, commingling of funds, and tax evasion schemes.

83.     On information and belief, Ms. Brannon received a fraudulent 1099 for tax year 2015 from Guinn and Campbell.  This 1099 was from Integrity Health Care Solutions, LLC. Ms. Brannon never worked for this company.  This 1099 underreported Ms. Brannon's income from IHCS by approximately $50,000.00.  On April 12, 2016, Defendants and counsel met with a U.S. Internal Revenue Service agent, and as advised by the agent, submitted a form used for reporting suspected tax evasion schemes, an "Information Referral" form ("IRS Form 3949-A").

84.     On information and belief, this litigation is related to perpetrating the fraudulent tax schemes and evasion by Guinn and Campbell and an attempt to conceal information otherwise relevant to the ongoing federal investigations as well as the other pending litigations.

85.     On information and belief, Guinn and Campbell have and continue to utilize their many businesses to defraud creditors, including Ms. Brannon and Magnolia.

86.     On information and belief, Plaintiff initiated this litigation in order to embarrass, intimidate, and/or harass Ms. Brannon and Magnolia and constitutes tampering with a witness, victim, or informant as it is defined under 16 U.S.C. § 1961(1).

87.     Ms. Brannon and Magnolia are creditors of Guinn and Campbell.

88.     Ms. Brannon is a person who has sustained injury to her property or business proximately caused by Guinn and Campbell.

89.     On information and belief, Guinn and/or Campbell have directly contacted Ms. Brannon's independent contractor, Greg Williams, on multiple occasions in an effort to interfere with their contractual relationship.

90.     On information and belief, Guinn and/or Campbell were not in privity with Greg Williams at the time of that contract, and had no business reason to contact Mr. Williams, other than to interfere with Ms. Brannon's contractual relationship.

## **CLAIMS FOR RELIEF**

### **COUNT I – VIOLATION OF 18 U.S.C. § 1962(c) and (d), RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**

91.     The preceding paragraphs are realleged and incorporated herein by reference.

92.     This court has concurrent jurisdiction with federal district courts over civil RICO claims.

## A.     DESCRIPTION OF CIVIL RICO CLAIMS AND LIABLE PERSONS

93.     The preceding paragraphs are realleged and incorporated herein by reference.

94.     This claim arises under Section 1964(c) of RICO, and Ms. Brannon asserts claims for violations of Section 1962(c) and (d) of RICO.

95.     This claim is brought against Robin Campbell ("Campbell") and Troy Guinn ("Guinn") (each individually a "RICO defendant" and collectively "RICO defendants").

96.     At all relevant times, Ms. Brannon is and has been a "person" as that term is defined in Section 1961(3) of RICO.  At all relevant times, each of the RICO defendants referred to in the preceding paragraph is and has been a "person" as that term is defined in Section 1961(3) of RICO.

97.     In violation of Section 1962(c) and (d), Campbell and Guinn conducted and/or conspired to conduct or participate, directly or indirectly, in the conduct of certain enterprises' affairs through a pattern of racketeering activity, thereby proximately causing injury to Ms. Brannon's business or property.  Campbell and Guinn each knew the essential nature and scope of the enterprise or enterprise(s) with which he/she was employed by or associated. Campbell and Guinn each intended to participate in the affairs of the particular enterprise or enterprise(s).

**B.     CONDUCTING THE AFFAIRS OF THE RICO ENTERPRISES**

98.     The preceding paragraphs are realleged and incorporated herein by reference.

99.     Ms. Brannon alleges that there exist and have existed a number of RICO "enterprise(s)," as that term is defined in 18 U.S.C. § 1961(4) of RICO, and the RICO defendants named herein committed, aided, and abetted, and/or conspired to commit violations of 1962(c) and (d).

100.     Ms. Brannon has identified at least thirty distinct businesses owned and/or operated by Guinn and Campbell over approximately the last two decades.  A number of the known RICO enterprises involve and/or involved various combinations of these entities.  For the sake of simplicity and the convenience of the Court in this civil matter, this Complaint will not attempt to identify all of Campbell and Guinn's RICO enterprises that have ever existed; instead this Complaint will focus primarily on those enterprises that have existed within the applicable civil statute of limitations.

101.    On information and belief, at all relevant times, Guinn and Campbell shared managerial and operational control of any and all entities and enterprises they operated, regardless of in whose name the company was formed.

102.    Ms. Brannon worked for several of the entities and has been injured in her business and property in addition to injury from this retaliatory litigation.

103.    The prior considerations taken into account, Ms. Brannon and Magnolia thus allege that there have existed, and in some instances continue to exist, at least the following RICO enterprises:

a)  *The Guinn – Campbell – LPC –R&A –Premier – KY Ortho Enterprise*

    i.  At all relevant times, there existed an association-in-fact consisting of Campbell, Guinn, Louisville Pain Clinic, PLLC ("LPC"), R&A Management Company, LLC ("R&A"), Premier Medical Services, LLC ("Premier"), and Kentucky Orthotic Providers, LLC ("KY Ortho"), referred to herein as the "Guinn-Campbell-LPC-R&A-Premier-KY Ortho Enterprise." The Guinn-Campbell-LPC-R&A-Premier-KY Ortho Enterprise engaged in and/or affected interstate commerce.

    ii.  Ms. Brannon worked in the office of LPC assisting Dr. Chagua but was paid and employed by R&A.

    *The Entities*

    iii.  LPC was a Kentucky Professional Limited Liability Company organized on May 25, 2010 by R&A Management Company, LLC, with Dr. Marlon Chagua as its sole member.   LPC was administratively dissolved on September 30, 2014.

iv. R&A was a Kentucky Limited Liability Company organized on January 12, 2010 by Kurt Reibling. R&A was administratively dissolved on September 28, 2013.

v. Premier was a Kentucky Limited Liability Company formed on April 23, 2009 by Kurt Reibling. Premier was dissolved on April 10, 2014.

vi. KY Ortho was a Kentucky Limited Liability Company formed on April 23, 2009 by Kurt Reibling. KY Ortho was dissolved on April 10, 2014.

*Conducting the Affairs of the RICO Enterprise*

vii. LPC began operations on or about July 7, 2010. LPC was a clinic intended to treat patients who experienced acute and chronic pain. Dr. Marlon Chagua was the clinic's physician and Dr. Bodner was also briefly employed there. LPC entered into a management services agreement with R&A Management and Kurt Reibling. In consideration thereof, LPC agreed to pay R&A 50% of its revenue as a management fee.

viii. Guinn became involved with LPC because he had a consulting agreement with R&A Management and/or Kurt Reibling.

ix. Premier provided ultrasound services on a portable imaging device located in a room in the offices of LPC. The ultrasound images were sent to a separate facility for review. LPC entered into an agreement with R&A wherein it agreed that 90% of the fees generated by the leased Durable Ultrasound Equipment went to R&A, and 10% was retained by LPC.

x. KY Ortho provided patients with back braces and was located in a room in the offices of LPC.

xi.  On information and belief, Guinn and Campbell's involvement in the enterprise primarily targeted individuals of low socioeconomic status from West Louisville for treatment at LPC for injuries sustained in alleged car accidents.   Guinn and Campbell pressured the clinic's doctors to perform ancillary services, including fittings and sales of back braces via KY Ortho, ultrasounds via Premier, as well as trigger point injections.  Guinn required Ms. Brannon to send him daily reports with a breakdown of the number of ultrasounds performed, back braces sold, and trigger point injections. Guinn demanded explanation for any patients who failed to receive the full spectrum of the aforementioned ancillary services.

xii.  Further, the car accidents for which the individuals treated frequently had no corresponding police report.   Because of this, insurance adjusters eventually began to flag and deny many of the claims submitted by LPC.

xiii.  During Dr. Bodner's brief employment with LPC, he questioned some of the business practices and refused to go along with Guinn and Campbell's push for medically unnecessary ancillary services.  Dr. Bodner eventually left the clinic and returned to Florida after signing a Settlement Agreement and Waiver and Release of All Claims with LPC.

xiv.  In November of 2011, Guinn contacted LPC and Dr. Chagua and demanded direct payment for referrals.  Guinn threatened Dr. Chagua that if he did not pay him a direct fee, despite already being paid by R&A and Reibling, Guinn would stop working with referrals in bringing patients to be evaluated and treated.   Dr. Chagua initially refused because Guinn was

already being paid a fee for the same service from R&A and Kurt Reibling. Dr. Chagua did not have an agreement with Guinn. In December of 2011, however, LPC amended its agreement with R&A wherein LPC agreed to pay R&A 55% of its revenue as a management fee, with the understanding that the 5% increase would actually go to Guinn.

xv. At some point, the Kentucky Inspector General's Office became involved and sent LPC a cease and desist relating to the operation of other ancillary medical services businesses from and within LPC's offices.

xvi. Guinn and Campbell used the mails and wires to receive related compensation for these fraudulent services as well as to fraudulently commingle related funds. As alleged in the bankruptcy trustee's Complaint, Premier wrote several checks to Guinn that were endorsed by Guinn and Campbell and deposited into Campbell's bank account. Known checks from December 2011 – January 2012 total approximately $82,111.65. (See Exhibit 5, ¶¶23, 24, 27, 29, Complaint to Avoid and Recover Fraudulent Transfers, *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)). Guinn and Campbell made these transfers in order to shelter funds from creditors, particularly the IRS.

xvii. On information and belief, Guinn and Campbell used the mails and wires to receive related compensation from R&A in amounts currently unknown.

xviii. On information and belief, Guinn and Campbell shared managerial and operational control of the Guinn-Campbell-LPC-Premier-KY Ortho Enterprise. At all relevant times, Guinn and Campbell conducted and/or

conspired to conduct the affairs of the Campbell-Guinn-LPC-R&A-Premier-KY Ortho Enterprise through a "pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO. These RICO defendants committed, aided and abetted and/or conspired to commit violations of the following provisions of the U.S. Code: Sections 1341 and 1343 (mail and wire fraud). These acts of "racketeering activity" are alleged in Part C of this count.

b) **_The Campbell – Guinn – RST Medical Services Enterprise_**: At all relevant times, there existed an association-in-fact consisting of Campbell, Guinn, and RST Medical Services, LLC ("RST"). This association-in-fact is and has been a RICO enterprise, and is referred to herein as the "Campbell-Guinn-RST Enterprise". The Campbell-Guinn-RST Enterprise engaged in and/or affected interstate commerce.

    i. RST was a Kentucky Limited Liability Company formed on May 22, 2009 by Robin Campbell. RST was administratively dissolved on September 10, 2011.

    ii. As alleged in ¶14 of the bankruptcy trustee's Complaint, RST never conducted any actual business operations. (See Exhibit 5, ¶14). Despite this, Campbell opened a bank account for RST at PNC under which both Campbell and Guinn had unlimited authority to withdraw funds. (*Id.* at ¶15). Apparently from 2009 – 2012, "...Guinn deposited more than $900,000 of his funds into RST Account...". (*Id.* at ¶16). It is further alleged that Guinn's purpose in transferring funds to the RST account "...instead of one in his name was to hide his property from his creditors

and to hinder, delay and defraud his creditors, particularly the IRS." (*Id.* at ¶18).

iii.  As alleged in ¶18 of *Century Capital Group*'s First Amended Complaint (Exhibit 4), Guinn utilized a deposit account in the name of RST, a company of which Campbell is the sole member of record, in order to contain funds paid to him. (See Exhibit 4, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573).   The purpose of Guinn's transfers was to hide his property from his creditors and to hinder, delay, and defraud his creditors, particularly the IRS.  (*Id.* at ¶72).

iv.  On information and belief, Guinn and Campbell shared managerial and operational control of the Campbell-Guinn-RST Enterprise. At all relevant times, Guinn and Campbell conducted and/or conspired to conduct the affairs of the Campbell-Guinn-RST Enterprise through a "pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO.   These RICO defendants committed, aided and abetted and/or conspired to commit violations of the following provisions of the U.S. Code:   Sections 1341 and 1343 (mail and wire fraud). These acts of "racketeering activity" are alleged in Part C of this count.

c)  ***The Campbell – Guinn – AIA Enterprise***:  At all relevant times, there existed an association-in-fact consisting of Campbell, Guinn, Auto Injury Assistance, LLC (the "first AIA"), Auto Injury Alliance, LLC (the "second AIA"), and Accident Injury Assistance, LLC (the "third AIA").   This association-in-fact is and has been a RICO enterprise and is referred to herein as the "Campbell-Guinn-AIA

23

Enterprise". The Campbell-Guinn-AIA Enterprise engaged in and/or affected interstate commerce.

i.   The first AIA was a Kentucky Limited Liability Company formed on November 18, 2009 by Robin Campbell. Robin Campbell dissolved the first AIA on September 16, 2010. The second AIA was a Kentucky Limited Liability Company formed on March 7, 2011 by Troy A. Guinn. The second AIA was administratively dissolved on September 11, 2012. The third AIA was a Kentucky Limited Liability Company formed on June 16, 2011 by Troy A. Guinn. The third AIA was administratively dissolved on September 11, 2012.

ii.  As alleged in ¶12 of *Century Capital Group*'s First Amended Complaint, Guinn and Campbell have "...shared and commingled assets and resources in furtherance of a scheme to conceal assets and earnings from Guinn's creditors..." (See Exhibit 4, ¶12, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573).

iii. At all relevant times, Guinn and Campbell conducted and/or conspired to conduct the affairs of the Campbell-Guinn-AIA Enterprise through a "pattern of racketeering activity", as that term is defined in Section 1961(1) and (5) of RICO. These RICO defendants committed, aided and abetted and/or conspired to commit violations of the following provisions of the U.S. Code: Sections 1341 and 1343 (mail and wire fraud). These acts of "racketeering activity" are alleged in Part C of this count.

d) ***The Campbell – Guinn – Pinnacle – AAT Enterprise***: At all relevant times, there existed an association-in-fact consisting of Campbell, Guinn, Pinnacle Consulting, LLC, (the "first Pinnacle"), Pinnacle Business Strategies, LLC (the "second Pinnacle"), and Accident Assistance Today, LLC ("AAT"). This association-in-fact is and has been a RICO enterprise and is referred to herein as the "Campbell-Guinn-Pinnacle-AAT Enterprise". The Campbell-Guinn-Pinnacle-AAT Enterprise engaged in and/or affected interstate commerce.

    i. The first Pinnacle was a Kentucky Limited Liability Company formed on January 4, 2011 by Robin Campbell. The first Pinnacle was administratively dissolved on September 11, 2012. The second Pinnacle was a Kentucky Limited Liability Company formed on March 7, 2011 by Troy A. Guinn. The second Pinnacle was administratively dissolved on September 28, 2013. AAT was a Kentucky Limited Liability company formed on August 10, 2012 by Robin Campbell. AAT was administratively dissolved on September 28, 2013.

    ii. As alleged in ¶48 of the bankruptcy trustee's Complaint to Avoid and Recover Fraudulent Transfers (Exhibit 5), Guinn received income attributable to the second Pinnacle that he actually deposited into Campbell's company AAT's bank account. (See Exhibit 5, ¶46, Complaint to Avoid and Recover Fraudulent Transfers, *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016).

    iii. At all relevant times, Guinn and Campbell conducted and/or conspired to conduct the affairs of the Guinn-Campbell-Pinnacle Enterprise through a

"pattern of racketeering activity," as that term is defined in Section 1961(1)

and (5) of RICO.  These RICO defendants committed, aided and abetted

and/or conspired to commit violations of the following provisions of the

U.S. Code:  Sections 1341 and 1343 (mail and wire fraud).  These acts of

"racketeering activity" are alleged in Part C of this count.

e) *The Guinn – Campbell – Interventional Pain – Derby City – MCS – T&C*

*Enterprise*:

i.   At all relevant times, there existed an association-in-fact consisting of

Guinn,   Campbell,   Interventional   Pain   Treatment   Center,   PLLC

("Interventional Pain"), Derby City Pain Group, PLLC ("Derby City"),

Medical Consulting Services, LLC, (the "first MCS"), Medical Consulting

Solutions, LLC (the "second MCS"), and T&C Neuromax Global, LLC

("T&C Global").  This association-in-fact is and has been a RICO enterprise

and is referred to herein as the "Guinn-Campbell-Interventional Pain-Derby

City-MCS Enterprise".  As alleged herein, Interventional Pain, Derby City,

and the first and second MCS were each legally incorporated entities that

conducted business activities throughout the United States.  The activities

of the Guinn-Campbell-Interventional Pain-Derby City-MCS Enterprise

affected interstate and/or foreign commerce.

*The Entities*

ii.  Interventional Pain is a Kentucky Professional Limited Liability Company

organized on January 14, 2011 by Attorney Kenneth Handmaker with Dr.

Elmer Dunbar as the sole member.  Interventional Pain filed its last annual

26

report on March 25, 2015 and is still active and in good standing with the Kentucky Secretary of State.

iii. Derby City was formed on September 25, 2014 by Bradley Cunningham with Dr. Elmer Dunbar as the sole member.  Derby City filed its last annual report on April 16, 2015 and is still active and in good standing with the Kentucky Secretary of State.

iv. The first MCS was a Kentucky Limited Liability Company formed on July 9, 2012 by Troy A. Guinn.  The first MCS was administratively dissolved on September 28, 2013.

v. The second MCS was a Kentucky Limited Liability Company formed on August 10, 2012 by Robin Campbell.  The second MCS is still active and in Good Standing with the Kentucky Secretary of State.  The second MCS filed its most recent annual report on April 23, 2015.

vi. T&C Global was formed on July 29, 2013 as an Ohio Limited Liability Company.  The Ohio Secretary of State's website lists Chad N. Eckhardt of Frost Brown Todd as the incorporator and registered agent.  It is unclear whether Campbell or Guinn registered the business, but on information and belief, Guinn continues to exercise managerial and operational control.

vii. Dr. Dunbar began conducting business activities and operating under Interventional Pain in late 2014.  Guinn and Campbell served as consultants to Dr. Dunbar.

*Conducting the Affairs of the RICO Enterprise*

viii.   Guinn and Campbell pressured Dr. Dunbar to write compounding prescriptions and order high-complexity toxicology reports.

ix.   The compounding prescriptions were submitted to Town & Country Compounding and Consultation ("T&C") in Ridgewood, New Jersey. Apparently in 2013 Guinn's company, the first MCS, became a compounding representative for T&C. (See Exhibit 4, ¶25, *Century Capital Group, LLC, et al., v. Guinn, et al.*, No. 14-CI-1573). The high-complexity toxicology reports were submitted to Insight Diagnostics, LLC ("Insight") in Franklin, TN. It is currently unclear as to Guinn's motivation for forming T&C Global, but the persistent pattern of creating companies with deceptively similar names is obvious. Ms. Brannon and Magnolia intend to pursue discovery to uncover whether Mr. Guinn's practices with this company mimicked and/or mimic those of his other deceptively similarly named companies.

x.   Guinn required daily reports from Ms. Brannon that reflected totals for compounding prescriptions as well as toxicology reports. Guinn was angered when the reports did not include what he considered adequate numbers of compounding prescriptions and toxicology reports.

xi.   The high-complexity toxicology reports were relatively expensive. Ms. Brannon was confronted by patients upset at the remaining balance owed after insurance payments and adjustments on what should have been a relatively simple toxicology report. However, Guinn advised her to relay

to patients that the clinic would not pursue collection attempts beyond what was required by insurance because the clinic was interested only in Medicare and other insurance payments.

xii. Initially Ms. Brannon received payment directly from Dr. Dunbar. However, once Dr. Dunbar left, Ms. Brannon received payments from the first IHCS despite working for Interventional Pain.

xiii. As alleged in ¶46 of the bankruptcy trustee's Complaint to Avoid and Recover Fraudulent Transfers (Exhibit 5), Guinn received a number of checks for Medical Consulting Services that were in fact deposited into a bank account maintained by Medical Consulting Solutions. (See Exhibit 5, ¶46, Complaint to Avoid and Recover Fraudulent Transfers, *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016).

xiv. At all relevant times, Guinn and Campbell conducted and/or conspired to conduct the affairs of the Guinn-Campbell-Interventional Pain-Derby City-MCS-T&C Global Enterprise through a "pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO. These RICO defendants committed, aided and abetted and/or conspired to commit violations of the following provisions of the U.S. Code: Sections 1341 and 1343 (mail and wire fraud). These acts of "racketeering activity" are alleged in Part C of this count.

f) ***The Guinn – Campbell – IHCS Enterprise***: At all relevant times, there existed an association-in-fact consisting of Guinn, Campbell, Innovative Health Care Solutions, LLC (the "first IHCS"), and Integrity Health Care Solutions, LLC (the

29

"second IHCS"). This association-in-fact is and has been a RICO enterprise and is referred to herein as the "Guinn-Campbell-IHCS Enterprise". As alleged herein, the first and second IHCS were each legally incorporated entities that conducted business activities throughout the United States. The activities of the Guinn-Campbell-IHCS Enterprise affected interstate and/or foreign commerce.

### *The Entities*

i.  The first IHCS was formed on November 5, 2014 as an Ohio Limited Liability Company. The Ohio Secretary of State's website lists Chad N. Eckhardt of Frost Brown Todd as the incorporator and registered agent. On information and belief, the first IHCS is titled in Campbell's name. On information and belief, despite this, at all relevant times, Guinn exercised managerial and operational control over the first IHCS.

ii. The second IHCS was formed on November 5, 2014 as an Ohio Limited Liability Company. The Ohio Secretary of State's website lists Chad N. Eckhardt of Frost Brown Todd as the incorporator and registered agent. On information and belief, the second IHCS is titled in Campbell's name. On information and belief, despite this, at all relevant times, Guinn exercised managerial and operational control over the second IHCS.

iii. One of the companies with whom Guinn and Campbell worked with in obtaining these medical devices was named Integrity Health Solutions ("IHS"). Campbell and Guinn's IHCS companies bear deceptively similar names.

iv.  The legal activity of the Guinn-Campbell-IHCS Enterprise involved sales of a medical device, recruitment of sales representatives for the same, and associated billing services, among other things.

v.  On or about March 16, 2016, a day or so after the bankruptcy trustee's action was filed, Campbell advised Ms. Brannon to discontinue direct communications with Guinn.   Campbell advised that messages to Guinn should be relayed through her and that Guinn would respond via the same. On information and belief, this action was taken in furtherance of defrauding creditors.

vi.  At all relevant times, Guinn and Campbell conducted and/or conspired to conduct the affairs of the Guinn-Campbell-IHCS Enterprise through a "pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO.  These RICO defendants committed, aided and abetted and/or conspired to commit violations of the following provisions of the U.S. Code:  Sections 1341 and 1343 (mail and wire fraud); and Section 152 (bankruptcy fraud). These acts of "racketeering activity" are alleged in Part C of this count.

g) *Various Association-in-Fact Enterprises*:  There exist and have existed multiple Association-in-Fact enterprises including various combinations of Campbell; Guinn; RST Medical Services, LLC; Auto Injury Assistance, LLC; Auto Injury Alliance, LLC; Accident Injury Assistance, LLC; Pinnacle Consulting, LLC; Pinnacle Business Strategies, LLC; Medical Consulting Services, LLC; Medical Consulting Solutions, LLC; Innovative Health Care Solutions, LLC; and Integrity

31

Health Care Solutions, LLC.   These multiple Association-in-Fact Enterprises affected interstate or foreign commerce.   On information and belief, Guinn and Campbell continue their professional and business activities in these multiple Association-in-Fact Enterprises.   Guinn and Campbell each performed separate, discrete roles in conceiving and carrying out the schemes to defraud alleged herein, and they made decisions at various times on both a hierarchical and consensual basis.

    i.   These multiple Association-in-Fact Enterprises have and had a hierarchical decision-making structure headed, in-fact, by Guinn.   However, many of the entities are titled in Campbell's name.

    ii.   These multiple Association-in-Fact Enterprises also had a consensual decision-making structure because both Campbell and Guinn voluntarily agreed to join the enterprise and played an active role in its affairs. Each of them was motivated by the desire to earn income from the various schemes to defraud.  Campbell and Guinn conducted and/or conspired to conduct the affairs of these multiple Association-in-Fact Enterprises through a "pattern of racketeering activity" as that term is defined in Section 1961(1) and (5) of RICO.

    iii.   Further, Campbell and Guinn committed, aided and abetted and/or conspired to commit violations of the following provision of Title 18 of the U.S. Code:  Sections 1341 and 1343 (mail and wire fraud); and Section 152 (bankruptcy fraud).  These acts of "racketeering activity" are alleged in Part C of this count.

h) *John Doe Enterprises*:  On information and belief, Guinn and Campbell have a number of other entities and association-in-fact enterprises engaged in ""pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO, formed within and outside the Commonwealth of Kentucky.  Their identities are unknown at the time of this filing and could not reasonably be identified prior thereto.  Ms. Brannon and Magnolia reserve the right to amend this complaint once the identities of other enterprises and/or businesses have been ascertained.

## C.   GUINN AND CAMPBELL'S PATTERN OF RACKETEERING ACTIVITY

104.   The preceding paragraphs are realleged and incorporated herein by reference.

105.   Guinn and Campbell aided and abetted and/or conspired to commit violations of:

  a.  the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343; and

  b.  bankruptcy fraud, 18 U.S.C. § 152.

106.   These offenses and violations of federal law constituted racketeering and a pattern of racketeering activity, as those terms are defined, respectively, in 18 U.S.C. § 1961(1) and (5).

### a.   Violations of Sections 1341 and 1343 (mail and wire fraud)

107.   The Pattern of racketeering committed and/or aided and abetted by Campbell and Guinn involve hundreds, if not thousands, of separate instances of using the United States mail and/or interstate wire facilities to commit fraud that proximately caused and continue to cause injury to Ms. Brannon's business or property.

108.   Guinn's use of the wires and mails occurred during the period from at least 2003, and, on information and belief, continue to the present.  On information and belief, Guinn exercised and continues to exercise managerial and operational control over numerous companies that are titled in Campbell's name.

109.   Campbell's use of the wires and mails occurred during the period from at least 2009 when she formed RST and on information and belief, continue to the present.  On information and belief, Campbell's fraudulent use of the wires and mails continues with a threat that persists into the future.

110.   Many of the precise dates of the RICO defendants' acts of mail and wire fraud cannot be alleged without access to Guinn and Campbell's books and records and other information to be obtained throughout the discovery process.  Indeed, an essential part of the successful operation of Campbell and Guinn's schemes to defraud at issue was dependent upon secrecy, and RICO defendants took steps that were effective in keeping their wrongdoing secret.  Despite this, Ms. Brannon and Magnolia can generally describe the mail and wire fraud.  Further, Campbell and Guinn's known uses of the U.S. mail and interstate wire facilities are enumerated below:

    a.   Guinn and Campbell used the wires and mails in connection with organizing and establishing their various entities and distinct enterprises;

    b.   Guinn and Campbell used the wires and mails in connection with obtaining income related to their various entities and distinct enterprises;

    c.   Guinn and Campbell used the wires and mails in connection with reinvesting funds in their distinct enterprises;

    d.   Guinn and Campbell used the wires and mails to transfer monies between themselves and/or their enterprises in an effort to defraud creditors, including Ms. Brannon;

e.   Guinn and Campbell used the wires and mails to communicate between themselves and a number of other individuals regarding their fraudulent schemes;

f.   Guinn and Campbell used the wires and mails to perpetuate their fraudulent activities;

g.   Guinn and Campbell used the wires and mails to communicate between themselves and others regarding their fraudulent schemes;

h.   Guinn and Campbell used the wires and mails to provide the fraudulent 1099 tax documents relating to her work as an employee and independent contractor.

i.   Campbell and Guinn engaged in numerous fraudulent schemes involving the mails and wires to avoid paying commissions and salaries due to a number of creditors, including Ms. Brannon and Magnolia.

**b.    <u>Violations of Section 152 (bankruptcy fraud)</u>**

111.   The pattern of racketeering committed and/or aided and abetted by Robin Campbell, Troy Guinn, involve hundreds, if not thousands, of separate instances of fraudulent transfers as they relate to Troy Guinn's bankruptcy petition for Chapter 7 relief filed on March on March 21, 2014.

112.   As alleged in the bankruptcy trustee's Complaint to Avoid and Recover Fraudulent Transfers, Guinn "…diverted his income, both directly and indirectly, to Campbell and other Defendants." (See Exhibit 5, ¶15, Complaint to Avoid and Recover Fraudulent Transfers, *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016)).

113.   But for Guinn's bankruptcy fraud, Ms. Brannon would likely not be involved in this litigation.

114.   These fraudulent transfers are the subject of an action filed on March 15, 2016 by Wm. Stephen Reisz, Trustee for the Bankruptcy Estate of Troy A. Guinn, in an action styled *Reisz v. Campbell*, et al., No. 16-03008-acs (U.S.B.C. W.Ky March 15, 2016).

115.   This action alleges that "The primary reason Guinn sheltered his funds in bank accounts of Campbell and other defendants prior to 2012, specifically the bank account of RST, was to prevent the IRS from attaching his property."

116.   The result of the sheltering and perpetrating the fraudulent activity is injury to Ms. Brannon's property and business.

**D.   STANDING/CAUSATION**

117.   Ms. Brannon is a person who has been injured in her business or property but for RICO Defendants' violations of Section 1962(c) and (d) of RICO, as set forth above.

118.   Ms. Brannon was the intended target of the RICO Defendants' conduct.

119.   Ms. Brannon operated as a sole proprietor performing various services for medical clinics before she became an employee and Magnolia became an independent contractor of IHCS. Injury to Ms. Brannon's business or property was proximately caused by the conduct of the RICO Defendants' constituting racketeering activity, including mail and wire fraud.

120.   Ms. Brannon's injuries were foreseeable, concrete in nature, and not subject to speculation.

121.   Ms. Brannon was required to sign multiple agreements with RICO Defendants, which included non-compete, non-solicitation, and confidentiality clauses.

122.   These agreements were required of Ms. Brannon in order to perpetrate the RICO Defendants' ongoing fraud.

123.    Ms. Brannon left her legitimate employment to assume a position with IHCS; Ms. Brannon is a now former employee of Guinn and Campbell's IHCS.

124.    Ms. Brannon and Magnolia are owed money from services performed as an employee as well as commissions due under the First Agreement.

125.    As continuously alleged in the bankruptcy trustee's Complaint to Avoid and Recover Fraudulent Transfers, Campbell and Guinn utilized the mails and wires to transfer funds with the intent to hinder, delay, or defraud entities to which each or both of them were indebted and/or became indebted on or after the date of the transfers.

126.    Ms. Brannon and Magnolia are thus defrauded creditors of Campbell and Guinn.

127.    Pursuant to Section 1964(c) of RICO, Ms. Brannon and Magnolia are entitled to assert this claim and to recover threefold the damages sustained and the costs of bringing suit, including reasonable attorney's fees.

## COUNT II – KENTUCKY COMMON LAW FRAUD

128.    The preceding paragraphs are realleged and incorporated herein by reference.

129.    Guinn and Campbell are liable under Kentucky state law for fraud.

130.    Guinn and Campbell made numerous material representations to Ms. Brannon and Magnolia; the representations were false; Guinn and Campbell knew the representations to be false; Guinn and Campbell made the representations with the intention of inducing Ms. Brannon and Magnolia to act; Ms. Brannon and Magnolia acted in reliance thereupon; and Ms. Brannon and Magnolia suffered injury.

## COUNT III – BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

131.    The preceding paragraphs are realleged and incorporated herein by reference.

132.     Counterclaim Defendants, IHCS, Robin Campbell, and Troy A. Guinn individually and collectively breached the November 16, 2015 Independent Contractor Agreement (See Exhibit 2) with Magnolia and Ms. Brannon.

133.     As a result of the breach of the Independent Contractor Agreement, Magnolia and Brannon have been damaged and are entitled to damages for breach of contract in an amount to be determined by a jury.

134.     Without consideration to interest, Counterclaim Defendants' owe Ms. Brannon and Magnolia approximately $13,400.00 for compensatory damages as reflected by the following:

      a.   $540.00 for an incomplete payment on the last commission payment made to Magnolia; and

      b.   $12,900.00 for commissions on orders submitted prior to termination of the Independent Contractor Agreement.

135.     As a result of the breach of the Independent Contractor Agreement, Magnolia and Brannon have been damaged and are entitled to damages for breach of contract for expectation damages in an amount to be determined by a jury.

## COUNT IV– TORTIOUS INTERFERENCE WITH MAGNOLIA/GREG WILLIAMS CONTRACT

136.     The preceding paragraphs are realleged and incorporated herein by reference.

137.     Counterclaim Plaintiffs restate, reaffirm, and incorporate by reference their responses in paragraphs 1-83 of this document.

138.     Counterclaim Plaintiff Magnolia had an independent contractor agreement with Greg Williams ("Mr. Williams") for the sale of NSS devices.  (See Exhibit 3).

139.   Counterclaim Defendants knew of the contract and individually and in concert with one another interfered with Ms. Brannon and Magnolia's ability to perform under the Williams Agreement by wrongfully withholding commissions owed.

140.   On information and belief, Guinn and/or Campbell have directly contacted Ms. Brannon's independent contractor, Greg Williams, on multiple occasions in an effort to interfere with their contractual relationship.

141.   On information and belief, Guinn and/or Campbell were not in privity with Greg Williams at the time of that contract, and had no business reason to contact Mr. Williams, other than to interfere with Ms. Brannon's contractual relationship.

142.   Ms. Brannon and Magnolia have been damaged as a result of this interference and are entitled to damages in an amount to be determined by a jury.

## COUNT V – DECLARATION OF RIGHTS

143.   The preceding paragraphs are realleged and incorporated herein by reference.

144.   Magnolia has a right to continue business activities involving credentialing services and collections for personal injury accounts.

145.   A genuine dispute exists between the parties concerning the right of Magnolia to provide services unrelated to those previously performed for Counterclaim Defendants. Magnolia is entitled to an order declaring that IHCS, Robin Campbell, nor Troy Guinn possess any right to interfere with Magnolia's business activities.

**WHEREFORE**, for all of the reasons set forth above, the Defendants/Counterclaim plaintiffs respectfully pray as follows:

1. That the Plaintiff's Complaint be dismissed with respect to the Defendant, Kristen Brannon, in her individual capacity, with prejudice;

2. That the Plaintiff's complaint be dismissed with respect to the Defendant, Magnolia Heath Solutions, LLC, with prejudice;

3. Declaration of Magnolia's right to engage in lawful business activities unrelated to those of IHCS, Robin Campbell, or Troy Guinn;

4. Trial by jury on all issues so triable;

5. Compensatory damages in an amount to be determined by a jury;

6. Treble damages as they relate to the RICO claim in an amount to be determined by a jury;

7. Expectation damages on independent contractor agreement in an amount to be determined by a jury;

8. Punitive damages in an amount to be determined by a jury;

9. A reasonable fee for Ms. Brannon and Magnolia's attorney;

10. Any and all other relief to which Ms. Brannon and Magnolia may appear entitled.

Respectfully submitted,


/s/ Nolia G. Batey
Nolia G. Batey
BATEY LAW OFFICE, PLLC
130 Fairfax Avenue, Suite LL-B
Louisville, KY 40207
P: (502) 509-9407
F: (502) 470-3634
nbatey@bateylawoffice.com
Counsel for Kristen Brannon and
Magnolia Health Solutions, LLC

## CERTIFICATE OF SERVICE

I, Nolia G. Batey, hereby certify that on June 7, 2016, I electronically filed the foregoing FIRST AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS with the Jefferson Circuit Court, and served a copy via email and USPS first-class mail to:

R. Kenyon Meyer
Corinne E. Keel
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
kenyon.meyer@dinsmore.com
corinne.keel@dinsmore.com
*Counsel for Innovative Health Care Solutions, LLC and Robin Campbell*

Troy A. Guinn
3011 Long Creek Way
Louisville, KY 40245
*Counterclaim Defendant*

> /s/ Nolia G. Batey
> Nolia G. Batey
> BATEY LAW OFFICE, PLLC
> 130 Fairfax Avenue, Suite LL-B
> Louisville, KY 40207
> P: (502) 509-9407
> F: (502) 470-3634
> nbatey@bateylawoffice.com
> *Counsel for Kristen Brannon and Magnolia Health Solutions, LLC*

NO. 16CI-1435

JUN 16 2016

JEFFERSON CIRCUIT COURT
DIVISION ONE (1)

INNOVATIVE HEATLH CARE SOLUTIONS, LLC

PLAINTIFF

v.

**ORDER**

KRISTEN BRANNON

and

MAGNOLIA HEALTH SOLUTIONS, LLC

DEFENDANTS

\* \* \* \* \* \* \* \*

The hearing on Plaintiff's Motion To Compel The Deposition Of Kristen Brannon

is reassigned to September 22, 2016 at 11:00 a.m., due to the Court being in trial.

_____
BARRY WILLETT
JEFFERSON CIRCUIT COURT JUDGE

Date Signed: _____

c:     R. Kenyon Meyer
       Corinne E. Keel
       Nolia G. Batey

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK

JUN 15 2016

BY_____

DEPUTY CLERK